## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CRYSTAL BYRD** and **BRIAN BYRD,** )<br>Individually, and on Behalf of all )<br>Similarly Situated Persons, )<br>                    )<br>        Plaintiffs, )<br>                    )<br>vs. )<br>                    )<br>**AARON'S, INC.,** )<br>**ASPEN WAY ENTERPRISES, INC.,** )<br>d/b/a Aaron's Sales and Leasing, )<br>a franchisee of AARON'S, INC.; )<br>**JOHN DOES (1-100) AARON'S** )<br>**FRANCHISEES;** and )<br>**DESIGNERWARE, LLC,** )<br>                    )<br>        Defendants. ) | Civil No. |

---

## CLASS ACTION COMPLAINT

---

Plaintiffs Crystal and Brian Byrd, individually and on behalf of all similarly situated persons, by and through their undersigned attorneys allege the following upon information and belief (except for those allegations pertaining to Plaintiffs, which are based on personal knowledge) after due investigation by undersigned counsel.

### NATURE OF THE ACTION

1.     Plaintiffs, Crystal and Brian Byrd, bring this action on their own behalf and as a Class Action for the benefit of a class consisting of all customers of Aaron's, Inc. ("Aaron's") and its franchisees including Aspen Way Enterprises ("Aspen Way") and other John Doe franchisees (collectively hereafter referred to as the "Aaron's Defendants") who reside in the United States, who have purchased, leased, rented or rented to own ("RTO"), Aaron's computers and people who used said computers whose electronic communications and/or images were

intercepted, accessed, monitored and/or transmitted by a spying device or software without the customer's authorization (including software called "PC Rental Agent®" manufactured by co-defendant DesignerWare, LLC, ("DesignerWare")) wherever they may reside in the United States of America.

2.    Plaintiffs and the Class seek injunctive relief and damages caused by Defendants' unlawful interception of electronic communications and images in violation of the Federal Wiretap Act as amended by the Electronic Communications Privacy Act (hereinafter referred to as the "Wiretap Act" or the "Electronic Communications Privacy Act"), and the Computer Fraud Abuse Act. ("CFAA").

3.    Unbeknownst to Plaintiffs and the members of the Class, and without their authorization, Defendants have been spying on the activities of Plaintiffs and Class members through the use of the PC Rental Agent® device and/or similar Software and/or devices which were designed to, and in fact did, access, intercept, transmit, use and/or disclose electronic communications.   These spying devices and/or spying software were installed and enabled surreptitiously without the consent of Plaintiffs or Class members.

## THE PARTIES, JURISDICTION AND VENUE

4.    Plaintiffs and the Class bring this action pursuant to §§ 2511, 2512 and 2520 of title 18 of the United States Code also known as the Electronic Communication Privacy Act ("ECPA") or Wiretap Act; and § 1030 of the Computer Fraud and Abuse Act ("CFAA").

5.    This Court has original jurisdiction of Plaintiffs' and the Class' federal law claims pursuant to 28 U.S.C. §§ 1331 and 1337.

6.      Plaintiff Crystal Byrd is a resident of Casper, Natrona County, Wyoming, and was a customer of Aaron's and/or Aspen Way, by virtue of her rental and purchase of a laptop computer from the Aaron's store located at 4050 Plaza Drive, Casper, Wyoming.

7.      Plaintiff Brian Byrd is a resident of Casper, Natrona County, Wyoming, and was an authorized user of an Aaron's and or Aspen Way's computer.

8.      Defendant DesignerWare, LLC, is a Pennsylvania limited liability corporation, with a principal place of business in North East, Pennsylvania. DesignerWare, LLC designed, manufactured, assembled, possessed, marketed, advertised and sold to the Aaron's Defendants the devices and/ or software (including PC Rental Agent®) which permitted the illegal and wrongful activity further described herein.

9.      Defendant Aaron's is a Georgia corporation, with a principal place of business in Atlanta, Georgia, and has retail store locations through America, including Pennsylvania, and other states and territories of the United States. During the time relevant to this Complaint, Aaron's purchased, installed and/or used PC Rental Agent® and installed it on computers it offered for rent or sale without authorization from its customers. Through the use of PC Rental Agent® and technical support offered by DesignerWare in Pennsylvania, Aaron's purposely availed itself to the jurisdiction of the state of Pennsylvania.

10.     Defendant Aspen Way Enterprises, Inc., d/b/a Aaron's Sales and Leasing is a franchisee of Aaron's, Inc., and is a Montana business which has retail stores in Wyoming and other states. During the time relevant to this Complaint, Aspen Way purchased, installed and/or used PC Rental Agent® and installed it on computers it offered for rent or sale without authorization from its customers. Through the use of PC Rental Agent® and technical support

offered by DesignerWare in Pennsylvania, Aspen Way purposely availed itself to the jurisdiction of the state of Pennsylvania.

11.    The John Does Defendants are Aaron's franchisees who have purchased PC Rental Agent® and installed it on their computers for rent or purchase without authorization from their customers.  Through the use of PC Rental Agent® and technical support offered by DesignerWare in Pennsylvania, the John Does purposely availed themselves to the jurisdiction of the state of Pennsylvania.

12.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c) as DesignerWare, LLC, the designer and distributor of PC Rental Agent® device and/or software, has its principal place of business is located in North East, Pennsylvania.  Moreover, upon information and belief, DesignerWare receives, manages, stores, intercepts, discloses and transmits communications intercepted by PC Rental Agent® and/or Software for the Aaron's Defendants in this district.

13.    Venue is proper in this district because the Aaron's Defendants received, managed, accessed, intercepted and transmitted communications collected in this district through the use of the PC Rental Agent® device and/or software intentionally installed on their rental computers throughout the country (including the computer rented, owned and used by class plaintiffs Crystal and Brian Byrd).

14.    In connection with the acts and conduct complained of below, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the internet, or made such use possible.

## CLASS ACTION ALLEGATIONS

15.     Plaintiffs Crystal and Brian Byrd bring this action on behalf of themselves and a

Class of all other persons similarly situated pursuant to Fed. R. Civ. P. 23 as defined as follows:

> All customers of the Aaron's Defendants who reside in the United States, who
> have purchased, leased, rented or rented to own, Aaron's computers and people
> who used said computers whose electronic communications and/or images were
> intercepted, accessed, monitored and/or transmitted by Defendants via PC Rental
> Agent® or other devices or software without the customer's authorization.

16.     Specifically excluded from the Class are the Defendants themselves, any

subsidiary of any of the Defendants, any family members of the Defendants who are such

customers, all employees and directors of Defendants or any subsidiary, and their legal

representatives.

17.     The Class is so numerous that joinder of all members is impracticable.   The

Customers of the Aaron's Defendants who have similarly purchased, leased, rented or rented to

own ("RTO") such computers are estimated to be greater than fifty thousand individuals and

entities.

18.     Plaintiffs' claims are typical of the Class, as plaintiffs and all other Class

members were injured in exactly the same way − by the unauthorized collection, interception

and/or transmission of electronic communications through PC Rental Agent® (or similar devices

or software) installed on their Aaron's RTO computer.

19.     Plaintiffs will fairly and adequately represent the interests of the Class and have

retained counsel competent and experienced in Class Action litigation.

20.     Plaintiffs have no interests that are contrary to or in conflict with those of the

Class.

21.    A Class Action is superior to other available methods for the fair and efficient adjudication of this controversy under the acts described below.  Given the nature of these claims, the expense and burden of individual litigation make it virtually impossible for the Class members individually to seek redress for the unlawful conduct alleged.

22.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a Class Action.

23.    Common questions of law and fact exist as to all members of the Class and predominate over any questions effecting solely individual members of the Class.  Among the questions of law and fact, common to the Class:

 a.    Whether Defendants' acts as alleged herein violated the ECPA and/or the CFAA.

 b.    Whether Defendants participated in and pursued the concerted action or common course of conduct complained of;

 c.    Whether Plaintiffs and members of the Class are entitled to statutory and punitive damages pursuant to the ECPA and/or the CFAA; and

 d.    Whether Plaintiffs and members of the Class are entitled to injunctive relief.

24.    Plaintiffs bring this action under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to all members of the Class, thereby making final injunctive relief concerning the Class as a whole appropriate.  In the absence of appropriate injunctive relieve, Defendants will continue to unlawfully violate the rights of Plaintiffs and the members of the Class by illegally intercepting, accessing and/or transmitting personal and private information and communications contrary to federal law.  Defendants' uniform conduct

towards Plaintiffs and the other members of the Class makes certification under Rules 23 (b)(2) appropriate.

25.      Plaintiffs also bring this action under Rule 23(b)(3) because common questions of law and fact identified in paragraph 23 above predominate over questions of law and fact affecting individual members of the Class.   Indeed, the predominate issues in this class are whether Defendants are violating and have violated the law by the unauthorized, inappropriate and undisclosed remote interception and transmission of communications and information secretly obtained by computers rented, leased and/or sold to said Class members, and in the intentional unauthorized interception and use electronic and computer communications and information, including "screen shots," photographs and information (including keystrokes) relating to internet usage.   Certification under Rule 23(b)(3) is appropriate because:

      a.      by virtue of the secret nature of the spying device and software described in this complaint, individual class members may not be aware that they have been wronged and are thus unable to prosecute individual claims;

      b.      concentration of the litigation concerning this matter in this Court is desirable;

      c.      the claims of the representative Plaintiffs are typical of the claims of the members of the purported class;

      d.      a failure of justice will result from the absence of a class action; and

      e.      the difficulties likely to be encountered in the management of this class action are not great.

## SUBSTANTIVE ALLEGATIONS

26.     Since at least 2007, and likely before, the Aaron's Defendants have secretly installed a spying device device and/or software on Aaron's RTO computers.  This device and/or software, including PC Rental Agent®, permitted the Aaron's Defendants to remotely and surreptitiously access, monitor, intercept, and/or transmit electronic communications, including, but not limited to, images of monitors or screens ("screen shots"), keystrokes, and images captured by the computers' respective cameras ("webcams").

27.     PC Rental Agent® and other similar devices and software as referenced in this Complaint, make possible such illegal, surreptitious, and unauthorized remote interception of protected communications.

28.     PC Rental Agent® is manufactured, assembled, advertised and sold to the Aaron's Defendants by DesignerWare for the primary purpose of allowing the Aaron's Defendants to remotely track, access, monitor, monitor and/or transmit electronic communications on Aaron's RTO computers.

29.     PC Rental Agent® is a device and/or software that is manufactured, advertised to be and is, in fact, invisible or undetectable to customers and to other end users of Aaron's RTO computers.

30.     Upon information and belief, the PC Rental Agent® device is soldered into the motherboard and/or is part of the Intel Chipset.  Therefore, it cannot be uninstalled or easily detected.  It can only be deactivated using a "Wand" that is not accessible to the ultimate user of the rented computer.

31.    PC Rental Agent® allows the Aaron's Defendants, DesignerWare and their agents to surreptitiously monitor, intercept and collect Plaintiffs' electronic communications from anywhere in the world.

32.    It has been the practice and policy of the Aaron's Defendants to conceal from their customers their ability to remotely access, intercept and monitor customers' private, personal electronic communications, information, screen shots, keystrokes or images captured on webcams and to further disclose to consumers exactly the kinds of private information and images that can be and wereroutinely collected, transmitted and stored.

33.    The Aaron's Defendants' sales, rental or lease agreements neither seeks permission from nor discloses to RTO customers the presence of PC Rental Agent® or its ability to monitor and intercept communications and other data from Aaron's RTO computers.

34.    On July 30, 2010, Plaintiff Crystal Byrd entered into an Aaron's RTO lease agreement for a "Dell Inspiron 14" laptop computer. The Byrd lease agreement provided that Crystal Byrd would pay three separate installments by November 15, 2010 for the purchase of said computer. See, Ex. 1, "Consumer Lease Agreement and Federal Consumer Leasing Act Disclosures" ("Lease Agreement").

35.    The Byrd lease agreement did not disclose that the Aaron's Defendants had installed a device which could monitor the Byrds and intercept their private communications.

36.    The Byrd's timely paid off the lease "in full," according to the lease agreement terms, by October 1, 2010.

37.    On or about the 22nd day of December, 2010, after the Byrd RTO lease was fully paid off, Christopher Mendoza, the store manager for the Aaron's store in Casper, Wyoming, went to the home of class representatives Brian and Crystal Byrd   At that time, Mendoza

9

incorrectly claimed that the Byrds were in default on their lease agreement and demanded that the Byrd computer be returned to Aaron's. To further support his attempts to collect the Byrd computer, Mendoza informed co-plaintiff Brian Byrd that he had obtained a photograph of Brian Byrd using the computer – and he showed him a photo of Brian Byrd which had been taken remotely using the PC Rental Agent ®. When Brian Byrd demanded that Mendoza explain how Mendoza had obtained an unauthorized photograph, Mendoza responded that he was not supposed to disclose that Aaron's had the photograph.

38.    Byrd told Mendoza that, contrary to Mendoza's claim, the computer had been paid "in full" and advised that Mendoza needed to leave, at which point Mendoza left the Byrd residence.

39.    Following his encounter with Mendoza, co-plaintiff Brian Byrd contacted law enforcement to report the incident. Law enforcement responded to the Byrd residence and commenced an investigation.

40.    Upon information and belief, the law enforcement investigation determined that on or about the 22nd of December, Mendoza was directed by his supervisor, Sian Baker, to retrieve Crystal Byrd's computer because the Byrds were allegedly (but incorrectly) in default of their RTO lease agreement.

41.    Upon information and belief, Baker provided Mendoza the photograph of Brian Byrd taken by the PC Rental Agent® device; the photograph that Mendoza later showed to Brian and Crystal Byrd, and directed Mendoza to repossess the computer.

42.    Upon information and belief, the law enforcement investigation further determined that one or more of the Aaron's Defendants routinely installed the PC Rental Agent® device and/or software on all Aaron's RTO computers, and that this device and/or software

10

permitted Defendants to remotely gather, intercept, transmit and store private electronic information and communications from RTO customers, including but not limited to photographs, screen shots and keystrokes.

43.    Upon information and belief, the law enforcement investigation further determined that neither Baker nor Mendoza had access or authority to change PC Rental Agent® settings on the Byrd computer.  In fact, it is understood that the authority to change settings on the PC Rental Agent® installed on RTO computers resided with the regional managers of the Aaron's Defendants.

44.    Upon information and belief, the law enforcement investigation further determined that the Aaron's Defendants purchased the spying device called PC Rental Agent® from co-defendant DesignerWare.

45.    Upon information and belief, Ashton Kelly, an agent or employee of DesignerWare, was interviewed by law enforcement and he confirmed that the PC Rental Agent® permitted (and continued to permit) the Aaron's Defendants to gather, transmit and store screen shot images, keystrokes and photographs taken via the webcam without the customer's knowledge or consent

46.    Upon information and belief, the law enforcement investigation determined that the communications and other data captured by the PC Rental Agent® was transmitted from Aaron's RTO computers to a central server operated by DesignerWare located in Pennsylvania where the data was then made available to the Aaron's Defendants throughout the country

47.    Upon information and belief, Ashton Kelly further advised law enforcement that the photographs are taken remotely via the webcam through "prompting," which occurs when the

customer receives a "pop-up" box on his computer screen which states that the customer's windows system registry, or part of the windows software, needs to be registered.

48.     The "pop-up" box described in the previous paragraph further requires the Aarons RTO customer (or any authorized user) to enter his or her name, address and telephone number, after which they are given access to the computer.  At the time the user enters the information, the PC Rental Agent causes the webcam to take, transmit and store an unauthorized photograph and other data of the user entering the information.  Neither the "pop-up" box nor any other statement from any Defendant (including the Rental Agreement) notified or advised the Byrds (or any end user) that private electronic communications were being intercepted and/or monitored.

49.     While law enforcement was conducting its investigation at the Casper Aaron's store, it is further believed that a law enforcement officer observed an unauthorized photograph of another Aaron's customer, and was told that Aaron's regularly received Emails from DesignerWare with unauthorized photographs and other communications taken of customers and authorized users through the use of the PC Rental Agent®.

## CAUSES OF ACTION

### COUNT I
**(Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511)**

50.     Plaintiffs repeat and re-allege each and every allegation above as if fully set forth herein.

51.     Defendants, either directly or by aiding, abetting and/or conspiring to do so, have intentionally intercepted and/or procured to be intercepted Plaintiffs' and Class members' electronic communications without Plaintiffs' or the Class members' knowledge, authorization, or consent in violation of 18 U.S.C. § 2511.

52.     Defendants, either directly or by aiding, abetting and/or conspiring to do so, have also intentionally used and/or procured to be used a devise to intercept the above-referenced electronic communications.

53.     Defendants, either directly or by aiding, abetting and/or conspiring to do so, have intentionally disclosed to another person, and/or used the contents of the above-referenced electronic communications.

54.     An "electronic communication" is defined in § 2510(12) as any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce.

55.     Defendants violated 18 U.S.C. § 2511(1)(a) by intentionally, collecting, gathering intercepting, endeavoring to intercept, transmit, procure, store any other person to intercept or endeavor to intercept Plaintiffs' and Class members' electronic communications.

56.     Defendants violated 18 U.S.C. § 2511(1)(c) by intentionally collecting, transmitting, storing and disclosing, or endeavoring to disclose, to any other person, the contents of Plaintiffs and Class members' electronic communications, knowing or having reason to know that the information was obtained through the interception of Plaintiffs' and class members electronic communications.

57.     Defendants violated 18 U.S.C. § 2511(1)(d) by intentionally using or endeavoring to use, the contents of Plaintiffs' and class members electronic communications, knowing or having reason to know that the information was obtained through the interception of Plaintiffs' electronic communications.

58.     Neither Plaintiffs nor class members authorized or consented to Defendants' interception of electronic communications.

59.     Section 2520 of the ECPA provides for a private cause of action and allows for declaratory and equitable relief as appropriate and statutory damages of the greater of $10,000 or $100 a day for each day of violation, actual and punitive damages, and reasonable attorney's fees and costs.

60.     Unless restrained and enjoined, Defendants have been and will continue to commit such acts.  Plaintiffs' remedy at law is not adequate to compensate them for these inflicted and threatened injuries, entitling Plaintiffs and Class members to remedies including injunctive relief as provided by 18 U.S.C. § 2510.

## COUNT II
### (Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2512)

61.     Plaintiffs, on behalf of themselves and the Class, hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

62.     Defendants, either directly or by aiding, abetting and/or conspiring to do so, have intentionally manufactured, assembled, possessed, sold, and/or advertised a device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of electronic communications and that such device or advertisement relating to such device has been or will be sent through the mail or transported in interstate in violation of 18 U.S.C. § 2512.

63.     An "electronic communication" is defined in § 2510(12) as any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in

part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce.

64.     Defendants violated 18 U.S.C. § 2512(1)(a) by intentionally sending and/or carrying through the mail or interstate commerce a device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of electronic communications.

65.     Defendants violated 18 U.S.C. § 2512(1)(b) by intentionally manufacturing, assembling, possessing and/or selling a device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate commerce.

66.     Defendants violated 18 U.S.C. § 2512(1)(c)(i) by intentionally advertising a device, knowing the content of the advertisement and knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of electronic communications, knowing the content of the advertisement and having reason to know that such advertisement will be sent through the mail or transported in interstate commerce.

67.     Defendants violated 18 U.S.C. § 2512(1)(c)(ii) by intentionally advertising a device, where such advertisement promotes the use of such device for the purpose of the surreptitious interception of electronic communications, knowing the content of the advertisement and having reason to know that such advertisement will be sent through the mail or transported in interstate commerce.

68.    Section 2520 of the ECPA provides for a private cause of action and allows for declaratory and equitable relief as appropriate and statutory damages of the greater of $10,000 or $100 a day for each day of violation, actual and punitive damages, and reasonable attorney's fees and costs.

69.    Unless restrained and enjoined, Defendants have been and will continue to commit such acts.  Plaintiffs' remedy at law is not adequate to compensate them for these inflicted and threatened injuries, entitling Plaintiffs and Class members to remedies including injunctive relief as provided by 18 U.S.C. § 2510.

### COUNT III

### (Violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq.)

70.    Plaintiffs, on behalf of themselves and the Class, hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

71.    The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") as amended, makes it unlawful to intentionally access a protected computer or communication without authorization or by exceeding authorized access to such a computer, thereby obtaining information from such a protected computer, within the meaning of 18 U.S.C. § 1030(a)(2)(C).

72.    Defendants violated 18 U.S.C. § 1030 by intentionally accessing Plaintiffs' and Class members' computers without authorization or by exceeding authorization, thereby obtaining information from such a protected computer.

73.    The CFAA 18 U.S.C. § 1030(g) provides a civil cause of action to "any person who suffers damage or loss by reason of a violation of CFAA.

74.    Plaintiffs' computer is a "protected computer . . . which is used in interstate commerce and/or communication" within the meaning of 18 U.S.C. § 1030(e)(2)(B).

75.     The CFAA, 18 U.S.C. § 1030(a)(5)(A)(i) makes it unlawful to "knowingly cause the transmission of a program, information, code, or command and as a result of such conduct, intentionally cause damage without authorization, to a protected computer," of a loss to one or more persons during any one-year period aggregating at least $5,000 in value.

76.     Defendants violated 18 U.S.C. § 1030(a)(5)(A)(ii) by intentionally accessing Plaintiffs' and Class members' protected computers without authorization, and as a result of such conduct, recklessly caused damage to Plaintiffs' and Class members computers by impairing the integrity of data and/or system and/or information.

77.     Defendants violated 18 U.S.C. § 1030(a)(5)(A)(iii) by intentionally accessing Plaintiffs' and Class members' protected computers without authorization, and as a result of such conduct, caused damage and loss to Plaintiffs and Class members.

78.     Plaintiffs and Class members suffered damage by reason of these violations, as defined in 18 U.S.C. § 1030(e)(8), by the "impairment to the integrity or availability of data, a program, a system or information."

79.     Plaintiffs and Class members suffered damage by reason of these violations, as defined in 18 U.S.C. § 1030(e)(8), by the "reasonable costs . . . including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."

80.     Plaintiffs and Class members suffered damage by reason of these violations, including, without limitation, violation of the right of privacy, and disclosure of personal information that is otherwise private, confidential, and not of public record.

81.    As a result of these takings, Defendants' conduct has caused a loss to one or more persons during any one-year period aggregating at least $5,000 in value in real economic damages.

82.    Plaintiffs and Class members have additionally suffered loss by reason of these violations, including, without limitation, the right of privacy.

83.    Defendants' unlawful access to Plaintiffs' and Class members' computers and electronic communications has caused Plaintiffs and Class Members irreparable injury.  Unless restrained and enjoined, Defendants will continue to commit such acts.

84.    Plaintiffs and Class members' remedy at law is not adequate to compensate it for these inflicted and threatened injuries, entitling Plaintiff and class members to remedies including injunctive relief as provided by 18 U.S.C. § 1030 (g).

WHEREFORE, Plaintiffs Brian and Crystal Byrd, and all members of the Class, request judgment in their favor and against Defendants, jointly and severally, as follows:

a.    For an order certifying the Class under the appropriate provisions of Rule 23 and appointing Plaintiffs and their legal counsel to represent the Class;

b.    Awarding damages as provided by the Electronic Communications Privacy Act, including injunctive relief, declaratory relief, punitive damages and reasonable attorneys' fees and costs to counsel for the Class pursuant;

c.    Awarding damages as provided by the Computer Fraud and Abuse Act, including injunctive relief, declaratory relief, punitive damages and reasonable attorneys' fees and costs to counsel for the Class pursuant; and

d.    Granting such other and further relief as is just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs and the members of the Class hereby demand a trial by jury on all issues for which a right to jury trial exists.

<div style="display: flex;">
<div>

**LEVIN, FISHBEIN, SEDRAN & BERMAN**

/s/ Frederick S. Longer
**Frederick S. Longer**
Bar No. PA 46653
flonger@lfsblaw.com
**Arnold Levin**
Bar No. PA 02280
alevin@lfsblaw.com
**Daniel L. Levin**
Bar No. PA 80013
dlevin@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3697
Phone: 877-882-1011
Fax: 215-592-4663

**JAMIESON & ROBINSON, LLC**
**John H. Robinson**
Bar No. WSB 6-2828
robinsn@vcn.com
214 S. Grant Street
Casper, WY 82601
Phone: 307-235-3575
Fax: 307-307-577-9435

**THE SPENCE LAWFIRM**
**G. Bryan Ulmer, III**
ulmer@spencelawyers.com
Bar No. WY 6-2943
**Mel C. Orchard, III**
Bar No. WY 5-2984
orchard@spencelawyers.com
**R. Daniel Fleck**
Bar No. WY 6-2668
fleck@spencelawyers.com
PO Box 548 • 15 South Jackson Street
Jackson, Wyoming 83001
Phone: 307-733-7290
Fax: 307-733-5248

</div>
<div>

**HERMAN GEREL LLP**
**Christopher V. Tisi**
Bar No. DC 412839; MD 04286
cvtisi@aol.com
2000 L Street, NW Suite 400
Washington, D.C., 20036
Phone 202-783-6400
Fax: 202-416-6392

**Michelle A. Parfitt**
Bar No. VA 33650; DC 358592
mparf@aol.com
**James F. Green**
Bar No. VA 24915; DC 214965; MD 208980
jgreen@ashcraftlaw.com
4900 Seminary Road, Suite 650
Alexandria, Virginia 22311
Phone: 703-931-5500
Fax: 703- 820-0630

**Maury A. Herman**
Bar No. LA 006815
mherman@hhkc.com
**Leonard A. Davis**
Bar No. LA 14190
ldavis@hhkc.com
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: 504-581-4892
Fax: 504-561-6024

**Andrea S. Hirsch**
Bar No. GA 666557
ahirsch@hermangerel.com
230 Peachtree Street, Suite 2260
Atlanta, GA 30303
Telephone: 404-880-9500
Fax: 404-880-9605

</div>
</div>

# EXHIBIT 1

Consumer Lease Agreement and Federal Consumer Leasing Act Disclosures

| Agreement Number:        904 | Agreement Date:   July 30, 2010 |
| | Delivery Date:    July 30, 2010 |

| ASPEN WAY ENTERPRISES, INC. | Customer Name: | CRYSTAL BYRD |
| d/b/a  Aaron's Sales and Leasing | Address1: | 1480 S ILLINOIS |
| 4050 PLAZA DRIVE | Address2: | |
| CASPER, WY 82604 | City: | CASPER, WY 82609 |
| Phone : 307-265-6025 | Phone : | 307-315-3840 |

**Lease Agreement:** I agree to lease the items listed ("Leased Property") from Aspen Way Enterprises, Inc. d/b/a Aaron's Sales and Leasing ("Aaron's") according to the terms and conditions of this Consumer Lease Agreement ("Agreement").

**Lease Term:** My Lease Term is for 4 months and 1 day, commencing on the Delivery Date set forth above. For the Lease Term, I agree to pay Aaron's the Total of Payments, set forth below, in Monthly or Semi-monthly Payments, set forth below, payable in advance on the Payment Due Date, set forth below, without further notice. I may renew this Agreement after the Lease Term by making another Monthly Payment or Semi-monthly Payment ("Renewal Term") on the Payment Due Date. On or before the last day of the Lease Term or any Renewal Term, I must either renew this Agreement for a Renewal Term or I must return or surrender the Leased Property to Aaron's.

| Leased Property | | | | | |
|---|---|---|---|---|---|
| Item # | Serial # | Model # | Description | Monthly Lease Rate | Condition |
| 1900999122 | B4TMKJ1 | INSPIRON 14 | 7360G37 LPTP DELL 3/250 14.0 INTE | $129.99 | NEW |

| Amount Due at Lease Signing or Delivery | Monthly Payments | Total of Payments |
|---|---|---|
| First Monthly Payment (Lease Payment, plus Service Plus Fee, and Sales/Use Tax) $154.97 | Your first Monthly Payment of $150.13 plus a prorated amount of $4.84 is due on July 30, 2010, followed by 3 Monthly Payments of $150.13 due on the 15th of each Month and a final prorated Monthly Payment of $4.94 due on November 15, 2010. | (The amount you will have Paid by the end of the Lease Term) |
| Refundable Security Deposit (if any) $0.00 | | Total of Payments          $610.30 |
| Total Payment Due At Signing or Delivery: $154.97 | The total of your Monthly Payments for the Lease Term is $610.30 | |

**Purchase Option at End of Lease Term:** I have an option to purchase the Leased Property at the end of the Lease Term for $907.87, plus all applicable sales taxes. I, also, have 'Lease Ownership' and 'Early Purchase' Purchase Options, as described below.

**Other Important Terms:** Read the rest of this Agreement carefully for additional information on Purchase Options, maintenance, responsibilities, warranties, late payment and default charges, insurance and any security interest, if applicable.

**Monthly Payments:** My Monthly Payment includes a Lease Payment of $129.99, a Service Plus Fee of $12.99 and Sales/Use Tax of $7.15 for a total Monthly Payment of $150.13. My Monthly Payments will be due starting July 30, 2010 and continuing thereafter on the 15th of each successive month ("Payment Due Date").

**Semi-monthly Payments:** Instead of a Monthly Payment, I may choose to make a Semi-monthly Payment that includes a Lease Payment of $69.99, a Service Plus Fee of $6.99 and Sales/Use Tax of $3.85 for a total Semi-monthly Payment of $80.83 by making the Semi-monthly payment on or before the next Payment Due Date and continuing thereafter on each successive 1st and the 15th of the month.

**Taxes:** I agree to pay all applicable Sales/Use Taxes on the Leased Property. Based upon the tax rates in effect as of the Agreement Date, the total amount of Sales/Use Tax that I shall pay during my Lease Term is $28.83. I understand that the applicable tax rates may change, causing my total payment amount to change, while this Agreement is in effect.

**Cash Price:** The total Cash Price of Leased Property is $1,169.99.

**Purchase Options:** I understand that this transaction is a lease and not a conditional sale or financing arrangement. However, I have and may exercise an option to purchase and acquire ownership of the Leased Property in any one of two ways: ("Purchase Options")

**Early Purchase:** By paying, at any time, an amount equal to the Cash Price Less 50% of the Lease Payment portion of all previous payments (the Amount Due at Lease Signing and Monthly Payments or Semi-Monthly Payments), plus any other fees due and sales tax.

**Lease Ownership:** This is a 12 month Lease Ownership Plan with an initial Lease Term of 4 months and 1 day. If I choose the monthly payment option, I may acquire ownership by paying, when due, the Amount Due at Lease Signing plus consecutive Monthly Payments (the equivalent of 12 full Monthly Payments) for the Total Amount to Acquire Ownership of $1,801.56. If I choose the Semi-monthly Payment option, I may acquire ownership by paying, when due, consecutive Semi-monthly Payments (the equivalent of 24 full Semi-monthly Payments) for a Total Amount to Acquire Ownership of $1,939.92.

**Ownership:** I understand that title to the Leased Property remains with Aaron's and that I will neither own nor obtain an equity interest in the Leased Property until I have satisfied one of the Purchase Options.

**Late Payment, Return Check, and In-Home Collection Fees:** If a payment is 3 days late, I must pay a Late Charge of $5.00; If my check is returned for any reason, I must pay a Returned Check Charge of either: (a) $15.00 to Aaron's or (b) the maximum amount permitted by law to the third party providing check verification services; if Aaron's must come by my home to collect a Payment, I must pay an In-Home Collection Charge of $10.00; I expressly agree to these other fees, as applicable.

**Service Plus:** My Amount Due at Agreement Signing and each Monthly or Semi-Monthly Payment will include the Service Plus Fee disclosed above. This Fee entitles me to receive all benefits provided by the Aaron's Service Plus Program as long as this Agreement is in effect and I am current in making my Payments. These benefits are explained in the Aaron's Service Plus Program Addendum, a copy of which has been given to me and is part of this Agreement.

**Risk of Loss and Damage:** I am responsible for, and must pay the fair market value of, the Leased Property if and as of the time it is lost, stolen, damaged beyond repair or destroyed ("Loss") from any cause, normal wear and tear excepted. However, I am not responsible for any Loss that results from fire, flood, windstorm, or other Act of God if I give notice and satisfactory evidence of such Loss to Aaron's within 2 days of its occurrence. I agree that the Leased Property is not currently damaged (except ordinary wear and tear, if previously leased).

Agreement Number: 904 - 9.4.2   (FD:10/01/03   PD:07/30/10 - ) - (F854) P

**Maintenance:** Other than repairs resulting from damage, Aaron's will maintain the Leased Property in good condition as long as I am leasing it, and I agree to allow only Aaron's to perform all repairs.

**Warranty:** If I purchase the Leased Property, in addition to the limited warranty that is included in the Aaron's Service Plus Program, Aaron's will transfer any unexpired manufacturer's warranty to me if allowed to do so by the terms of the warranty. Otherwise, Aaron's makes no warranties, express or implied, with respect to the Leased Property and specifically disclaims any warranties of fitness for a particular purpose or merchantability. In certain states this limitation may not apply to you.

**Termination:** I can terminate this Agreement without penalty at any time after expiration of the Lease Term by surrendering or returning the Leased Property in good repair and paying all Payments and other fees through the date of surrender or return. I agree that there is no refund if I return or surrender the Leased Property before the end of a Renewal Term.

**Prohibited Acts:** I will not grant a security interest in or otherwise pledge, pawn, attempt to sell or otherwise dispose of the Leased Property or move it from the address listed above without written authorization from Aaron's.

**Default and Right to Take Possession:** If I fail to pay the Total of Payments or if I fail to return or surrender the Leased Property when due, or if I breach any of my other obligations, I will be in default of this Agreement and my right to retain possession of the Leased Property will automatically terminate. In such event, Aaron's will be entitled to immediate possession of the Leased Property, wherever located, and I will become immediately liable for any unpaid portion of the Total of Payments and for the amount of any unpaid portion of any Payment that is due after the expiration of the Lease Term and for any other fees, and will be liable for the fair market value of the Leased Property, until I return or surrender it to Aaron's in its present condition, normal wear and tear excepted. I also will be liable for all costs of collection and repossession, including reasonable attorney's fees, to the extent allowed by law.

For value received, U. S. Bank, N. A. has been granted a security interest in this Agreement and the rents payable hereunder.

NOTICE

DO NOT SIGN THIS BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE I HAVE READ AND RECEIVED A COMPLETE AND SIGNED COPY OF THIS AGREEMENT AND THE Aaron's SERVICE PLUS ADDENDUM. I SHALL KEEP THEM TO PROTECT MY LEGAL RIGHTS.

LESSEE_____   DATE:____/____/_____   AARON'S REPRESENTATIVE _____

LESSEE_____   DATE:____/____/_____                          DATE:____/____/_____

Agreement Number: 904 – 9.4.2  (FD:08/01/03  PD:07/30/10-) – (F854)

THE REST OF THIS PAGE IS INTENTIONALLY BLANK

# AARON'S SERVICE PLUS PROGRAM ADDENDUM

This Addendum is to be read only as a part of my Lease Purchase Agreement Number 904 with Aaron's. The benefits included in the Aaron's Service Plus Program are as follows:

1. <u>Application Processing:</u> There is no charge to review and investigate my lease application, to prepare my Agreement or to activate my account.

2. <u>Delivery:</u> There is no charge to deliver and set up my Leased Property or, where applicable, to install rims or tires.

3. <u>Relocation:</u> There is no charge to relocate and set up my Leased Property if I move to another residence that is within 15 miles of the Aaron's store to which I was making my Renewal Payments at the time of my move.

4. <u>Payment Holiday:</u> I may defer one-half of 2 Monthly Renewal Payments for any reason whatsoever and not be regarded as being in default or subject to a Late Fee. These deferred Renewal Payments then will become the last of the Payments that I must make in order to acquire ownership of the Leased Property. To get these deferrals, I must have made 4 Monthly Renewal Payments or 8 Semi-Monthly Renewal Payments in a timely manner. I may obtain these deferrals once while my Agreement is in effect by coming to the Aaron's store and signing a Payment Holiday Request Form prior to the due date of the Renewal Payments of which I wish to defer one-half.

5. <u>New Agreement Discounts:</u> I will receive a 15% discount off the Total Initial Payment, less the prorated amount, for each new lease agreement that I enter into with Aaron's. I understand that this discount is not applicable to this Agreement and cannot be combined with any other discount and is not valid on agreements of 6 months or less.

6. <u>120-Day Same As Cash:</u> If my payments are current, within 120 days of the Agreement Date, I may choose to purchase the Leased Property by paying either the Everyday Low Cash Price or the Advertised Special Price, whichever is lower, less the Lease portion of all previous payments (the Amount Due at Lease Signing, Monthly and Semi-monthly Payments less Aaron's Service Plus Fees and Sales/Use/Use Taxes), plus any other Fees and Applicable Sales/Use Tax. I understand that Preferred Customer Coupons and New Agreement Discounts may not be used toward the Purchase Price. I may Exercise this option through the first 120 days.

7. <u>Preferred Customer Coupon:</u> If I acquire ownership of my Leased Property, I will receive an Aaron's Preferred Customer Coupon. Presentation of this Coupon at any Aaron's Sales and Lease Ownership store will entitle me to a 50% discount off the Total Initial Payment, less the prorate amount, due under any new lease agreement. I understand that this discount cannot be combined with any other discount and is not valid for agreements of 6 months or less.

8. <u>Limited Warranty:</u> In the event that I decide to purchase any of the Leased Property, Aaron's also will provide me with the following limited warranty which will cover the Leased Property that I purchase under this Agreement.

<u>Who is covered?</u> This limited warranty extends only to me as the original purchaser of the Leased Property from Aaron's.

<u>What is covered?</u> This limited warranty covers any defects in materials or workmanship in any of the Leased Property purchased by me from Aaron's.

<u>When does coverage begin?</u> This limited warranty begins the day on which I complete the purchase of the Leased Property.

<u>How long does this warranty last?</u> This limited warranty lasts for the first sixty (60) days after I purchase the Leased Property from Aaron's. Coverage will terminate earlier if I sell or otherwise transfer the Leased Property.

<u>What will Aaron's do?</u> Aaron's will repair any purchased Leased Property that proves to be defective in materials or workmanship. In the event repair is not possible, in Aaron's judgment, Aaron's will replace the Leased Property with goods of comparable quality and condition (which may be goods which were previously leased).

<u>What is not covered?</u> This limited warranty does not cover batteries, rims or tires or any problem that is caused by abuse, misuse or theft of the Leased Property. This limited warranty does not cover any loss of or damage to the Leased Property resulting from fire, flood, windstorm, earthquake, or other acts of God and does not extend to any Leased Property or parts which have been lost or discarded, damaged by accident, installed or repaired by parties other than Aaron's personnel, improperly maintained or used in violation of the manufacturer's instructions, altered or modified without Aaron's authorization, or which bear serial numbers that have been removed, altered, defaced or rendered illegible. Also, consequential and incidental damages are not covered under this limited warranty. Some states do not allow the exclusion or limitation of incidental or consequential damages, so this limitation and exclusion may not apply to all purchasers.

<u>How to get service?</u> I must contact the Aaron's store where I was making my Renewal Payments at the time I purchased the Leased Property. Aaron's will pick-up and redeliver the Leased Property to a location that is within 15 miles of that Aaron's store at no additional cost to me.

<u>Other questions?</u> If I have any questions about this limited warranty, I must contact the Aaron's store where I was making my Renewal Payments at the time I purchased the Leased Property.

<u>Lifetime Reinstatement Plan:</u> After the minimum lease term is complete, I may return the Leased Property at any time to the Aaron's store at which my payments were made and take advantage of Aaron's Lifetime Reinstatement Program. This program allows me to reinstate my Agreement without losing any of my rights or options by paying all renewal payments and other charges that are owed. If I choose to reinstate my Agreement, Aaron's will provide me with either the same Leased Property or substitute property of comparable quality, age and condition. I understand that this lifetime reinstatement is only available at the Aaron's store where I was doing business and where I returned the Leased Property. I further understand that the Lifetime Reinstatement Program does not include seasonal items, including but not limited to, air conditioners and lawn tractors.

All warranties implied by state law (including any implied warranties of merchantability or fitness for a particular purpose) are expressly limited to the warranties set forth above. Some states do not allow limitations on how long an implied warranty lasts, so the time limitation set forth above may not apply to all purchasers. I understand that the foregoing limited warranty is the exclusive warranty offered by Aaron's with respect to any Leased Property which I may purchase under this Agreement and is in lieu of all other warranties, guaranties, agreements or similar obligations of Aaron's (express or implied) with respect to the repair or replacement of any Leased Property after I purchase it.

LESSEE_____     DATE: _____/_____/_____     AARON'S REPRESENTATIVE _____

LESSEE_____     DATE: _____/_____/_____

                                                                                 DATE: _____/_____/_____

Agreement Number: 904 - 9.4.2  (FD:08/01/03  PD:07/30/10-) - (F854)