IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRYSTAL BYRD** and **BRIAN BYRD**, | ) | |
| Individually, and on Behalf of all | ) | CIVIL DIVISION |
| Similarly Situated Persons, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:11-cv-00101 |
| | ) | |
| v. | ) | |
| | ) | |
| **AARON'S, INC.**, | ) | |
| **ASPEN WAY ENTERPRISES, INC.**, | ) | |
| d/b/a Aaron's Sales and Leasing, | ) | |
| a franchisee of AARON'S, INC.; | ) | |
| **JOHN DOES (1-100) AARON'S** | ) | |
| **FRANCHISEES**; and | ) | |
| **DESIGNERWARE, LLC**, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT DESIGNERWARE, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR ISSUANCE OF AN EMERGENCY TEMPORARY RESTRAINING ORDER AND IMPOSITION OF PERMANENT INJUNCTION

AND NOW, comes Defendant, DesignerWare, LLC (hereinafter "DesignerWare"), by and through its attorneys, Burns White LLC, and files the within Memorandum of Law in Opposition to Plaintiffs' Motion for Issuance of an Emergency Temporary Restraining Order and Imposition of Permanent Injunction (Document No. 9) and Brief in Support (Document No. 10)[1], as follows:

## I.    INTRODUCTION

DesignerWare hereby files this Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction in order to bring this Court's attention to the several paramount legal issues that are critical to this case.  In particular, Plaintiffs have severely misrepresented the way in

---

[1] In the Court's Text Order dated May 17, 2011, setting a hearing date on Plaintiffs' Motion, the Court notes that Plaintiffs' Motion for Temporary Restraining Order and Permanent Injunction is correctly styled as a Motion for Preliminary Injunction.  Accordingly, DesignerWare will hereinafter refer to Plaintiffs' Motion for Temporary Restraining Order and Permanent Injunction as a Motion for Preliminary Injunction.

which PC Rental Agent functions.  An injunctive order that compels DesignerWare to disable its customers' ability to build/install/activate the Detective Mode feature of the PC Rental Agent software would be catastrophic to this small, Erie-based business that has already lost approximately 30% of its revenue since Plaintiffs' Complaint was filed.  Accordingly, DesignerWare prays that this Court not issue any injunction directing it to halt its business and, instead, allow DesignerWare to raise its well-founded defenses seeking to be dismissed from this litigation in its entirety.  If any Order is entered requiring action on behalf of DesignerWare, it respectfully requests that the Court prohibit Plaintiffs from widely producing that information to the media, to avoid the immediate destruction of DesignerWare's business.

## II.    PROCEDURAL HISTORY

On May 3, 2011, Plaintiffs filed a putative Class Action Complaint in the above-captioned matter raising three causes of action: (1) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §2511; (2) violation of the ECPA, 18 U.S.C. §2512; and (3) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030, et seq (Document No. 1).  On May 9, 2011, Plaintiffs filed their Motion for Preliminary Injunction (Document No. 9) and Brief in Support (Document No. 10).  On May 10, 2011, DesignerWare filed its expedited Response in Opposition to Plaintiffs' Motion and Brief (Document No. 16).  On May 12, 2011, Plaintiffs filed their Reply to DesignerWare's Response (Document No. 22).  On May 17, 2011, this Court set a hearing date on Plaintiffs' Motion for Preliminary Injunction for May 24, 2011.

## III.    PRELIMINARY INJUNCTION STANDARD

## A.      Factors Required to Establish the Necessity of Preliminary Relief

For a district court to grant a preliminary injunction, it must comply with the procedural requirements of Federal Rule of Civil Procedure 65.   See F.R.C.P. 65.   The purpose of a preliminary injunction is to preserve the status quo during the course of the lawsuit, until a trial can be held.   See Acierno v. New Castle County, 40 F.3d 645 (3d Cir. 1994); University of Texas v. Camenisch, 451 U.S. 390, 395 (1981).   Furthermore, an injunction is an 'extraordinary remedy' that is never awarded as of right.   Winter v. NRDC, 555 U.S. 7 (2008).

This Court recently examined the Third Circuit criteria for a preliminary injunction in Minard Run Oil Company v. U.S. Forest Service, 2009 WL 4937785, *23 (W.D.Pa. 2009):

> Under the Third Circuit's "traditional" criteria, a plaintiff must demonstrate "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." Kos Pharm. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004). Additionally, "[t]he injunction should issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief."   Merchant & Evans v. Roosevelt Bldg. Products Co., 963 F.2d 628, 623-33 (3d Cir. 1992). Plaintiff bears the burden of establishing these elements, see Adams v. Freedom Forge Corp., 204 F.3d 475, 486 (3d Cir. 2000), and the failure to establish any element in its favor renders a preliminary injunction inappropriate.   Nutrasweet Co. v. Vit-Mar Enters. Inc., 176 F.3d 151, 153 (3d Cir. 1999).

## B.      Disfavored Preliminary Injunctions

In addition, there are three types of preliminary injunctions that are considered "disfavored": (1) preliminary injunctions altering the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions granting the moving party substantially all the relief it

could recover at the conclusion of a full trial on the merits.  See Westar Energy, Inc. v. Lake, 552 F.3d 1215 (10th Cir. 2009), *citing*, O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir. 2004) (en banc), *aff'd on other grounds*, 546 U.S. 418 (2006). These injunctions require strong showings of the likelihood of success on the merits and the balance of harms.  Ashcroft, 389 F.3d at 976.

A preliminary injunction that alters the status quo goes beyond the traditional purpose for preliminary injunctions, which is only to preserve the status quo until a trial on the merits may be had.  Id. at 979.  The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits; a mandatory injunction, in contrast, is said to alter the status quo *by commanding some positive act...* [and] thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success.  Mastrovincenzo v. City of New York, 435 F.3d 78 (2d Cir. 2006), *citing*, Tom Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995) (emphasis in original).  Thus, a party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity.  See Acierno, 40 F.3d at 653, *citing*, Punnett v. Carter, 621 F.3d 578, 582 (3d Cir. 1980); see also U.S. v. Spectro Foods Corp., 544 F.2d 1175, 1181 (3d Cir. 1976).  Furthermore, the burden on the party seeking a preliminary injunction is especially heavy when the relief sought would in effect grant plaintiff a substantial part of the relief it would obtain after a trial on the merits.  GTE Corp., v. Williams, 731 F.2d 676, 679 (10th Cir. 1984).

**IV.     ARGUMENT**

**A.**   **PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF UNDER SECTION 2511 OF THE ECPA AND SECTION 1030 OF THE CFAA SHOULD BE DENIED**

A preliminary injunction based upon the alleged violation of a statute may issue upon a showing that the statute had been violated.  See U.S. v. Ciampitti, 583 F.Supp. 483, 498 (D.N.J. 1984), *citing*, Hecht Co. v. Bowles, 321 U.S. 321, 331 (1944).  Therefore, a critical element of this Court's determination will be a finding that DesignerWare had, in fact, violated Section 2511 of the ECPA or Section 1030 of the CFAA.

Plaintiffs have expressed their desire to enjoin all Defendants from the ability to use the Detective Mode feature of the PC Rental Agent software by ordering DesignerWare to disable the franchisee stores' ability to access this feature, thereby altering the status quo.  Therefore it is evident that, not only have Plaintiffs requested that this Court issue a disfavored mandatory preliminary injunction, but Plaintiffs further seek an order that in effect grants Plaintiffs a substantial part of the relief they would obtain if they succeed at a trial on the merits.  As a result, Plaintiffs bear an especially heavy burden of proving the necessity of the requested preliminary injunction.  See Acierno, 40 F.3d at 653, *citing*, Punnett, 621 F.3d at 582; Spectro Foods, 544 F.2d at 1181; GTE, 731 F.2d at 679.

**1.**    **Likelihood of Success on the Merits**

a.    Count I – Section 2511 of the ECPA

In their Complaint (Document No. 1), Plaintiffs allege at Count I that DesignerWare is in violation of Section 2511 of the ECPA; in particular, subsections (1)(a), (1)(c), and (1)(d).  See ¶¶55-57.  In their Brief in Support (Document No. 10), Plaintiffs state that the PC Rental Agent software was used to "capture keystrokes, screenshots and photographs" in violation of Section

2511 of the ECPA "which prohibits the interception, storage and use of electronic communications without plaintiff's knowledge." Id. at p 3.

Section 2511(1) states in pertinent part:

> any person who:
>
> (a) – intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any… electronic communication;…
>
> (c) – intentionally discloses, or endeavors to disclose, to any other person the contents of any… electronic communication, knowing or having reason to know that the information was obtained through the interception of [an]… electronic communication in violation of this subsection;
>
> (d) – intentionally uses, or endeavors to use, the contents of any… electronic communication, knowing or having reason to know that the information was obtained through the interception of [an]… electronic communication in violation of this subsection;…
>
> -- shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

An analysis of the language of these three subsections reveals that there cannot be a violation of subsection (c) (disclosure of the contents of an intercepted electronic communication) or subsection (d) (intentional use of the contents of an intercepted electronic communication) without a violation of subsection (a) (the actual intentional interception of an electronic communication) occurring *first*. In other words, absent an interception, neither the disclosure nor use of the contents of the communication violates the ECPA. Wesley College v. Pitts, 974 F.Supp. 375, 381 (D.Del 1997), *aff'd*, 172 F.3d 861 (3d Cir. 1998). Therefore, in order to examine Plaintiffs' likelihood of success on the merits under Section 2511, it is only necessary to determine whether DesignerWare "intentionally intercepts, endeavors to intercept, or procures

any other person to intercept or endeavor to intercept, any… electronic communication" in violation of the statute.  18 U.S.C. 2511(1)(a).

Section 2510(12) defines "electronic communication" as

> "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature *transmitted* in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce but does not include: (a) any wire or oral communication; (b) any communication made through a tone-only paging device; (c) any communication from a tracking device (as defined in Section 3117 of this title); or (d) electronic funds transfer information stored by a financial institution in a communications system used for the electronic storage and transfer of funds" (emphasis added).

Therefore by definition, an "electronic communication" requires that images, data, etc., be "transmitted."   Section 2510(4) of the ECPA defines "intercept" as "the… acquisition of the contents of any… electronic… communication through the use of any electronic, mechanical, or other device."[2]   The Third Circuit has held that an "intercept" under the ECPA "must occur contemporaneously with the transmission."   Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107 (3d Cir. 2003).  Here, the question is whether screen shots, keystrokes, or webcam pictures are "electronic communications" that the user of the computer "transmits" such that they can be "intercepted" in violation of the statute.  The evidence will demonstrate that any such material is present only on the computer and not "transmitted" by the user and, thus, cannot be intercepted by DesignerWare.

While the case law is limited because this is a relatively new area of the law, the Third Circuit has determined that stored emails are not electronic communications that can be intercepted in violation of the ECPA.  In Fraser, the question that arose was whether accessing an

---

[2] It should be noted that DesignerWare does not concede that its software is a "device" pursuant to the statute.

email on a central file server was an interception of an electronic communication.  See Fraser, 352
F.3d at 113.   The Fraser Court held that Congress did not intend for "intercept" to apply to
electronic communications when those communications are in electronic storage.  See id. at 114;
see also Konop v. Hawaiian Airlines, Inc., 302 F.3d 868 (9th Cir. 2002) (for an electronic
communication to be intercepted in violation of the ECPA, it must be acquired during
transmission, not while it is in electronic storage).

 The holding by the Fraser Court is applicable to the matter before this Court because, as in
the case of an email stored on a server, the Detective Mode feature – once built/installed/activated
by the Master Account Holder – is only able to make an image, i.e., screen shot, of what it visible
on the computer screen that is then stored on the computers' hard drive.   Since the screen shot
only makes an image of what is presently on the user's computer screen, the information has
already been transmitted (as in the case of an email that has been received) or has yet to be
transmitted (as in the case of an email that is being composed).   A screen shot, like an email in
storage, is not something transmitted by the user and is, therefore, not an electronic
communication.   The same argument applies to webcam pictures: since there is no transmission of
the picture by the user, it is not an electronic communication.  Without a transmission by the user,
there can be no interception and, thus, no violation of Section 2511 of the ECPA.   See Klump v.
Nazareth Area Sch. Dist., 425 F.Supp.2d 622, 633 (E.D.Pa. 2006) (plaintiff only has standing to
assert claims with respect to those communications sent by plaintiff, not with respect to those
communications sent by third parties).

 In regard to whether keystrokes are electronic communications capable of interception
under Section 2511, the District Court in U.S. v. Ropp, 347 F.Supp.2d 831 (C.D.Cal 2004),
considered whether a hardware-based key logger – a device attached between the keyboard and

the computer's central processing unit ("CPU") – intercepted electronic communication in violation of the statute.  A key logger records each keystroke entered by the user of a particular computer.  See id.  Because the key logger in Ropp recorded the keystroke information in transit between the keyboard and the CPU, the court found that the system transmitting the information did not affect interstate commerce as the statute requires.  See id. at 837-38.  The keystroke signals, therefore, were not "electronic communications" under the ECPA.  See id.  Since the keystrokes do not leave the computer in any transmitted form before they are logged, there is no transmission that can be intercepted in violation of Section 2511 of the ECPA.  As a result, Plaintiffs are unable to establish the interception of an electronic communication in violation of the statute and, therefore, cannot demonstrate a likelihood of success on the merits of Count I of their Complaint.

This Court need not accept any conclusory allegation that conduct alleged in the Complaint constitutes an interception under Section 2511.  See Ideal Aerosmith, Inc. v. Acutronic USA, Inc., 2007 WL 4394447 (E.D.Pa. 2007), citing, Crowley v. Cybersource Corp., 166 F.Supp.2d 1263, 1268 (N.D.Ca. 2001).  However, even if and assuming arguendo that screen shots, keystrokes and webcam pictures are electronic communications and that they have been intercepted in violation of Section 2511(1)(a), DesignerWare **does not** perform any act or make any decision that could be construed as an alleged interception of electronic communications, nor does it disclose the contents of the electronic communication that was allegedly intercepted or intentionally use the information that was allegedly intercepted.  DesignerWare has no access to the content of the email sent to the Master Account Holder, which contains the screen shots, keystrokes, or webcam pictures acquired by the Detective Mode feature.  As noted above,

DesignerWare's only role is that of manufacturer and distributor, for which there is no civil remedy – equitable or otherwise – available to Plaintiffs.

### b.    Count III – Section 1030 of the CFAA

In their Complaint (Document No. 1), Plaintiffs allege at Count III that DesignerWare is in violation of Section 1030(a) of the CFAA; in particular, subsections (2)(C), (5)(A), (5)(B), and (5)(C).  See ¶¶71,75-67.  In their Brief in Support (Document No. 10), Plaintiffs state that the CFAA "provides a private right of action for the knowing and unauthorized access of a computer used in interstate commerce that causes loss or damage in excess of $5,000."  Id. at p 4. Therefore, prior to determining whether DesignerWare is in violation of the statute, this Court must first determine whether the CFAA can provide a basis for any claim against DesignerWare.

Section 1030(g) of the CFAA states in pertinent part:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages…

As noted in the first sentence of Section1030(g), a civil action may be maintained by any person who suffers "damage or loss."  Therefore, it is necessary to first determine whether Plaintiffs have allegedly suffered "damage" or "loss," such as those terms are defined by the statute and, therefore, whether they are entitled to maintain a civil action.

Section 1030(e)(8) defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information."  In this case, Plaintiffs have failed to specifically plead

any impairment to the integrity or availability of data, a program, a system or information.   In other words, in alleging that they have been "spied on," Plaintiffs have not established they have suffered "damage" as that term is defined by the statute since there has been no alleged impairment to any data on the computers.

Section 1030(e)(11) defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."   At Paragraph 81 of their Complaint (Document No. 1), Plaintiffs allege that DesignerWare's violation of the CFAA caused "loss to one or more persons during any one-year period aggregating at least $5,000 in value in real economic damages."[3]   Without offering any proof regarding actual monetary loss, Plaintiffs allege in their Brief (Document No. 10) that they have been, and will be, forced to expend resources in excess of $5,000 to investigate, counter and remove the alleged spyware and determine what other damage the alleged spyware has caused to the computers on which the software was installed.  Id. at p 4.

Therefore, even if DesignerWare could be in violation of the CFAA, which DesignerWare maintains it is not, because Plaintiffs have not quantified their harm as required by the statute or even attempted to show what portion of their harm is attributable to DesignerWare, this Court cannot find that Plaintiffs have affirmatively shown that the harm allegedly caused by DesignerWare exceeds $5,000.   See Ticketmaster L.L.C. v. RMG Technologies, Inc., 507 F.Supp.2d 1096 (C.D.Cal. 2007).   Therefore, the CFAA does not provide a basis for relief against DesignerWare.

## 2.      Irreparable Harm

A plaintiff seeking an injunction has the burden of proving a "clear showing of immediate irreparable injury."  <u>Minard</u>, at *32, *citing*, <u>Continental Group, Inc. v. Amoco Chemicals Corp.</u>, 614 F.2d 351, 359 (3d Cir. 1980).  The "requisite feared injury or harm must be irreparable, not merely serious or substantial" and it "must be of a peculiar nature, so that compensation in money cannot atone for it."  <u>Minard</u>, at *32, *citing*, <u>Glasco v. Hills</u>, 558 F.2d 179, 181 (3d Cir. 1977). Issuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with the Supreme Court's characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.  <u>Winter</u>, 129 S.Ct at 375-76 (emphasis added).   Furthermore, it is well established that purely economic injury, compensable through the payment of money damages, does not satisfy the irreparable harm requirement for the issuance of a preliminary injunction.  <u>Frank's GMC Truck Crt. v. General Motors Corp.</u>, 847 F.2d 100, 102 (3d Cir. 1988).

Section 2 of Plaintiffs' Brief (Document No. 10) discusses the alleged "irreparable harm" Plaintiffs will suffer.   Therein, Plaintiffs indicate that DesignerWare should be restrained from "taking any action that would result in the destruction of evidence that could be relevant in this case."  <u>Id</u>. at p 4.  As noted in DesignerWare's Response to Plaintiffs' Motion (Document No. 16, p 3), DesignerWare has previously expressed its consent to the preservation of evidence and stated that none of the relevant evidence in DesignerWare's control has been destroyed or deleted since the filing of the Complaint.  Therefore, any claim by Plaintiffs that the alleged "destruction of evidence" constitutes irreparable harm is moot.

---

[3] It should be noted that attorney's fees do not count toward the $5000 statutory threshold.  <u>See</u> <u>NCMIC Finance Corp. v. Artino</u>, 638 F.Supp.2d 1042 (S.D. Iowa 2009).

Furthermore, while Plaintiffs' indicate in their Brief (Document No. 10) that they "encourage defendants to stop their spying and taking steps to make sure that the violations of the law which have already occurred do not continue," Plaintiffs have failed to articulate any other alleged irreparable injury. Id. at p 5. Instead, Plaintiffs merely request that this Court require DesignerWare to "immediately bring any servers off-line that are involved with the illegal interception of electronic communications." Regardless of DesignerWare's position that it does not intercept electronic communications, Plaintiffs have failed to demonstrate where a violation of the ECPA or CFAA has occurred. More importantly, Plaintiffs have failed to convey what irreparable harm or injury is likely to occur if a preliminary injunction is not issued, stating only that they seek an order "to protect the interests of the Byrds and the putative class" (Document No. 10, p5). This Court is left only to speculate as to the alleged irreparable harm claimed by Plaintiffs. Furthermore, while Plaintiffs may argue the concept of "invasion of privacy" as irreparable harm, Plaintiffs have not brought a separate cause of action against DesignerWare for "invasion of privacy" under state or federal law, nor does the ECPA or the CFAA provide a specific remedy for "invasion of privacy."

### 3.      Balance of the Equities

In considering the balance of equities, this Court "must undertake to balance the hardships to the respective parties." See Minard, at *33, citing, Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998). The courts of the several circuits have found that, "where the economic loss involved would be so great as to threaten destruction of the moving party's business, a preliminary injunction should be issued to maintain the status quo." See Minard, at *32, citing, N.W. Controls v. Outboard Marine Corp., 317 F. Supp. 698, 703 (D.Del.

1970); Doran v. Salem Inn, Inc., 422 U.S. 922 (1975); Newlife Homecare Inc. v. Express Scripts, Inc., 2007 WL 1314861, *4 (M.D.Pa 2007) (substantial loss of business and the threat of bankruptcy can be sufficient for a finding of irreparable harm); City of Los Angeles v. County of Kern, 462 F.Supp.2d 1105 (C.D.Cal 2006) ("the risk of total business failure and the difficulty of quantifying losses if the business survives means that RBM has demonstrated a risk of irreparable harm"); Roland Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380 (11th Cir. 1984) (a damages remedy can be inadequate if the damage award may come too late to save the plaintiff's business).

Here, it is DesignerWare – not the Plaintiffs – that will suffer irreparable harm if a mandatory preliminary injunction is issued compelling DesignerWare to disable their customers' ability to build/install/activate the Detective Mode feature of the PC Rental Agent software.  The evidence will demonstrate that, since the filing of Plaintiffs' Complaint and as a result of the negative treatment in the media, DesignerWare has lost approximately 30% of its business. DesignerWare stands to lose even more business and may be forced to shut down, or file bankruptcy, if a preliminary injunction is issued that gives the impression that DesignerWare is in any way in violation of the law.  See eBay, Inc. v. Bidder's Edge, Inc., 100 F.Supp.2d 1058, 1066 (N.D.Cal. 2000) (harm resulting from lost profits and lost customer goodwill is irreparable because it is neither easily calculable, nor easily compensable).  While this is likely Plaintiffs' ultimate endeavor, Plaintiffs have yet to establish that DesignerWare has violated either the ECPA or the CFAA.  At this stage of the proceedings, since Plaintiffs have failed to articulate the irreparable harm they may suffer, and there being no testimony from any of the franchise stores that Detective Mode was used to "spy" on customers of the store, and there being no other alleged class members who could testify as to any alleged irreparable harm, at best Plaintiffs can

represent only the *possibility* of irreparable harm.  This must be weighed against the fact that DesignerWare has already lost approximately 30% of its revenue since the Complaint was filed and stands to lose even more if a preliminary injunction is issued.  DesignerWare maintains that the balance of equities strongly favors this Court's denial of Plaintiffs' Motion for Preliminary Injunction.

### 4.    Public Interest

The final factor to consider is whether the public interest favors the issuance of a preliminary injunction.  See Minard, at *33.  In their Brief (Document No. 10), Plaintiffs assert that "there can be little question that unrestricted and unauthorized internet spying… is against the broader public interest."  Id. at p 6.  However, DesignerWare maintains that if a preliminary injunction is issued that effectively determines that DesignerWare has violated the ECPA or the CFAA without the opportunity to defend itself or its product, this could have a chilling effect on the development of software by other businesses that is also used for a legitimate purpose – such as by law enforcement to recover lost and stolen merchandise that belongs to the franchisee stores.

### B.    **PLAINTIFFS HAVE FAILED TO ESTABLISH THE AVAILABILITY OF INJUNCTIVE RELIEF UNDER SECTION 2512 OF THE ECPA BECAUSE THE STATUTE DOES NOT PROVIDE A PRIVATE RIGHT TO BRING A CIVIL ACTION**

In their Complaint (Document No. 1), Plaintiffs allege at Count II that DesignerWare is in violation of Section 2512 of the ECPA; in particular, subsections (1)(a), (1)(b), (1)(c)(i), and (1)(c)(ii).  See ¶¶64-67.  In their Brief in Support (Document No. 10), Plaintiffs state "[section]

2512 makes it a violation of the wiretap law to manufacture a device which is primarily useful for the purpose of intercepting unauthorized and private communications." Id. at p 3.[4] Although Plaintiffs' Motion for Preliminary Injunction (Document No. 9) and Brief in Support (Document No. 10) indirectly argue that that they are entitled to injunctive relief under Section 2512 of the ECPA, Plaintiffs have failed to provide this Court with any substantive analysis so that this conclusion may be reached.  Section 2512(1) of the ECPA states in pertinent part:

> any person who intentionally:
>
> (a) – sends through the mail, or sends or carries in interstate or foreign commerce, any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of… electronic communications;
>
> (b) - manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of… electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce; or
>
> (c) – places in any newspaper, magazine, handbill, or other publication or disseminates by electronic means any advertisement of:
>
>> (i) – any electronic, mechanical, or other device knowing the content of the advertisement and knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of… electronic communications; or
>>
>> (ii) – any other electronic, mechanical, or other device, where such advertisement promotes the use of such device for the purpose of the surreptitious interception of…

---

[4] Section 2512 refers to intercepting "electronic communications," rather than "unauthorized and private communications," as Plaintiffs state in their Brief.  Despite Plaintiffs' alternating use of words like "unauthorized," "private" and "spy," DesignerWare notes that the precise use of language in this case is critical to an interpretation of the statutes and their application in this case.

> electronic communications, knowing the content of the advertisement and knowing or having reason to know that such advertisement will be sent through the mail or transported in interstate or foreign commerce.

> -- shall be fined under this title or imprisoned not more than five years, or both.

To summarize, Section 2512 of the ECPA is a criminal statute that prohibits the manufacture, distribution, possession, and advertising of devices used *primarily* to surreptitiously intercept electronic communications. Therefore, in order for DesignerWare to be in violation of Section 2512, Plaintiffs must first establish that the alleged "device," in this case software, that is manufactured, distributed, possessed and/or advertised by DesignerWare is "primarily useful for the purpose of the surreptitious interception of… electronic communications." 18 U.S.C. 2512(a)-(c).

Initially, it is necessary to examine whether Plaintiffs possess a private right to bring a civil action for injunctive relief against DesignerWare under this statute. Plaintiffs allege in their Complaint (Document No. 1), at Paragraph 68, that Section 2520 of the ECPA provides for a private cause of action and allows for equitable relief under Section 2512. However, the language of Section 2520, which authorizes civil actions under the ECPA, only applies to violations of Section 2511. Section 2520(a) states in pertinent part:

> any person whose… electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity… which engaged in that violation such relief as may be appropriate.

Based on the plain language of the statute, a civil cause of action arises only when a violation of the statute results in a person's electronic communication being intercepted, disclosed, or intentionally used as defined under Section 2511. See Bailey v. Bailey, 2008 WL 324156, *7

(E.D.Mich. 2008).  On the other hand, Section 2512 *only* prohibits the manufacture, distribution, possession and advertising of particular devices.  Therefore a violation of Section 2512, even if proven, has nothing to do with the actual interception, disclosure, or use of an electronic communication and, thus, the language of Section 2520(a) does not apply.  See Bailey, supra.  As the Third Circuit and other circuit courts have held, there is no private right to bring a civil action under Section 2512.  See Bailey, supra; DIRECTV, Inc. v. Chorba, 2005 WL 3095067 (M.D.Pa. 2005); DIRECTV, Inc. v. Barker, 2004 WL 1729484 (E.D.Pa. 2004); DIRECTV, Inc. v. Boggess, 300 F.Supp.2d 444 (S.D.W.Va. 2004); DIRECTV, Inc. v. Morris, 357 F.Supp.2d 966 (E.D.Tex. 2004).

Section 2512 of the ECPA prohibits the manufacture, distribution, possession and advertising of a device that intercepts electronic communications.  This is the only one of the three statutes at issue that could apply to DesignerWare for an alleged violation of the ECPA. Because there is no provision for a private right to bring a civil action under Section 2512, Plaintiffs are not entitled to injunctive relief – or any civil relief – against DesignerWare.  In other words, while DesignerWare continues to maintain that it does not manufacture, distribute, possess or advertise a device that "intercepts electronic communications," Plaintiffs have no private right to bring a civil action for an alleged violation under Section 2512.

## C.   SHOULD PLAINTIFFS SUCCEED IN OBTAINING A PRELIMINARY INJUNCTION, PLAINTIFFS ARE REQUIRED TO POST SECURITY PURSUANT TO F.R.C.P. 65(c)

Pursuant to F.R.C.P. 65(c), this Court "may issue a preliminary injunction… only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  The injunction

bond serves two purposes: (1) it provides a fund to compensate defendants who were wrongfully enjoined; and (2) it generally defines the plaintiff's maximum exposure if it is later found that the injunction was wrongful.  See Sprint Communications Co. L.P. v. CAT Communications Intern., Inc., 335 F.3d 235, 240 (3d Cir. 2003).  Furthermore, the amount of the bond is committed to the discretion of the district court.  Id. at 239-40.

Plaintiffs state in their Brief (Document No. 10) that they do not believe that a bond is necessary in this case; but, if a bond is required, this Court should set it no higher than $5,000. Id. at p 7, n3.  However, as the facts will demonstrate, DesignerWare has lost approximately 30% of their revenue to date based on the negative publicity they have received by Plaintiffs taking this case to the media before DesignerWare had an opportunity to defend itself or its product.  If a mandatory preliminary injunction is issued that compels DesignerWare to disable the ability of its customers to use the Detective Mode feature of the PC Rental Agent software, DesignerWare's customers will likely view this as a condemnation of DesignerWare, causing DesignerWare to lose most if not all of its remaining customers.  Therefore, should this Court issue a preliminary injunction in this matter, DesignerWare requests that any bond be set at an amount that will compensate any business losses that DesignerWare has incurred to this point, and any business losses DesignerWare may incur in the future, should it later be determined that DesignerWare was wrongfully enjoined or restrained.

## V.    ALTERNATIVE TO AN ORDER ENJOINING DESIGNERWARE

On Page 6 and 7 of their Motion for Preliminary Injunction (Document No. 9), Plaintiffs outline the injunctive relief they seek in this matter.  However, DesignerWare objects to Plaintiffs' request for injunctive relief at Paragraph 1, which states:

> Defendants, their directors, officers, agents, servants, employees
> and persons and entities acting in concert with them are hereby
> enjoined during the pendency of this action and permanently from
> remotely activating any and all webcams embedded in their
> customers' computers and from accessing and or intercepting any
> other electronic communications (Document No. 9, p 6).

Plaintiffs further consolidated their requests for injunctive relief in their Status Report and

Request for Hearing (Document No. 28), which indicates that Plaintiffs seeks an order which,

*inter alia*, enjoins any party from using PC Rental Agent to take screen shots, monitor keystrokes

or take photographs of Aaron's customers [sic] and from using DesignerWare's server to

communicate these messages.  Id. at pp 1-2.  DesignerWare addressed this issue in its Response

to Plaintiffs' Request for Hearing Date (Document No. 29).

Plaintiffs' request for injunctive relief constitutes a request for a preliminary injunction that

alters the status quo and commands DesignerWare to take a positive act – i.e., disabling their

customers' access to the PC Rental Agent software feature known as Detective Mode – such that

it should be considered a disfavored mandatory preliminary injunction, and subject to a

substantially higher standard of proof.  In the alternative, if an order is to be entered,

DesignerWare prays that the order require any Master Account Holder to obtain a copy of a

police report, warrant, or other court order before they build/install/activate the Detective Mode

feature.  This would ensure that the franchisee stores are using the Detective Mode feature for the

recovery of lost or stolen property, and not for "spying" as Plaintiffs allege, until a determination

can be made at law or on the merits as to whether there has been any violation of the ECPA or the

CFAA.  This can be easily done given that DesignerWare has provided the list of all John Doe

Aaron's franchisee stores with whom it conducted business.

## VI.    CONCLUSION

Plaintiffs seek a mandatory preliminary injunction that alters the status quo and grants substantially all of the relief they seek should they succeed at a trial on the merits.   However, for all the reasons stated above, Plaintiffs are not entitled to injunctive relief here.   Therefore, Defendant DesignerWare, LLC, respectfully requests that this Court issue an Order denying Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted,

BURNS WHITE LLC

By:      /s/ David B. White
         David B. White, Esquire
         PA I.D. No. 36684
         dbwhite@burnswhite.com

         /s/ Lyle D. Washowich
         Lyle D. Washowich, Esquire
         PA I.D. No. 84348
         ldwashowich@burnswhite.com

         /s/ Brian M. Mancos
         Brian M. Mancos, Esquire
         PA I.D. No. 89720
         bmmancos@burnswhite.com
         Four Northshore Center
         106 Isabella Street
         Pittsburgh, PA  15212
         Phone:  (412) 995-3000
         Fax:  (412) 995-3300

         Attorneys for Defendant,
         DesignerWare, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of May, 2011 a copy of the foregoing Memorandum of Law in Opposition to Plaintiffs' Motion for Issuance of an Emergency Temporary Restraining Order and Imposition of Permanent Injunction was served on counsel of record, via electronic filing, addressed as follows:

Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, L.L.P.
820 O'Keefe Avenue
New Orleans, LA 70113
Via email:  ldavis@hhkc.com

James F. Green, Esquire
Herman Gerel LLP
4900 Seminary Road
Suite 650
Alexandria, VA 22311
Via email:  hgreen@ashcraftlaw.com

Michael W. Heaviside, Esquire
Herman Gerel LLP
4900 Seminary Road
Suite 650
Alexandria, VA 22311
Via email:  mheaviside@ashcraftlaw.com

Maury A. Herman, Esquire
Herman, Herman, Katz & Cotlar, L.L.P.
820 O'Keefe Avenue
New Orleans, LA 70113
Via email:  mherman@hhkc.com

Andrea S. Hirsch, Esquire
Herman Gerel LLP
230 Peachtree Street, NW
Suite 2260
Atlanta, GA 30303
Via email:  ahirsch@hermangerel

Frederick S. Longer, Esquire
Levin, Fishbein, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Via email:  flonger@lfsblaw.com

Daniel C. Levin, Esquire
Levin, Fishbein, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Via Email:  dlevin@lfsblaw.com

Michelle Parfitt, Esquire
Herman Gerel, LLP
4900 Seminary Road
Suite 650
Alexandria, VA 22311
Via email:  mparf@aol.com

Christopher V. Tisi, Esquire
Herman Gerel, LLP
2000 L Street, NW
Suite 400
Washington, DC 20036
Via email:  cvtisi@aol.com

Neal R. Devlin, Esquire
Knox, McLaughlin, Gornall & Sennett
120 West Tenth Street
Erie, PA 16501
Via Email:  ndevlin@kmgslaw.com

Richard A. Lanzillo, Esquire
Knox, McLaughlin, Gornall & Sennett
120 West Tenth Street
Erie, PA 16501
Via Email:  rlanzillo@kmgslaw.com

Kristine McAlister Brown, Esquire
Alston & Bird LLP
1201 W. Peachtree Street
Atlanta, GA 30309
Via Email:  kristy.brown@alston.com

John H. Robinson, Esquire
Jamieson & Robinson, LLC
214 South Grant Street
Casper, WY 82601
Via Email: robinsn@vcn.com


Respectfully submitted,

BURNS WHITE LLC


By:   /s/ David B. White_____
      David B. White, Esquire
      Counsel for Defendant
      DesignerWare, LLC