IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRYSTAL BYRD and BRIAN BYRD, Individually, and on Behalf of all Similarly Situated Persons, | Civil No. 1:11-CV-101-SPB |
| Plaintiffs, | |
| -vs- | **DEFENDANT ASPEN WAY ENTERPRISES, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** |
| AARON'S, INC.; ASPEN WAY ENTERPRISES, INC., d/b/a Aaron's Sales and Leasing, a franchisee of Aaron's Inc.; JOHN DOES (1-100) AARON'S FRANCHISEES; and DESIGNERWARE, LLC, | |
| Defendants. | |

Defendant Aspen Way Enterprises, Inc. ("Aspen Way"), a Montana corporation, respectfully requests that it be dismissed from this Pennsylvania action for lack of personal jurisdiction pursuant to Fed. R. Civ. 12(b)(2).   Aspen Way is a Montana corporation which conducts business in a limited region in the Northwest United States.   Aspen Way does not conduct business in Pennsylvania.   Aspen Way does not own property, solicit customers, or transact business in Pennsylvania.   Simply put, Aspen Way does not have contacts with Pennsylvania such that the exercise of jurisdiction over it by a Pennsylvania court would be appropriate.   The Plaintiffs themselves, Crystal and Brian Byrd ("the Byrds") are not even Pennsylvania residents.   They are Wyoming residents.   Moreover, the acts complained-of in this case, as against Aspen Way, occurred in Wyoming, not Pennsylvania.   The only connection to Pennsylvania that exists in this case is that one single Defendant, out of three named Defendants and 100 John Doe Franchisee Defendants, is apparently a Pennsylvania limited liability

company.  Requiring Aspen Way to litigate this case in Pennsylvania, when it has done nothing to submit to the jurisdiction of a Pennsylvania court, would be a significant compromise of Aspen Way's Fourteenth Amendment rights.  Aspen Way respectfully requests that this Court grant its Motion to Dismiss for lack of personal jurisdiction.

## INTRODUCTION

Aspen Way is a Montana corporation that owns and operates Aaron's franchise "sales and lease" stores in a limited region in the Northwest United States.  One of Aspen Way's stores is located in Casper, Wyoming.  The Byrds are residents of Casper, Wyoming.  In addition to naming Aspen Way as a Defendant in this litigation, the Byrds have also named Aaron's Inc., a Georgia corporation.  Aaron's Inc. franchises Aaron's stores to various individuals throughout the United States.  Defendant Designerware, LLC ("Designerware) is a Pennsylvania company which designs and licenses computer software operating under the name "PC Rental Agent."

Aspen Way acquired a license for PC Rental Agent from Designerware within the last several years.  Since acquiring the initial license, Aspen Way has used PC Rental Agent on computers owned by Aspen Way.  The computers at issue are leased to Aspen Way's customers.  Aspen Way's customers are all located in the Northwest Region of the United States.  Aspen Way does not have Pennsylvania customers.  Aspen Way does not market to individuals in Pennsylvania.  Aspen Way does not conduct business, sell products, or lease products in Pennsylvania.  Other than by mailing payments for its software license to a Pennsylvania address utilized by Designerware, Aspen Way has absolutely no contacts with Pennsylvania.  In fact, prior to this litigation arising, from the time Aspen Way acquired its license until just a few weeks ago, Aspen Way was not aware that Designerware was a Pennsylvania company.  Aspen

Way has never physically met with any Designerware employees in Pennsylvania (or anywhere else for that matter).

The Byrds' claims arise from their lease of an Aspen Way computer from Aspen Way's Casper, Wyoming store ("Wyoming store"). The computer leased by the Byrds contained a package of various software applications, including an installation of PC Rental Agent. After learning that PC Rental Agent had been installed on the computer leased by them from Aspen Way, the Byrds filed this lawsuit, alleging violations of Electronic Communications Privacy Act and violations of the Computer Fraud and Abuse Act.

## STANDARD OF REVIEW

I.  **THE BYRDS MUST COME FORWARD WITH SUFFICIENT FACTS TO ESTABLISH A *PRIMA FACIE* CASE IN FAVOR OF PERSONAL JURISDICTION.**

"When a motion to dismiss under Fed. R. Civ. P. 12(b)(2) is filed, the burden falls upon the plaintiff to come forward with sufficient facts to establish a *prima facie* case in favor or personal jurisdiction." *Barrett, M.D. v. Catacombs Press*, 44 F.Supp.2d 717, 722 (E.D. Pa. 1999) (citation omitted). A Plaintiff may meet this burden by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS, Nat'l. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3rd Cir. 1992). In this case, the Byrds' "may not rest on mere allegations in the complaint but must support such jurisdictional allegations with appropriate affidavits or other evidence." *Barrett, M.D.,* 44 F. Supp. 2d at 722.

## FACTS ESTABLISHING LACK OF PERSONAL JURISDICTION

Aspen Way is a Montana corporation, with its principal place of business in Montana. (*See* Affidavit of Rohnn Lampi at p. 1, ¶ 3, attached hereto as Exhibit "A"); (*see also*, Affidavit of John Pollock at pg. 1, ¶ 1, attached hereto as Exhibit "B"). Aspen Way owns and operates

"sales and lease" stores in various states in the Northwest United States, and has done so since 1999. *See id.* at p. 2, ¶ 4; (*see also*, Exh. "B" at p. 1, ¶ 3).  Aspen Way operates these stores pursuant to Franchise Agreements with Defendant Aaron's Inc. ("Aaron's). *See id.* at p. 2, ¶ 5.

Aspen Way opened its first store in Billings, Montana in 1999, followed by a second and third store in Rapid City, South Dakota and Spokane, Washington. *See id.* at p. 2, ¶ 6.  In total, Aspen Way owns and operates 16 stores in the following six-state region: Montana, Wyoming, South Dakota, Colorado, Idaho, and Washington. *See id.* at p. 2, ¶ 7.[1]  Aspen Way has never owned or operated any stores in Pennsylvania. *See id.* at pg. 2, ¶ 9; (*see also*, Exh. "B" at p. 2, ¶ 4).  In fact, Aspen Way has never owned or operated any stores in any area of the Eastern United States. *See id.* at pg. 2, ¶ 10; (*see also*, Exh. "B" at p. 2, ¶ 5).

Aspen Way does not conduct any business in Pennsylvania (or the Eastern United States for that matter), nor is it registered or licensed to conduct any business in Pennsylvania (or the Eastern United States for that matter). *See id.* at pp. 2-3, ¶¶ 11-12; (see also, Exh. "B" at p. 4, ¶ 20-21).  Aspen Way has never sent any of its employees or agents to Pennsylvania in relation to its business dealings. *See id.* at p. 4, ¶ 27.  Aspen Way has likewise never owned any real or personal property in Pennsylvania or the Eastern United States, nor has Aspen way ever maintained or leased any office, residence, or place of business in Pennsylvania or the Eastern United States. *See id.* at p. 3, ¶¶ 13-16.

Aspen Way typically focuses its marketing and advertising efforts on customers that live within a thirty-mile radius or less of its store locations. *See id.* at p. 4, ¶ 21.  This enables Aspen

---

[1]     In addition to its local business dealings (which are its only dealings), Aspen Way focuses its charitable support entirely on local organizations. (*See* Exh. "A" at p. 6, ¶ 41).  Aspen Way has provided a new computer lab for a Billings, MT Elementary School, supported local American Legion Baseball, the Boys and Girls Club of Yellowstone County, MT, the Billings Catholic Schools, and other local charities. *See id.* at pp. 6-7, ¶ 41).

Way to promptly and efficiently service customers, as well as to collect payments and leased equipment. *See id.* Consequently, Aspen Way does not market or advertise in Pennsylvania or anywhere in the Eastern United States. *See id.* at p. 3, ¶¶ 17-18.  In fact, Aspen does not market or advertise outside of the six-state region in which it operates. *See id.* at p. 3, ¶ 19.

Approximately 92% or more of Aspen Way's customers reside within a thirty-mile radius of an Aspen Way store, and virtually every single customer resides within less than 80 miles of an Aspen Way store location. *See id.* at p. 4, ¶ 22, 24.  Thus, Aspen Way does not have customers anywhere in or near Pennsylvania (or the Eastern United States for that matter). *See id.* at p. 4, ¶¶ 25-26.

Aspen Way's stores sell, as well as lease-to-own, computers and electronic equipment (along with various other merchandise). *See id.* at p. 4, ¶ 28.  The computers that Aspen Way leases to customers are owned by Aspen Way. (*See* Exh. "B" at p. 2, ¶ 7).  Customers of Aspen Way agree to use these computers pursuant to specific payment, terms, conditions, and other obligations. *See id.* at p. 2, ¶ 6.  Aspen Way leases these computers with various software and hardware packages already installed on them. *See id.* at p. 2, ¶ 8.

Throughout Aspen Way's store history, customers have, on occasion, defaulted on their lease agreements and/or reported that the computers leased from (and which are owned by) Aspen Way have been lost or stolen. (*See* Exh. "A"  at p. 5, ¶ 29.  Consequently, in an attempt to reduce the losses resulting from stolen computers and defaulting customers,  Aspen Way licensed software (called PC Rental Agent) from Designerware for use with the computers Aspen Way leases to customers. *See id.* at p. 5, ¶ 30; (*see also*, Exh. "B" at p. 2, ¶ 10).  PC Rental Agent was provided to Aspen Way (and apparently other users) pursuant to an End User License Agreement. (*See* Exh. "B" at pp. 2-3, ¶ 10).

PC Rental Agent was marketed by Designerware as a way of mitigating losses resulting from customers who default on their lease agreements and to find and recover lost or stolen computers. *See id.* at p. 3, ¶ 11.  In or around April 2007, at an Annual Manager's Meeting in Texas, Travis Higdon (Aspen Way's Director of Operations at the time) learned about PC Rental Agent from Aaron's Director of Western Franchise Operations. (*See* Affidavit of Christin Pfau at pp 2-3, ¶¶ 5, 6, 9, attached hereto as Exhibit "C").  Annual Manager's Meetings are sponsored by Aaron's to provide information to Aaron's franchisees, as well as Aaron's own corporate stores. *See id.* at p. 2, ¶ 7.

After learning about PC Rental Agent from Aaron's Director of Western Franchises, Travis Higdon subsequently contacted Tim Kelly (of Designerware) to gather more information about PC Rental Agent. *See id.* at p. 3, ¶ 10.  Not long after that, Aspen Way licensed PC Rental Agent, making its initial payment by mail to Designerware on or about April 30, 2007. *See id.* at p. 3, ¶ 11.

PC Rental Agent provides Aspen Way the ability to lock-down an Aspen Way computer if a customer defaults on his or her lease or if an Aspen Way computer is believed to be lost or stolen. (*See* Exh. "B" at p. 3, ¶ 14).  PC Rental Agent also allows Aspen Way the ability to locate an Aspen Way Computer by automatically tracking the GPS coordinates of the computer (so long as the computer is connected to the internet). *See id.* at p. 3, ¶ 14.  However, the GPS coordinates only provide the longitude and latitude of Aspen Way's computers; consequently, if Aspen Way wanted to more specifically identify the location of one of its computers, Aspen Way has to enter the GPS coordinates into a search engine like *Google Maps*. *See id.* at pp 3-4, ¶¶ 15-16.

As part of the licensing of PC Rental Agent, Designerware provides technical support to Aspen Way on an as-needed basis. *See id.* at p. 7, ¶ 40. This technical support has never been provided in person; rather it is done over the phone or through the internet. *See id.*  In fact, Aspen Way's contacts with Designerware (in any regard) have never been in person. *See id.* at p. 7, ¶ 41; (see also, Exh. "A" at p. 5, ¶ 31).   They have only been by mail, phone, or through the internet. *See id.* at p. 7, ¶ 42.   Thus, no Aspen Way employee or agent has ever personally appeared in Pennsylvania for any purposes related to Aspen Way's licensing of PC Rental Agent. (*See* Exh. "A" at p. 5, ¶ 33).

Designerware provides Aspen Way with PC Rental Agent on a single Compact Disc ("CD"), which is sent to each Aspen Way store through the mail. (*See* Exh. "B" at p. 3, ¶ 12); (*see also*, Exh. "A" at p. 5, ¶¶ 34-35).   When Aspen Way's stores receive PC Rental Agent by mail, store employees install it on the computers owned by Aspen Way, which are then leased to customers. *See id.* at pp. 4-5, ¶¶ 17, 25.   PC Rental Agent has never been installed by Aspen Way at any locations other than the ones that it owns and operates in the Northwest United States. *See id.* at p. 4, ¶ 19. Aspen Way does not own computers located anywhere outside of the Northwest United States where it operates its stores. *See id.* at p. 4, ¶ 23.

Aspen Way's computers are only leased to customers that generally reside within a thirty-mile or less radius of an Aspen Way store location. *See id.* at p. 5, ¶ 27. Thus, Aspen Way does not lease computers to Pennsylvania residents. *See id.* at p. 5, ¶ 26.

The first time an Aspen Way computer (with PC Rental Agent installed on it) connects to the internet, PC Rental Agent automatically sends Aspen Way an e-mail with the computer's coordinates. *See id.* at p. 5, ¶ 28.   The email is sent to Aspen Way's general manager email account (an Aspen Way business account). *See id.* at p. 5, ¶ 29. Aspen Way does not know the

physical location of where these initial emails are sent from, but the sender of the e-mail is identified as Designerware. *See id.* at p. 5, ¶ 30.

After this initial e-mail is sent, if Aspen Way needs to obtain the coordinates of any of its computers (for instance when one is believed to be lost or stolen), Aspen Way is required to log into Designerware's website. *See id.* at pp. 5-6, ¶ 31.   Aspen Way does not log into Designerware's website from any computer located in Pennsylvania. *See id.* at p. 6, ¶ 32.  Rather, all of the computers that Aspen Way uses to log into Designerware's website are located in the Northwest United States. *See id.* at p. 6, ¶ 33.

Sometime after Aspen Way initially licensed PC Rental Agent, Designerware automatically updated the software to include a feature known as the "detective feature." *See id.* at p. 6, ¶ 35.  Aspen Way did not request that Designerware update PC Rental Agent with the "detective feature," nor does Aspen Way pay additional money for this feature. *See id.* at p. 6, ¶¶ 36-37. Designerware informed Aspen Way that this feature was created by Designerware to assist its customers in locating their lost or stolen computers and recovering their leased merchandise. *See id.* at p. 6, ¶ 38.  In order to activate the "detective feature," Aspen Way is required to log into Designerware's website and select the feature, which is then activated by Designerware. *See id.* at p. 7, ¶ 39.

Aspen Way pays Designerware for PC Rental Agent on an annual basis for its usage at each of Aspen Way's locations, unless Aspen Way is licensing PC Rental Agent for a new store. (*See* Exh. "C" at p. 3, ¶ 12).  All payments in this regard occur through the mail.  *See id.* at p. 3, ¶ 13-14.

While Aspen Way sends its payments to a Pennsylvania address, like many of the vendors it deals with, Aspen Way was unaware of where Designerware was actually located.

(*See* Exh. "B" at p. 7, ¶ 43). Aspen Way did not deal with Designerware in Pennsylvania, nor has it ever, to Aspen Way's knowledge, dealt with any business in Pennsylvania. (See Exh. "A" at p. 6, ¶ 38). Not until the filing of this lawsuit did Aspen Way learn of Designerware's physical location, principal place of business, and state of incorporation. (*See* Exh. "B" at p. 7, ¶ 43); (*see also*, Exh. "A" at p. 6, ¶ 37).

The Byrds now sue Aspen Way in Pennsylvania in relation to Aspen Way utilizing PC Rental Agent on Aspen Way's leased computer. (*See generally,* Plfs.' Compl.) The Byrds claim that Pennsylvania has jurisdiction over Aspen Way by alleging that Aspen Way has purposely availed itself of the jurisdiction of a Pennsylvania court "through the use of the [software] and technical support offered by Designerware in Pennsylvania[.]" *See id.* at pp. 3-4, ¶ 10. The Byrds claim that Pennsylvania has jurisdiction over Aspen Way despite that:

(1)    Aspen Way did not purposely avail itself of Pennsylvania in relation to the Byrds;

(2)    The Byrds' causes of action do not arise out of Aspen Way's extremely limited contact with Pennsylvania; and

(3)    The exercise of jurisdiction over Aspen Way would offend all notions of "fair play and substantial justice."

As more fully explained herein, Aspen Way respectfully requests the Court to dismiss it from this case for lack of personal jurisdiction. Personal jurisdiction over Aspen Way, as a Montana corporation -- in the state of Pennsylvania -- does not exist.

## ARGUMENT

**I.    THIS COURT SHOULD DISMISS ASPEN WAY BECAUSE IT WOULD VIOLATE ASPEN WAY'S CONSTITUTIONAL RIGHT TO DUE PROCESS IF IT EXERCISED PERSONAL JURISDICTION OVER IT.**

As explained by the Third Circuit Court of Appeals in *Pennzoil Products Company v. Colelli & Associates, Inc.*, [t]here are specific analytical steps [a court] must take in determining

whether personal jurisdiction can be asserted over a non-resident defendant." *Pennzoil Products Company*, 149 F.3d 197, 200 (3rd Cir. 1998).  The first step involves analysis under Fed. R. Civ. P. 4(e), which "'authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits.'" *Id.* (quoting *Farino*, 960 F.2d at 1221).  Thus, the first step of the analysis occurs under Pennsylvania's long-arm statute, codified at 42 Pa. Cons. Stat. Ann. § 5322. *See id.*

Pennsylvania's long-arm statute permits its courts to exercise personal jurisdiction over non-resident defendants "'to the constitutional limits of the [D]ue [P]rocess [C]lause of the [F]ourteenth Amendment.'" *Id.* (citations omitted). This Court's exercise of personal jurisdiction under that statute, therefore, is valid only if it is constitutional. *See id.* (citations omitted).  In order to determine whether it is constitutional, the court must analyze Aspen Way's contacts with Pennsylvania in relation to the Byrds' causes of action. *See id.*

In any lawsuit involving a non-resident defendant, a court can have either general or specific jurisdiction over that defendant. *See id.* at 200-01.  "A nonresident's contacts with the forum must be 'continuous and substantial' to establish general jurisdiction." *Id.* (citation omitted).  Such contacts include "participating in a consecutive series of activities **from within** the forum state." *Barrett, M.D.*, 44 F. Supp. 2d at 723 (emphasis added).  If a court "has general jurisdiction over a party, that party can be haled into court in that state 'regardless of whether the subject matter of the cause of action has any connection to the forum.'" *Pennzoil Products Company,* 149 F.3d at 200 (citation omitted).

Here, the Byrds not only fail to plead facts attempting to establish general jurisdiction, but any attempt to do so would be futile. *See e.g.*, *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 418 (1984)  (holding that purchasing millions of dollars worth of products,

negotiating a contract, and training employees from within the forum state was insufficient to establish general jurisdiction).  Consequently, the Byrds must establish specific jurisdiction over Aspen Way.

"A defendant may be subject to specific jurisdiction 'when the cause of action arises from the defendant's forum related activities such that the defendant should reasonably anticipate being haled into court there.'" *Vetrotex v. Certainteed Corp.*, 75 F.3d 147, 151 (3rd Cir. 1996) (citations omitted).  The Third Circuit undertakes the following three-part inquiry in determining whether there is specific jurisdiction over a defendant:

    (1)    First, the defendant must have 'purposely directed [it]s activities at the forum[;]

    (2)    Second, the litigation must 'arise out of or relate to' at least one of those activities[; and]

    (3)    [T]hird, if the first two requirements have been met a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"[2]

*See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3rd Cir. 2009) (citations omitted).

Here, none of these three requirements are met, as more fully set forth below, and therefore, Aspen Way respectfully requests that the Court dismiss it from this case.

**A.    The Court Should Dismiss Aspen Way Because it did not Purposely Direct Any Activities at Citizens of Pennsylvania.**

"[T]he critical finding that [a] defendant purposefully availed itself of the privilege of conducting activities within the forum requires contacts that amount to a deliberate reaching into the forum state **to target its citizens**." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103-04 (3rd Cir. 2009) (citations omitted) (emphasis added).

---

[2]    The Third Circuit has referred to the application of this assessment "as mandatory, not discretionary." *Pennzoil Products Company*, 149 F.3d at 206 (citation omitted).

Here, Aspen Way did not knowingly reach into Pennsylvania to target anyone, let alone Pennsylvania citizens. (*See* Exh. "B" at pg. 7, ¶ 43); (*see also*, Exh. "A" at p. 6, ¶ 37). Furthermore, and even assuming Aspen knowingly "reached" into Pennsylvania, Aspen did so with the purpose of targeting its customers, all of whom reside in the Northwest United States. (*See* Exh. "A" at p. 4, ¶¶ 22, 24). Thus, this Court lacks personal jurisdiction over Aspen Way. The *D'Jamoos* case is illustrative.

In *D'Jamoos*, an air plane manufactured by the non-resident defendant crashed in Pennsylvania. *See id.* at 97-98. The representatives of the decedents brought suit against the nonresident defendant in Pennsylvania. *See id.* at 98. The decedents and their representatives were nonresidents as well. *See id.* The defendant manufacturer moved to dismiss for lack of personal jurisdiction, arguing that it had almost no contact with Pennsylvania based on the following:

> (1)   it never had offices, mailing addresses, telephone numbers, facilities, employees, officers, directors, owners, shareholders, agents, assets, investments, bank accounts, or subsidiaries in Pennsylvania;
>
> (2)   It never owned, leased, or used real property in Pennsylvania;
>
> (3)   It never registered to do business in Pennsylvania; and
>
> (4)   It never advertised or marketed products in Pennsylvania.

*See id.* at 99.

The defendant manufacturer did, however, have some direct contact within Pennsylvania. *See id.* Years before the plane crash, the defendant sent two employees to Pennsylvania in connection with a potential supplier. *See id.* The defendant also purchased more than one million dollars in products and services from suppliers in Pennsylvania. *See id.*

On appeal, the Third Circuit found the manufacturer's direct contact with Pennsylvania to be quite limited. *See id.* at 103.   The Court also noted that the defendant manufacturer did not profit from activities in Pennsylvania. *See id.*   After stating that purposeful availment "requires contacts that amount to a deliberate reaching into the forum state **to target its citizens**," the Court went on to find that the defendant's activities did "not constitute the type of deliberate contacts within Pennsylvania that could amount to purposeful availment. . . ." *Id.* at 401 (emphasis added).   The defendant may have reached into Pennsylvania, but it did so with the intent of targeting a national market – not solely Pennsylvania. *See id.*

Here, as with the defendant manufacturer in *D'Jamoos*, Aspen Way does not:

(1)     have offices, mailing addresses, telephone numbers, facilities, employees, officers, directors, owners, shareholders, agents, assets, investments, bank accounts, or subsidiaries in Pennsylvania;

(2)     own, lease, or use real property in Pennsylvania;

(3)     registered to do business in Pennsylvania; or

(4)     advertise or market products in Pennsylvania.

(*See* Exh. "A" at p. 3, ¶¶ 11-18).  Aspen Way has never had any of the aforementioned contacts.

In addition, while the defendant in *D'Jamoos* had direct physical contact with Pennsylvania (in the form of sending two employees to Pennsylvania), the same cannot even be said here.  No Aspen Way employee or agent has ever been to Pennsylvania in relation to Aspen Way's business dealings. (*See* Exh. "A" at p. 4, ¶ 27).   Rather, the only contact that Aspen Way has knowingly had with Pennsylvania has been the mailing of 16 payments to a Pennsylvania address. (*See* Exh. "C" at p. 3, ¶ 13-14); (*See also,* Exh. "B" at p. 7, ¶ 43).  The mailing of these payments was not to Pennsylvania because Aspen Way knew Designerware to be a Pennsylvania

company.   Aspen Way had no knowledge of where Designerware was located.   Aspen Way merely mailed its checks to the location specified for payment by Designerware.

Furthermore, while it could be expected that a manufacturer knows (or should know) where it is obtaining more than one million dollars' worth of products and services (like the *D'Jamoos* defendant), the same cannot be said with Aspen Way and its connection to Designerware.   Rather, Aspen Way spends only a few thousand dollars per year to license software from Designerware. (*See* Exh. "C" at p. 3, ¶ 13-14).  All of Aspen Way's contacts with Designerware have been by mail, over the phone, or through the internet. (*See* Exh. "B" at p. 7, ¶ 42).

Given these facts, there can be no reasonable expectation that Aspen Way would know that Designerware was a Pennsylvania company located in Pennsylvania, let alone an expectation that Aspen Way could be sued, 1) as a Montana corporation conducting business in the Northwest United States, 2) in Pennsylvania, 3) by residents of Wyoming -- simply because of the licensing. *See e.g., Pettus v. Combs*, 2006 WL 1677778, p. 3 (W.D. Tex.) ("The defendant must be chargeable with knowledge of the forum at which his conduct is directed in order to reasonably anticipate being haled into court in that forum. . . .").

In the end, the Third Circuit in *D'Jamoos* questioned whether the defendant had purposely availed itself of jurisdiction in Pennsylvania because, although the defendant had contact with Pennsylvania, that contact was not ultimately directed at citizens of Pennsylvania. Rather, the ultimate end of the *D'Jamoos* defendant's contact with Pennsylvania was directed elsewhere.   The same is true here.  Aspen Way had extremely limited contact with Pennsylvania in relation to licensing and use of PC Rental Agent, the ultimate end of which was directed at customers of Aspen Way – located all of the way across the country from Pennsylvania. (*See*

14

Exh. "A" at p. 5, ¶¶ 29-30).   Aspen Way has no customers in Pennsylvania. *See id.* at p. 4, ¶¶ 25-26. Aspen Way has absolutely no business in Pennsylvania.   Thus, Aspen Way neither purposely availed itself of the jurisdiction of Pennsylvania, nor was any such availment directed at citizens of Pennsylvania.

The Byrds cannot carry their burden, and therefore, Aspen Way respectfully requests that it be dismissed from this case for lack personal jurisdiction.

**B.**   **The Court Should Dismiss Aspen Way Because the Byrds' Causes of Action Do Not Arise out of Aspen Way's Contacts with Pennsylvania.**

[F]or a plaintiff's claim to "arise out of or relate to" the defendant's contacts with the forum state, there must be "a closer and more direct causal connection than that provided by the but-for test," but a connection that is looser than the tort concept of proximate causation. *O'Conner v. Sandy Lane Hotel Co.,* 496 F.3d 312, 323 (3rd Cir. 2007). "[I]t must . . . be intimate enough to keep the quid pro quo [i.e. the benefits and burdens accompanying the contact with the forum] proportional and personal jurisdiction reasonably foreseeable." *Id.*   In order to maintain the reciprocal exchange of benefits and burdens, the relatedness requirement "must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations." *See id.*

While the assessment of whether a plaintiff's cause of action arises out of a defendant's contacts with a forum is often a fact-sensitive inquiry, here the assessment is made easier because this case is analogous to the situation described in *Peek v. Golden Nugget Hotel and Casino,* 806 F. Supp. 555, 558 (E.D. Pa. 1992) (citations omitted).  In *Peeks*, the court noted the long-standing principle that:

> **When a plaintiff brings an action for personal injuries suffered in another state, as a result of the defendant's negligent activities within that state, courts have concluded that 'the cause of action does not arise from the**

> **defendant's forum contacts for the purposes of asserting personal jurisdiction.'**

*Peek*, 806 F. Supp. 555, 558 (E.D. Pa. 1992) (citations omitted).[3]

In this case, the Byrds bring an action for damages suffered in Wyoming as a result of Aspen Way's alleged activities in Wyoming – specifically, using PC Rental Agent in relation to the computer leased to the Byrds. (*See generally*, Plfs.' Compl.)  Thus, the Byrds' causes of action arise from Aspen Way's contacts in Wyoming – not Pennsylvania.

Ultimately, a defendant cannot be subject to a state's jurisdiction simply because the instrument used in the complaining acts came from that state.  It is the acts which give rise to a cause of action, not the instrumentality.  In this case, the alleged acts of Aspen Way occurred in Wyoming in regard to Wyoming residents.

The Byrds cannot carry their burden of establishing personal jurisdiction in Pennsylvania because their causes of action against Aspen Way arise from Aspen Way's contacts with Wyoming.  Therefore, for this additional reason, Aspen Way submits that dismissal is appropriate.

### C.   The Court Should Dismiss Aspen Way Because the Exercise of Jurisdiction over Aspen Way Would Inflict a Substantial Injustice on Aspen Way.

Even if Aspen Way had sufficient minimum contacts with Pennsylvania to have reasonably anticipated being haled into court there, the exercising of jurisdiction by this Court would not comport with notions of "fair play and substantial justice."  The Third Circuit has identified the following factors to consider in making this determination:

(1)   the burden on the defendant;

---

[3]   The "effects test," which is used to determine whether there is personal jurisdiction in intentional torts' claims, is very similar to this *Peeks* principle. *See e.g., Rychel v. Yates*, 2011 WL 1363751, p. 13 (W.D. Pa.).

(2)    the forum State's interest in adjudicating the dispute;

(3)    the plaintiff's interest in obtaining convenient and effective relief;

(4)    the interstates judicial system's interest in obtaining the most efficient resolution of controversies; and

(5)    the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* at 205-06 (citations omitted).

As more fully explained below, none of these factors favor Pennsylvania as the proper forum for this matter.  Thus, the Court's exercise of jurisdiction over Aspen Way would offend the notions of "fair play and substantial justice," and ultimately violate Aspen Way's constitutional right to Due Process.

**1.    Aspen Way would be greatly burdened by being forced to litigate this case in Pennsylvania.**

The burden on Aspen Way of litigating this case in Pennsylvania is obvious.  The Byrds are attempting to force Aspen Way to litigate in a distant forum where Aspen Way has no offices, employees, customers, or, for that matter, any remote business connection. (*See* Exh. "A" at p. 3, ¶¶  13-16).  Aspen Way would have to travel across the country (at great expense) for all proceedings.  To impose such a burden on Aspen Way would be unjust, and as a result, this factor clearly favors Aspen Way's dismissal.

**2.    Pennsylvania has little interest in adjudicating a dispute by nonresident plaintiffs against a nonresident defendant.**

Pennsylvania's lack of interest in adjudicating this dispute is also obvious.  The Byrds are residents of Wyoming who allege to have suffered damages in Wyoming as a result of Aspen Way's alleged acts in Wyoming. (*See generally*, Plfs.' Compl.)  Consequently, Pennsylvania has little interest in providing a forum to nonresident plaintiffs for acts occurring outside of

Pennsylvania. *See e.g.*, *Willis v. Willis*, 655 F.2d 1333, 1338 (D.C. Cir. 1981) ("The District of Columbia has little interest in providing a forum to a nonresident plaintiff.") (citation omitted).

If anything, Pennsylvania has an interest in dismissing this case "to discourage forum shopping in an action commenced, as it was, by . . . non-resident plaintiff[s] against a non-resident defendant, upon . . . cause[s] which ha[ve] very questionable nexus with the Commonwealth of Pennsylvania." *Inductotherm Corp. v. Pillar Corp.*, 417 F. Supp. 991, 993 (E.D. Pa. 1976). In the end, this factor quite obviously favors dismissal of Aspen Way.

3. **The Byrds' interest in obtaining convenient and effective relief is   not furthered by litigating this matter in Pennsylvania**.

An assessment of the Byrds' interest in obtaining convenient and effective relief quickly reveals that Pennsylvania is not the appropriate forum. As illustrated by the Court in *Koff v. Brighton Pharmaceutical, Inc.*, 709 F. Supp. 520, 528 (D. N.J. 1988), the primary consideration in this context is the location of witnesses. In this case, not only do the Byrds reside in Wyoming and Aspen Way conducts business in Wyoming, but most (if not all), of the non-party witnesses in this case will come from Wyoming. Thus, this factor likewise favors Aspen Way's dismissal.

4. **The judicial system's interest in obtaining the most efficient resolution of this case requires the Court to dismiss Aspen Way.**

An inquiry into the fourth factor above (regarding whether the forum state is the most efficient place to litigate) requires numerous considerations. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1097 (10th Cir. 1998). One such consideration is the location of witnesses. *See e.g.*, *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2nd Cir. 1996). Another consideration is where the wrong underlying the lawsuit occurred. *See e.g.*, *Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141, 148 (3rd Cir. 1992). A further

consideration is what forum's substantive law governs the case. *See e.g., FDIC v. British-American Ins. Co.*, Ltd., 828 F.2d 1439, 1444 (9th Cir. 1987).   Finally, an additional consideration is whether jurisdiction is necessary to prevent piecemeal litigation. *See e.g., Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 850-51 (11th Cir. 1988).

In this case, and as already noted above, the Byrds, Aspen Way, and most (if not all) of the non-party witnesses are located in Wyoming. (*See generally*, Plfs.' Compl.)  Likewise, the alleged wrong underlying this suit occurred in Wyoming.   In addition, and while federal substantive law currently governs the case, if the Byrds amend their Complaint to assert state law causes of action, then Wyoming law would clearly apply.   Finally, there is no need for Pennsylvania to maintain jurisdiction to prevent piecemeal litigation.   The Court can easily transfer venue to Wyoming, where jurisdiction would be proper against all defendants.   In summary then, Pennsylvania is not the most efficient forum.

### 5.   The exercise of jurisdiction by Pennsylvania would affect the substantive social policy interests of Wyoming.

The Byrds' causes of action clearly implicate the fundamental right to privacy, which any state has a strong social policy interest in protecting and ensuring for its citizens.   Accordingly, Wyoming has strong social policy interest in this matter because the Byrds are residents of Wyoming. *See e.g.*, *Pound v. Airosol Co., Inc.,* 2003 WL 22102142, p. 6 (D. Kan.) (finding this factor favored the forum where the product at issue originated because the plaintiff's claims raised **significant environmental and trade restriction policy issues**) (emphasis added).   This factor, along with the others, favors Aspen Way's dismissal.   Any other result would offend all notions of "fair play and substantial justice."

**CONCLUSION**

The foregoing analysis makes it very clear that personal jurisdiction over Aspen Way, a Montana corporation, by this Pennsylvania court would not be proper.  The Byrds cannot meet their burden of establishing that Aspen Way purposely availed itself of Pennsylvania in relation to their claims.  Aspen Way did not knowingly avail itself of Pennsylvania in such a way as to establish jurisdiction over it in this case. Furthermore, Aspen Way's contacts were directed at its customers in the Northwest United States – not Pennsylvania.

The Byrds' causes of action also do arise out of Aspen Way's contacts with Pennsylvania.  Rather, the Byrds bring this action against Aspen Way for damages allegedly suffered in Wyoming as a result of Aspen Way's alleged acts in Wyoming.  Thus, the Court cannot exercise specific personal jurisdiction over Aspen Way because Aspen Way did not have the requisite minimum contacts with Pennsylvania.

Finally, the exercise of personal jurisdiction would be unconstitutional.  The facts supporting jurisdiction in Pennsylvania are so lacking that the notions of fundamental fairness inherent in the Due Process Clause preclude the Court from exercising jurisdiction over Aspen Way.  The five factors addressed above dictate that to subject Aspen Way to the rigors of litigating in Pennsylvania (which has no genuine interest in the dispute and with which Aspen Way has only limited contacts), would be unreasonable and inconsistent with the notions of "fair play and substantial justice."  Aspen Way respectfully requests that this Court dismiss it from this lawsuit for lack of personal jurisdiction.

**DATED** this 6th day of June, 2011.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By:   /s/ W. Scott Hardy
W. SCOTT HARDY
PA ID 79225
444 Liberty Avenue, Ste. 400
Pittsburgh, PA 15222
Telephone: (41) 394-3346
Fax: (412) 232-1799
scott.hardy@ogletreedeakins.com

MOULTON BELLINGHAM PC


By:   /s/ Michele L. Braukmann
MICHELE L. BRAUKMANN, *Pro Hac Vice* Pending
MT 6028
ROSS W. McLINDEN, *Pro Hac Vice* Pending
MT 9597
ND 06673
27 N. 27th Street, Ste. 1900
Billings, Montana 59103-2559
Telephone (406) 248-7731
Fax (406) 248-7889
Michele.Braukmann@moultonbellingham.com
Ross.McLinden@moultonbellingham.com

ATTORNEYS   FOR   DEFENDANT   ASPEN   WAY
ENTERPRISES, INC.

ND: 4848-6087-7833, v.  1

21

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of June, 2011, I electronically filed the foregoing **DEFENDANT ASPEN WAY ENTERPRISES, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Andrea S. Hirsh, Esquire
ahirsch@hermangerel.com
Christopher V. Tisi, Esquire
cvtisi@aol.com
Daniel C. Levin, Esquire
dlevin@lfsblaw.com
Frederick S. Longer, Esquire
flonger@lfsblaw.com
James F. Green, Esquire
jgreen@ashcraftlaw.com
John H. Robinson, Esquire
robinsn@vcn.com
Leonard A. Davis, Esquire
ldavis@hhkc.com
Maury A. Herman, Esquire
mherman@hhkc.com
Michael E. Heaviside, Esquire
mheaviside@ashcraftlaw.com
Michelle A. Parfitt, Esquire
mparf@oal.com
(*Attorneys for Plaintiffs*)

Neal R. Devlin, Esquire
ndevlin@kmgslaw.com
Richard A. Lanzillo, Esquire
rlanzillo@kmgslaw.com
Kristine McAlister Brown, Esquire
kristy.brown@alston.com
William H. Jordan, Esquire
bill.jordan@alston.com
(*Attorneys for Aaron's Inc.*)

Brian M. Mancos, Esquire
bmmancos@bwhllc.com
David B. White, Esquire
Burns White LLC
dbwhite@burnswhite.com
Lyle D. Washowich, Esquire
ldwashowich@burnswhite.com
(*Attorneys for Designerware, LLC*)

OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.


s/ W. Scott Hardy
W. Scott Hardy, Esquire