IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CRYSTAL BYRD, et al,** ) | |
|     **Plaintiffs** ) | |
| ) | |
| vs. ) | C.A.No. 11-101Erie |
| ) | District Judge McLaughlin |
| **AARON'S, INC., et al.,** ) | Magistrate Judge Baxter |
|     **Defendants.** ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**On Plaintiffs' Motion for Preliminary Injunction**

**I.     RECOMMENDATION**

It is respectfully recommended that Plaintiffs' motion for preliminary injunction [ECF No. 9] be denied.[1]

**II.    REPORT**

    **A.     Relevant Procedural History**

On May 3, 2011, Plaintiffs Crystal and Brian Byrd, filed the instant action. Plaintiffs allege that Defendants have violated 18 U.S.C. §§ 2511 and 2512, and 18 U.S.C. § 1030, commonly referred to as the Wiretap Act and the Computer Fraud and Abuse Act, respectively.

---

[1]  Plaintiffs note that the temporary restraining order portion of that motion has faded away. ECF No. 22, n.1. Accordingly, the motion for temporary restraining order should be dismissed as moot.

1

Named as Defendants are: Aaron's Inc.; Aspen Way Enterprises, Inc.; John Does (1-100) Aaron's Franchisees; and DesignerWare, LLC.[2]

The Complaint is filed as a putative class action with the class being defined as:

> All customers of Aaron's Defendants who reside in the United States, who have purchased, leased, rented or rented to own, Aaron's computers and people who used said computers whose electronic communications and/or images were intercepted, accessed, monitored and/or transmitted by Defendants via PC Rental Agent or other devices or software without the customer's authorization.

ECF No. 1, Complaint, ¶ 15.[3]

Shortly after the filing of the complaint, Plaintiffs filed their motion for injunctive relief. ECF No. 9. Plaintiffs focus their requests for injunctive relief under Count I of the Complaint, 18 U.S.C. § 2511(1). ECF No. 43, Transcript of May 25, 2011 Evidentiary Hearing, page 43. In their motion for injunctive relief, Plaintiffs originally sought the following:

1. Defendants be enjoined from remotely activating any and all webcams embedded in their customers' computers and from accessing and or intercepting any other electronic communications;

2. Defendants be enjoined from contacting any members of the proposed class regarding any issue raised by Plaintiffs' Class Action Complaint;

3. Defendants be enjoined from initiating any action which would prevent the parties from determining which computers PC Rental Agent is or was installed on;

---

[2] As relief in the Complaint, Plaintiffs seek the following: a) An order certifying the Class under the appropriate provisions of Rule 23 and appointing Plaintiffs and their legal counsel to represent the Class; b) Awarding damages as provided by the Electronic Communications Privacy act, including injunctive relief, declaratory relief, punitive damages and reasonable attorneys' fees and costs to counsel for the Class pursuant; c) Awarding damages as provide by the Computer Fraud and Abuse Act, including injunctive relief, declaratory relief, punitive damages and reasonable attorneys' fees and costs to counsel for the Class pursuant; and d) Granting such other and further relief as is just and proper. ECF No. 1, page 18.

[3] A complaint does not become a class action until a class is certified by the court. See <u>Rolo v. City Investing Co. Liquidating Trust</u>, 155 F.3d 644, 659 (3d Cir. 1998).

2

    4. Defendants be enjoined from initiating any action to disable or dismantle DesignerWare's PC Rental Agent server or website (or any other server or website) which would contain information about the capabilities of PC Rental Agent;

    5. Defendants be enjoined from initiating any action to disable the DesignerWare (or any other server or website) which would contain information about information collected by Defendants using PC Rental Agent. Such information would include, but is not limited to tracking information, keystroke data, "screenshots," photographs or any other information collected;

    6. Defendants be enjoined from initiating any action to disable DesignerWare's PC Rental Agent (or any other server or website) which would contain information about persons who may have been using a computer with PC Rental Agent installed.

    7. Defendants be enjoined from initiating any action to disable the DesignerWare's PC Rental Agent (or any other server of website) which would contain information about persons, companies or entities who may have purchased the right to sue or employ PC Rental Agent;

    8. Defendants be enjoined from initiating any action to disable DesignerWare's PC Rental Agent (or any other server or website) which would contain information about the content and timing of information collected from users, including but not limited to "keystrokes," "screenshots" and pictures;

    9. Defendants be enjoined from disposing of or destroying any materials, whether or not electronic in nature that bear upon the issues identified in the Byrd complaint;

    10. Defendants be enjoined from engaging in any activity which would destroy or make unavailable evidence that is described in the "preservation letters" sent by Plaintiffs' counsel.

ECF No. 9. Additionally, Plaintiffs included several other requests for injunctive relief which were more akin to requests for discovery.

    During the briefing period and just prior to an evidentiary hearing on the matter, Defendant Aaron's, Inc. and Plaintiffs entered into a Stipulation as to the following:

    1. Plaintiffs allege that Aaron's, Inc. and the other Defendants have secretly installed a spying device and/or software on Aaron's purchased, leased, rented or rent-to-own laptop and desktop computers ("Computers") and that the device and/or software, including PC Rental Agent, permitted Aaron's to

      remotely and without authorization access, monitor, intercept and/or transmit electronic communications, including, but not limited to, images of monitor or screens, keystrokes, and images captured by the Computers' cameras. ("Alleged Conduct")

2. Aaron's, Inc. expressly denies that any of its company-owned stores have engaged in the alleged Conduct. Aaron's states that it values its customers' right to privacy and rejects the assertions made by Plaintiffs. Aaron's, Inc. further states that it has no contractual relationship with co-defendant DesignerWare, LLC. Nevertheless, Aaron's, Inc. states that it has not installed and agrees that, it will not install devices, hardware and/or software on Aaron's, Inc.'s purchases, leased, rented or rent-to-own Computers, including any device and/or software such as PC Rental Agent, that would enable Aaron's Inc. to engage in the Alleged Conduct.

3. Consistent with the Federal Rules of Civil Procedure, Aaron's Inc. shall preserve all evidence they may be relevant to this action, including documents, date and tangible things in its possession, custody, or control, including materials reasonably anticipated to be subject to discovery in this action.

4. The parties acknowledge and agree that a protocol is required regarding the preservation of relevant data that may exist on Computers that may be returned to Aaron's, Inc.'s stores. Aaron's Inc. advised it has worked with a third-party consultant and the Aaron's, Inc. has developed and implemented such a protocol. Aaron's, Inc. agrees to provide Plaintiffs with the details of the protocol developed by Aarons, Inc., including the computer query applied to determine whether the PC Rental Agent software has been installed on any such Computers. Plaintiffs have not yet approved or passed judgment on the protocol developed by Aaron's Inc. and reserve all rights with respect to any such protocol. Plaintiffs have specific concerns about Aaron's, Inc.'s protocol and therefore counsel for Plaintiffs and Aaron's Inc. will meet and confer about the protocol in a good faith attempt to address any such concerns. If that meet and confer process is ultimately unsuccessful, then Plaintiffs reserve the right to raise any issues with the Court as appropriate.

5. Aaron's, Inc., including its officers and employees, states that it has not engaged in the Alleged Conduct and consents and agrees that it will not engage in the Alleged Conduct.

6. By entering into this Stipulation Aaron's, Inc. does not waive, but instead expressly preserves, any arguments with respect to the scope of permissible discovery under the Federal Rules of Civil Procedure.

ECF No. 37.

Plaintiffs have also entered into a Stipulation and Order with DesignerWare, whereby those parties agree to the following:

1. Plaintiffs allege that DesignerWare has developed and sold software, including PC Rental Agent, permitting Aaron's Stores and/or Aaron's Franchisees to remotely and without authorization, access, monitor, intercept and/or transmit electronic communications, including, but not limited to, images of monitors or screens, keystrokes and images captured by the Computers' cameras.

2. DesignerWare expressly denies that its software, PC Rental Agent, remotely and without authorization, accesses, monitors, intercepts, and/or transmits electronic communications, including but not limited to, images of monitors or screens, keystrokes and images captured by the Computers' cameras.

3. Consistent with the Federal Rules of Civil Procedure, Designer Ware, shall preserve all evidence that may be relevant to this action, including documents, dates and tangible things in its possession, custody, or control, including materials reasonably anticipated to be subject to discovery in this action.

4. DesignerWare also agrees to provide an accounting of any documents, dates and/or materials it may have deleted from its website that promotes, sells and/or advertises PC Rental Agent. This data and these documents and/or materials will be in the possession of representative of DesignerWare, and if appropriate, will be provided to the Plaintiffs during the discovery phase of this matter.

5. DesignerWare agrees to provide the names and addresses of all Aaron's Franchisees for which DesignerWare, for any reason, had the said PC Rental Agent uninstalled on or after May 3, 2011. In addition, DesignerWare shall identify any and all modifications or deletions of any PC Rental Agents during that timeframe, including altering the detective mode or detective mode level.

6. DesignerWare agrees not to contact any prospective putative class member who may have rented and/or leased a computer from an Aaron's Franchisee.

ECF No. 45.

### B. The Evidentiary Hearing

An evidentiary hearing was conducted on the pending motion on May 25 - 26, 2011. Although they were made aware of the hearing, Defendant Aspen Way Enterprises did not participate. See ECF Nos. 32, 33.

During the hearing, Plaintiffs indicated that the requests for relief had been modified from the written requests within the motion. Plaintiffs characterized the requested relief as:

> The four prongs of what we're seeking here is, preservation of status quo on preservation of evidence, no.1; no.2 is an accounting to the Court and the parties about any electronic and paper data that has been altered since the filing of this Complaint; No.3 is since we believe there is ongoing use of this Detective Mode, which we believe, at least focusing on the Wiretap Act as opposed to the other elements of our Complaint, there's a likely violation of that Act that that be at least suspended for the time being; and the fourth is some limitation on what the parties can – the Defendants can discuss about their case with the putative class members.

ECF No. 43, page 14.

As to 1) the preservation of evidence, Plaintiffs have reached an agreement with Defendant Aaron's Inc. and Defendant DesignerWare (ECF No. 37 (Stipulation with Aaron's, Inc.); ECF No. 45 (Stipulation with DesignerWare)), and had, prior to the hearing expressed their belief that Defendant Aspen Way Enterprises was compliant in this regard. ECF No. 9, page 3. As to 2) the accounting of alterations, Defendant DesignerWare has agreed to provide this accounting (ECF No. 45), and this Court does not read this request for injunctive relief to pertain to any other Defendant. As to 4) the communications with class members, Plaintiffs and DesignerWare have stipulated that DesignerWare does not and will not contact putative class members.[4] ECF No. 43, page 17. With much of the injunction request worked out between the

---

[4] Although Plaintiffs also seek this last relief from Defendants Aaron's, Inc. and Aspen Way Enterprises, they presented no evidence or testimony regarding such at the hearing on their motion.

6

parties by stipulation, the only request remaining at issue is for the suspension of the Detective Mode of the PC Rental Agent. This Report and Recommendation is limited to this request.

### C. Proposed Findings of Fact

1. Plaintiff Crystal Byrd is an individual residing at 1480 South Illinois, Casper, Wyoming. ECF No. 43, page 56.

2. According to the complaint, Aspen Way Enterprises, Inc., d/b/a Aaron's Sales and Leasing, operates an Aaron's rental store at 4050 Plaza Drive, Casper, Wyoming. ECF No. 1, page 21. Aspen Way operates several other Aaron's rental stores. ECF No. 43, pages 106-07.

3. Defendant Aaron's Inc. is both a franchisor and a direct operator of Aaron's stores. Defendant Aspen Way is a franchisee of Aaron's, Inc. Defendant Aaron's, Inc. asserts that it never purchased the software at issue in this action and that Aaron's Inc. has no business relationship with Defendant DesignerWare, LLC. ECF No. 43, page 102.

4. On July 30, 2010, Ms. Byrd leased a Dell laptop computer from Aspen Way's Casper store. ECF No. 1, pages 21-23. The laptop computer was delivered to Ms. Byrd the following day. ECF No. 43, page 59.

5. The lease agreement gave Ms. Byrd the opportunity to purchase the laptop computer at a later date. ECF No. 1, page 21. Ms. Byrd took advantage of the purchase option by making a final payment of $928.32 in cash and she retained a receipt of this final payment. ECF No. 43, page 60. Ms. Byrd testified she had no knowledge of any software on her laptop computer capable of remotely gathering information at the time she signed the lease agreement with the Aaron's store. Id. at pages 62 and 71-72. The lease agreement itself does not mention the remote gathering of information. ECF No. 40-1, Exhibits, pages 5-7.

6. In December 2010, Chris Mendosa, an employee of Aspen Way, came to Ms. Byrd's home. ECF No. 43, pages 60-61, 82-83. Ms. Byrd testified that Mr. Mendosa was at her home to repossess the laptop computer because he erroneously believed she had missed a payment. Mr. Mendosa then showed Ms. Byrd a photograph that depicted her husband, co-Plaintiff Brian Byrd, seated in front of the laptop computer that she recognized as being taken a few hours before. Id. at page 61.

7. After Mr. Mendosa left the Byrd residence, Plaintiffs contacted local law enforcement. Detective Joe Wilhelm of the Casper Police Department was assigned to Plaintiffs' case in late December 2010. Id. at page 80. During his investigation, Detective Wilhelm learned that the photograph of Mr. Byrd was taken through the webcam on Mrs. Byrd's laptop computer. Id. at page 85. The webcam had been remotely activated by the

7

Aaron's franchise store through software called PC Rental Agent. Id. at page 86. Detective Wilhelm learned that all computers sold or leased at the Casper, Wyoming Aaron's store had PCRA installed on them and that customers were routinely not told that PCRA had been installed. Id. at page 86.

8. According to Timothy Kelly, a co-owner of Defendant DesignerWare, PC Rental Agent can "build, install, and activate a separate standalone program"— Detective Mode—on a lessee's computer. Once activated, Detective Mode has the capability to capture or record keystrokes, screenshots, and photographs from the lessee's computer. This data then can be transmitted from the lessee's computer to the lessor. The primary purpose of Detective Mode is to assist rental companies in the recovery of lost or stolen computers. Id. at pages 131-33, 199-202. PC Rental Agent and the related Detective Mode program are both the proprietary software of DesignerWare, LLC located in North East, Pennsylvania. Id. at pages 128-29, 139-40.

9. Chastity Hittinger is an individual residing in Moses Lake, Washington who was employed at several Aaron's franchisee stores, owned and operated by Aspen Way Enterprises. Ms. Hittinger testified that, in her capacity as a sales manager, she routinely installed PC Rental Agent on computers for lease and sale by Aaron's stores owned by Aspen Way Enterprises. She described installing PC Rental Agent as her "main job." Id. at pages 105-10.

10. Ms. Hittinger testified that she saw the recorded keystroke, screenshot, and photograph files collected by PC Rental Agent / Detective Mode while she was employed with Aspen Way Enterprises. Id. at pages 114-15. She testified that she was aware that in one store 20 to 50 customers were remotely monitored through the Detective Mode of PC Rental Agent. Id. at page 114. She further testified that she knew that the files were saved and stored on a General Manager's computer. Id. at page 116.

11. Ms. Hittinger testified that through the Detective Mode of the PC Rental Agent she personally viewed screenshots of "bank accounts, like Macy's accounts where you could like log in to view your bill, Ebay" as well as other personal information like "names, addresses, phone numbers, and Social Security numbers." Ms. Hittinger also viewed around one hundred photographs of computer users. Of those, she saw photos of boys wearing shorts, but no shirts, and a woman smoking marijuana. Id. at page 115.

12. Ms. Byrd does not have her laptop computer in her possession as it presently remains with the Casper Police Department. Id. at pages 70, 101.

### D. Proposed Conclusions of Law

Preliminary or temporary injunctive relief is "a drastic and extraordinary remedy that is not to be routinely granted." Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568

(Fed.Cir.1993); see also Hoxworth v. Blinder, Robinson & Co. Inc., 903 F.2d 186, 189 (3d Cir. 1990). Where the requested preliminary injunction "is directed not merely at preserving the status quo but … at providing mandatory relief, the burden on the moving party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980); see also Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994). Indeed, "[m]andatory injunctions should be used sparingly," and only when the status quo is one of action that will inflict irreparable injury on the movant. United States v. Price, 688 F.2d 204, 212 (3d Cir. 1982). Further, injunctions "must be tailored to remedy the specific harms shown rather than to 'enjoin all possible breaches of the law." Louis W. Epstein Family Partnership v. Kmart Corp., 13 F.3d 762, 771 (3d Cir. 1994) quoting Davis v. Romney, 490 F.2d 1360, 1370 (3d Cir. 1974).

In determining whether to grant a preliminary injunction, a court must consider whether the party seeking the injunction has satisfied four factors: "1) a likelihood of success on the merits; 2) he or she will suffer irreparable harm if the injunction is denied; 3) granting relief will not result in even greater harm to the nonmoving party; and 4) the public interest favors such relief." Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010) quoting Miller v. Mitchell, 598 F.3d 139, 147 (3d Cir. 2010).

The initial inquiry is as follows: the movant must demonstrate both 1) that he is reasonably likely to succeed on the merits and 2) that he is likely to experience irreparable harm without the injunction. Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000). If both of these facts are shown, the effect on the nonmoving parties and the public interest may be considered. Id. The burden of introducing evidence to support a preliminary injunction is on the moving party with respect to the first two factors; however, the same is not true of the second

two factors. NeoGen Screening, Inc., v. TeleChem Intern., Inc., 69 Fed.Appx 550, 554 (3d Cir. 2003).

"Particular weight" must be placed "on the probability of irreparable harm and the likelihood of success on the merits." Ortho Biotech Products, L.P. v. Amgen, Inc., 2006 WL 3392939, at *5 (D.N.J.) quoting Apollo Tech Corp. v. Centrosphere Indus. Corp., 805 F.Supp. 1157, 1191 (D.N.J. 1992). The Third Circuit has repeatedly declared that "the use of judicial power to arrange relationships prior to a full determination on the merits is a weighty matter, and the preliminary injunction device should not be exercised unless the moving party shows that it specifically and personally risks irreparable harm." Conchatta, Inc. v. Evanko, 83 Fed.Appx 437, 442 (3d Cir. 2003) quoting Adams, 204 F.3d at 487. In fact, the irreparable injury portion of the test is the key: "irreparable injury must be present for a preliminary injunction to issue." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989). See also In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir. 1982). Irreparable harm is "potential harm which cannot be redressed by a legal or an equitable remedy following a trial." Instant Air Freight, 882 F.2d at 801.

The moving party bears the burden of establishing a "clear showing of irreparable injury." Jacob Ash Holdings, Inc. v. Winter Concepts, Inc., 2010 WL 678132, at *1 (W.D. Pa. 2010) quoting Hohe v. Casey, 686 F.2d 69, 72 (3d Cir. 1989). In their moving papers in support of the request for preliminary injunctive relief, Plaintiffs focus their irreparable harm analysis on the destruction of evidence instead of the request for the suspension of the Detective Mode of the PC Rental Agent. See ECF No. 10, page 5 ("Unless Defendants are restrained, Plaintiffs will suffer irreparable harm in their ability to prove their claims in this Court."). However, in their

Reply Brief, Plaintiffs do focus on the irreparable harm analysis as it applies to the requested suspension of the Detective Mode:

> [I]t is axiomatic that until Plaintiffs are assured that their privacy is secure, they will suffer irreparable harm. *E.g. Elrod v. Burns*, 427 U.S. 347, 373 (1976) (Court must assume irreparable harm if a constitutional right is threatened or impaired). The very fact that the interception of electronic communications is also a criminal statute subjecting the wrongdoer to prison and substantial fines, establishes there is a victim and a serious harm. The fact that the conduct alleged in this action, if found to be true, would subject Defendants to punitive damages, establish a real and concrete harm. …
>
> Unless PCRA is shutdown at the source, Plaintiffs must either stop using their computers, which for many is not a viable option or live in constant fear that at any moment they will be spied on. Putting aside the emotional distress this could cause, the fact that this software greatly increases Plaintiffs' risk of being a victim of identity theft is a real and concrete harm.[5]

ECF No. 36, pages 5-6.

At the evidentiary hearing, Plaintiffs argued that irreparable harm is a given in this factual scenario. ECF No. 44, page 55 ("Judge, I will tell you, I cannot imagine that we would be arguing irreparable harm."); ECF No. 43, page 42 ("I can't imagine anything more obvious than this prong. You have literally thousands of people who are sitting at their computers right now who have this program on it where detective mode may be enabled today, tomorrow, at any time, and this information, private information, can flow from their kitchen table through the server in Erie and back to people who they don't know in these local stores. I don't know when a trial will be set in this case, but I do know that this is – there will be irreparable harm if this information, private information will be distributed.").

---

[5] Further, Plaintiffs represented that they "will also submit evidence at the hearing that this software adversely affects the integrity of the computer making it more vulnerable to viruses and decreases the functionality of the computer in general." ECF No. 36, page 6. However, no such evidence was presented at the evidentiary hearing. See ECF Nos. 43, 44.

Despite Plaintiffs' argument that this prong of the analysis is a given, case law of the Third Circuit is clear that irreparable harm cannot be presumed or adjudicated using a common sense standard.  As the Third Circuit explained in Adams:

> The law does not take judicial notice of matters of 'common sense,' and common sense is no substitute for evidence.  A preliminary injunction may not be based on facts *not* presented at a hearing, or not presented through affidavits, deposition testimony, or other documents, about the particular situations of the moving parties.  The elasticity that the opposite conclusion would permit would essentially shift the burden to the defendant to disprove widely believed facts and would turn the preliminary injunction balancing process on its head.

Adams, 204 F.3d at 487 (emphasis in original).  See also Figuero v. Precision Surgical, Inc., 2011 WL 1368778, at *5 (3d Cir. April 12, 2011) ("No less than a 'clear showing of immediate irreparable injury' is required.  Ammond v. McGahn, 532 F.2d 325, 329 (3d Cir. 1976)"); Ace American Ins. Co. v. Wachovia Ins. Agency Inc., 306 Fed.Appx 727, 732 (3d Cir. 2009) ("A failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." Instant Air Freight, 882 F.2d at 800); Conchatta, 83 Fed.Appx at 442 ("While other circuits relax the irreparable harm requirement in First Amendment cases, our Court requires a First Amendment plaintiff seeking a preliminary injunction to prove irreparable harm.  In Hohe v. Casey, 868 F.2d 69, we observed that the assertion of First Amendment rights does not automatically require a finding of irreparable injury.").[6]

Upon reviewing the entire record, this Court finds Plaintiffs' introduction of evidence in support of the irreparable harm prong is scant, at best.  The evidentiary record before this Court reflects that Plaintiffs' laptop computer is no longer in their possession.  Hence, Plaintiffs are not presently suffering **any** harm necessary to support the requested relief of the suspension of the Detective Mode of the PC Rental Agent.  "The relevant inquiry is whether the party moving for

---

[6]  See also Ebay v. Mercexchange, LLC, 547 U.S. 388 (2006) (holding that there can be no presumption of irreparable harm even in cases where there is likely an infringement of a patent).

the injunctive relief is in danger of suffering the irreparable harm at the time the preliminary injunction is to be issued." Mitchell v. Lupert, 2011 WL 742042, at *6 (M.D. Pa. Feb.24, 2011) citing S.I. Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1264 (3d Cir. 1985). At this juncture, while Plaintiffs have allegedly suffered harm in the past, they are not suffering **any** harm at the present time or the forseeable future. In the event they prevail at trial, Plaintiffs' past harm will be remedied.[7]

This action is filed as a putative class action. Generally, injunctive relief is only available to those plaintiffs who have been identified and who have established an actual right to relief. Adams, 204 F.3d at 487. It is permissible to "rest[] a preliminary injunction for many on the testimony of a few … so long as the plaintiffs lay an adequate foundation from which one could draw inferences that the testifying plaintiffs are similarly situated – in terms of irreparable harm – to all the other plaintiffs." Id. "Determining whether plaintiffs have laid such a foundation is a case-sensitive inquiry" to be conducted by the Court. LaForest v. Former Clean Air Holding Co., Inc., 376 F.3d 48, 58 ($2^d$ Cir. 2004). Here, Plaintiffs are not similarly situated to the members of the putative class[8] in terms of irreparable harm as they are not presently in possession of the laptop computer and so are not subject to the Detective Mode of PC Rental Agent.[9] In this regard, Plaintiffs are seeking monetary damages to redress the harm that they alleged occurred to them by way of the photograph of Mr. Byrd. Thus, a preliminary injunction

---

[7] Even if this Court were to assume that Plaintiffs' laptop computer will be returned to them in the near future, it is merely speculative to suppose that Defendants will remotely access information on that computer. "[A] possibility of a remote future injury" is not sufficient to support the irreparable harm portion of the preliminary injunction. See Acierno, 40 F.3d at 655.

[8] As the Second Circuit noted when describing the Adams decision, "[b]eing sufficiently similarly situated to justify class certification, while relevant in this regard, need not be determinative." LaForest, 376 F.3d 58 n.6.

as to Plaintiffs is not available because any harm to them proven at trial is redressable. Preliminary injunctions are meant to remedy "potential harm which cannot be redressed by a legal or an equitable remedy following a trial." Instant Air Freight Co, 882 F.2d at 801 (3d Cir. 1989).

Moreover, it is purely conjecture that the other members of the putative class will be subjected to remote access of personal information. In fact, according to the testimony of Timothy Kelly, co-owner of DesignerWare, Inc., on May 3, 2011, only eleven computers were transmitting information via Detective Mode to Aaron's franchisees. ECF No. 43, page 190. This is contrasted to the testimony that "roughly 80 to 100 computers every month get reported stolen" from Aaron's franchises. Id. The Court was given no evidence or information regarding the computers that were so transmitting and no information about the laptop users – that is, whether they are the lessees or others in possession of the laptops.

The only evidence of harm to putative class members was presented in the testimony of Chastity Hittinger, a former employee of Aspen Way. She testified that she witnessed Aspen Way employees viewing personal information (including bank accounts, names, addresses, Social Security numbers) and photographs of computer users. No connection was made to future harm for which a preliminary injunction is sought, no other specifics as to the laptop users was given by Ms. Hittinger, and no other information about the current practices of Ms. Hittinger's particular franchisee location were elicited. In fact, Ms. Hittinger no longer works at an Aaron's franchise. ECF No. 43, page 117.

Because evidence as to the irreparable harm prong is "key" (see Instant Air Freight) to support the granting of a preliminary injunction, and because Plaintiffs have failed to meet their burden in regard to themselves as well as in their capacity as representatives of the putative class,

14

it is unnecessary for this Court to reach an analysis as to likelihood of success on the merits or the other two remaining factors.  See IDT Telecom, Inc. v. CVT Prepaid Solutions, Inc., 250 Fed.Appx 476, 480 n.7 (3d Cir. 2007) citing In re Arthur Treacher's, 689 F.2d at 1143.[10]

### III.     CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiffs' motion for preliminary injunction [ECF No. 9] be denied.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation.  Any party opposing the Objections shall have fourteen (14) days from the date of service of the Objections to respond thereto.  See Fed.R.Civ.P. 72(b)(2).  Failure to file timely objections may constitute a waiver of appellate rights.  See Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  June 16, 2011

---

[10] The other critical prong—the likelihood of success on the merits—does not necessarily militate in Plaintiff's favor. Plaintiffs moved for a preliminary injunction on the first section of the Wiretap Act only. 18 U.S.C. § 2511 creates a cause of action against "any person who ... intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." The court remains unconvinced that the information collected from the Plaintiffs' computer constitutes an "electronic communication" under the Act. Plaintiffs adduced no evidence at the hearing that Mr. Byrd was online when the Detective Mode was active. Without this evidence, this Court has grave doubts whether these putative communications "affect[] interstate or foreign commerce," as required by the Act. 18 U.S.C. § 2510. The Court is also unconvinced that any interception took place. "Intercept," by its plain language, suggests the capture of a communication between two parties. It is unclear whether Plaintiff's communication *with his own computer* can be intercepted within the meaning of the Act.