IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CRYSTAL BYRD** and **BRIAN BYRD**, Individually, and on Behalf of all Similarly Situated Persons, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Civil No. 1:11-cv-00101-SPB ) |
| **AARON'S, INC.,** **ASPEN WAY ENTERPRISES, INC.,** d/b/a Aaron's Sales and Leasing, a franchisee of AARON'S, INC.; **JOHN DOES (1-100) AARON'S FRANCHISEES;** and **DESIGNERWARE, LLC**, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT ASPEN WAY'S MOTION TO DISMISS**

Plaintiffs, Crystal and Brian Byrd, individually and as representatives of a proposed class, respectfully file this brief in opposition to Defendant Aspen Way's Motion to Dismiss. As set forth more fully below, the Court has jurisdiction over Aspen Way under the three-part test for specific jurisdiction described in *Mellon Bank PSFS v. Farino*, 960 F.2d 1217, 1221 (3rd Cir. 1992). *First*, Aspen Way had and continues to have substantial purposeful "contacts" with Pennsylvania through its past and ongoing relationship with DesignerWare, a Pennsylvania resident, for the purchase of PC Rental Agent®, computer tracking software installed on all of Aspen Way's rent-to-own (RTO) computers, and for ongoing support services. *Second,* the wiretapping claims asserted by the Byrds arise out of Aspen Way's substantial contacts with DesignerWare. Finally, the exercise of jurisdiction over Aspen Way is reasonable. *Farino*, 960 F.2d 1217, 1221.

## FACTS ESTABLISHING PERSONAL JURISDICTION

In or around April 2007, defendant Aspen Way Enterprises, Inc., ("Aspen Way")[1] contacted co-defendant, DesignerWare LLC ("DesignerWare"), a resident of Pennsylvania, regarding entering into a contract for the purchase of software called PC Renal Agent® software developed and marketed by DesignerWare. [Affidavit of Christin Pfau (Pfau Aff.), attached to Aspen Way's Motion to Dismiss as Exhibit C, at ¶ 10].

As established during the hearing on plaintiffs' Motion for a Preliminary Injunction,[2] DesignerWare's PC Rental Agent ® software is exclusively sold by this Pennsylvania company to Rent-to-Own ("RTO") computer stores throughout the country through its one-and-only office located in the city of North East, Pennsylvania located outside Erie. [Preliminary Injunction Hearing dated May 24, 2011, Testimony of Tim Kelly (Exhibit 1) at 139:25-140:4; 143:6-12].

On April 30, 2007, Aspen Way and DesignerWare entered into a formal business relationship for the purchase and use of PC Rental Agent®. Specifically, Aspen Way agreed to purchase PC Rental Agent®, which was designed to provide Aspen Way with the ability to remotely monitor and track its Rent to Own (RTO) computers through the server system provided by DesignerWare. [Affidavit of Rohnn Lampi (Lampi Aff.), attached to Aspen Way Motion to Dismiss as Exhibit A, at ¶ 30; Exhibit 1 (Testimony of Tim Kelly) at 165:2-16].

To memorialize its relationship with this Pennsylvania corporation, Aspen Way agreed to the terms of the End User License Agreements ("hereinafter "EULA") required by

---

[1] Aspen Way does business under the name "Aaron's Sales and Leasing." As such it is a franchisee of co-defendant Aaron's Inc ("Aarons"). In this capacity it owns and operates numerous Aaron's Franchise Stores located in various Western States, including Montana, Wyoming, South Dakota, Colorado, Idaho and Washington. Aaron's business is to rent various items, including computers.

[2] Aspen Way declined to appear at or participate in the hearing on Plaintiffs' Motion for a Preliminary Injunction even though both plaintiffs and the Court agreed that Aspen Way did not waive its jurisdictional objections by attending.

DesignerWare. [EULAs (Exhibits 2 and 3)]. Under these EULAs, which were drafted by DesignerWare and required to be executed by all of its customers, Aspen Way specifically agreed to be bound by the laws of Pennsylvania. [Exhibit 1 (Testimony of Tim Kelly) at 155:19-22; Exhibit 2 at Designerware 000003; Exhibit 3 at Designerware 000007; *and* Affidavit of John Pollock (Pollock Aff.), attached to Aspen Way Motion to Dismiss as Exhibit B, at ¶ 10].

A key aspect of the business relationship between Aspen Way and DesignerWare was Aspen Way's access to DesignerWare's server, which is located in the city of North East, Pennsylvania. [Exhibit 1 (Testimony of Tim Kelly) at 156:6-11]. Without access that Pennsylvania-based server (for which it paid a fee), Aspen Way could not operate the PC Rental Agent. [*Id.* at 144:16-145:4; 145:25-146:3]. As Mr. Kelly testified:

> Q. Let me clarify the question. Without a server, the server which you provide, the Rental Agent could not perform its functions, correct?
>
> A. Correct. Because it's a two-tiered system.
>
> Q. And you also provide, as long as the agent is used -- you receive a fee for its use for a certain number of computers, et cetera, and for how long it's being used, correct?
>
> A. That would be a fair assessment.

[Exhibit 1 (Testimony of Tim Kelly) at 130:2-10]. Another aspect of this relationship was technical support provided to Aspen Way by DesignerWare from Pennsylvania on an "as needed" basis conduct via mail, phone and internet. [Lampi Aff., at ¶ 34, 36; Pollack Aff., at ¶ 12, 17, 40, 42; Exhibit 1 (Testimony of Tim Kelly) at 129-30; 144-5, 186].

Aspen Way owns and operates 16 stores in Montana, Wyoming, South Dakota, Colorado, Idaho and Washington. [Lampi Aff., at ¶ 7]. It installs PC Rental Agent® on every computer it rents. [Exhibit 1 (Testimony of Chastity Hittinger) at 108:22-23]. As part of the services aspect of Aspen Way's contract with DesignerWare, each time an Aspen Way RTO computer customer

connects to the internet, Aspen Way receives an electronic file directly from DesignerWare's Pennsylvania server. [Pollock Aff., at ¶ 28-29; Exhibit 5, (Owner's Manual, Doc. 39-1) at 41]. After Aspen Way receives this initial electronic file, Aspen Way logs into DesignerWare's Pennsylvania server. [Pollock Aff., at ¶ 31; Exhibit 1 (Testimony of Tim Kelly) 142:21-143:5]. Likewise, in order to activate PC Rental Agent's "detective" feature, Aspen Way must affirmatively and purposefully "build" that program by logging directly into DesignerWare's Pennsylvania server. [Pollock Aff., at ¶ 39; Exhibit 1 (Testimony of Tim Kelly) at 184:4-185:12].

After the PC Rental Agent is installed, Aspen Way must periodically reaffirm its Pennsylvania EULA agreement with DesignerWare and reaffirm its intent to abide by all of its provisions—*including its agreement to be bound by the laws of Pennsylvania.* [Exhibit 1 (Testimony of Tim Kelly) at 155:19-22].

Once the PC Rental Agent is installed and engaged, DesignerWare's Pennsylvania server is the sole equipment that operates PC Rental Agent. [Exhibit 1 (Testimony of Tim Kelly) at 20:1-5]. Without the Pennsylvania hub provided by the DesignerWare server, Aspen Way would not be able to monitor, track and intercept its customer's electronic communications. [Exhibit 1 (Testimony of Tim Kelly) at 144:16-20].

<u>**PLAINTIFFS' CONSPIRACY ALLEGATIONS**</u>

In this case, plaintiffs make several allegations arising under the Electronic Communication Privacy Act and the Computer Fraud and Abuse Act. These allegations assert, among other things that Aspen Way (and other Aaron's Franchisee's) conspired and acted in concert with a Pennsylvania Company, DesignerWare, to violate these Federal Acts. By virtue of Aspen Way and DesignerWare's written agreements and understandings, Plaintiffs have

alleged that Aspen Way has *aided, abetted and/or conspired* with its Pennsylvania co-defendant DesignerWare to illegally intercept Plaintiffs' electronic communications. For example, Plaintiffs' Complaint contains the following allegations:

> 51. Defendants, either directly or by aiding, abetting *and/or conspiring to do so, have intentionally intercepted and/or procured to be intercepte*d Plaintiffs' and Class members' electronic communications without Plaintiffs' or the Class members' knowledge, authorization, or consent in violation of 18 U.S.C. § 2511.
>
> 52. Defendants, either directly or by *aiding, abetting and/or conspiring to do so,* have also intentionally used and/or procured to be used a devise to intercept the above-referenced electronic communications.
>
> 53. Defendants, either directly or by *aiding, abetting and/or conspiring to do so,* have intentionally disclosed to another person, and/or used the contents of the above-referenced electronic communications.

Complaint, ¶¶ 51-23 (emphasis supplied).

## LEGAL ARGUMENT

Pursuant to Rule 4(e), this Court may exercise personal jurisdiction over Defendant Aspen Way "to the extent permissible under the law of the state where the district court sits." *Farino*, 960 F.2d at 1221 (citation omitted.) Under the Pennsylvania law, through its long-arm statute, this Court is authorized to exercise jurisdiction over a non-resident "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons.Stat. Ann. § 5322(b). That is, as long as the requirements of the Due Process Clause of Fourteenth Amendment to the United States Constitution have been satisfied, jurisdiction will lie over Aspen Way in Pennsylvania. *Pennzoil Prods. Co. v. Colelli & Assocs.*, 149 F.3d 197, 200 (3d Cir. 1998).

The basic principles of due process are reflected in the two recognized types of personal jurisdiction: specific jurisdiction and general jurisdiction. 42 Pa. Cons.Stat. Ann. § 5301; *Marten*

*v. Godwin*, 499 F.3d 290, 296 (3d Cir.2007).  Plaintiffs contend this Court has *specific jurisdiction* over Aspen Way.  To show specific jurisdiction, this Court uses a three pronged test:

1) The defendant has sufficient "minimum contacts" with the forum state;

2) The claim asserted against the defendant arises out of those contacts; and

3) The exercise of jurisdiction is reasonable.

*Farino*, 960 F.2d 1217, 1221.  Furthermore, this Circuit has explicitly provided that because the specific jurisdiction analysis "depends on the relationship between the claims and contacts, [courts] generally evaluate specific jurisdiction on a claim-by-claim basis." *Marten*, 499 F.3d at 296 (internal citations and quotations omitted.)

### 1. Aspen Way Has Sufficient Minimum Contacts With Pennsylvania

"It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1975).  When a defendant intentionally reaches beyond its boundaries to conduct business with a foreign resident, the minimum requirements prong for specific jurisdiction will be met.  *Id.* at 475.

As alleged in the complaint and based on the above-cited evidence, it is not disputed that Aspen Way intentionally and purposefully engaged in a substantial business relationship with DesignerWare, resident of Pennsylvania.  This business was memorialized through the Aspen Way's execution DesignerWare's EULA contracts for PC Rental Agent®.  Exhibits 2 and 3  Once the EULA was executed, Aspen Way continued its contacts with DesignerWare by mail, wire and by electronic communications via the internet.  [Complaint ¶ 10; Lampi Aff., at ¶ 34, 36; Pollack Aff., at ¶ 12, 17, 40, 42].  Every time Aspen Way installed PC Rental Agent® on one

of its RTO computers, it would have to re-execute the EULA. [Exhibit 1 (Testimony of Tim Kelly) at 155:19-25 ("Every time they've installed our software, they've accepted that End User License Agreement, correct.")].

The seminal decision in the Third Circuit addressing personal jurisdiction through the internet is *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. PA. 1997). In that case, Judge McLaughlin enunciated the "sliding scale" model for evaluating personal jurisdiction principles to cases arising from electronic commerce. In *Zippo*, the defendant operated an online news service, which collected information and payments from, and contracted with, subscribers in the plaintiff's jurisdiction, all via the Internet. In finding personal jurisdiction over the defendant, this Court held that the defendant had purposefully availed itself of doing business in Pennsylvania. *Id*. at 1126. In reaching this holding, Judge McLaughlin identified three types of Internet presences and their effects on personal jurisdiction:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. **If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.** At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo,* at 1124 (citations omitted)(emphasis added). In sum, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet." *Id*. at 1124.

Applying *Zippo* to the facts in this case, it is clear that there is no question that this Court has personal jurisdiction over Aspen Way. Aspen Way entered into a specific and intentional business relationship with DesignerWare, a resident of this state, through its execution of the EULAs. As if that were not enough, Aspen Way had to repeatedly reaffirm with DesignerWare its intent to abide by DesignerWare's EULA contract. As part of its continuing business relationship with this Pennsylvania company, Aspen Way repeatedly transmitted computer files over the internet to the DesignerWare server located in North East, Pennsylvania and, in turn received information sent by the PC Rental Agent® software that it surreptitiously installed on its customers' computers. In addition, every time Aspen Way activated PC Rental Agent's Detective Mode, Aspen Way directly engaged DesignerWare's Pennsylvania server. Without the use of this server located in this Court's jurisdiction, the PC Rental Agent® and its Detective Mode function would be inoperable.

Completely ignoring the applicable standard set forth by this Court in *Zippo*, Aspen Way instead solely relies on another Third Circuit case, *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircreaft Ltd.*, 566 F.3d 94 (3rd Cir. 2009). In *D'Jamoos*, a plane manufactured by the defendant while flying from Florida to Rhode Island crashed as it attempted to make a planned stop in Pennsylvania killing all the passengers on board. Plaintiffs alleged that under the personal jurisdiction "stream of commerce" theory, the stop over in Pennsylvania as well as limited contacts year before the crash constituted the requisite minimum contacts. The Court disagreed.

By comparing itself to the plane manufacturer in *D'Jamoos*, Aspen Way argues that this Court likewise lacks personal jurisdiction over it. Unlike *D'Jamoos*, however, this is not a product liability case. Rather it is a case premised on the intentional and illegal ***conspiratorial***

8

acts with a Pennsylvania Corporation in which electronic communications are surreptitiously intercepted and sent from Aspen Way's lessee's computers directly to Pennsylvania pursuant to a specific Pennsylvania contractual agreement between Aspen Way and DesignerWare.  Given the fact that *D'Jamoos* does not address this subject in any way, *D'Jamoos* does nothing for Aspen Way's position.

Likewise, Aspen Way makes much ado about the fact that it has never "set foot" in Pennsylvania.  As Aspen Way must know, that fact is irrelevant for personal jurisdiction purposes.  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996) (wherein the Sixth Circuit upheld the trial court's finding of personal jurisdiction even though the defendant never set foot in Ohio, the forum state).  *See also John Wiley & Sons, Inc. v. Treeakarabenjakul*, 2009 WL 1766003, 6 (S.D.N.Y. 2009) (fact that defendant "never set foot in New York ... is irrelevant for personal jurisdiction purposes."); *Schwartz v. CDI Japan, Ltd.*, 938 F.Supp. 1, 5 (D.D.C.1996) (Court found it could properly exercise personal jurisdiction over a Japanese citizen who had never "set foot" in the District of Columbia.).

These facts clearly establish the first prong of the *Farino* test; that is that Aspen Way have the contacts necessary for the exercise of jurisdiction.  *Zippo* at 1124.

> **2.      Aspen Way's Acceptance of Pennsylvania Law and Its Acts as a Co-Conspirator Provides Additional Evidence of its Expectation to be Subject to the Courts of Pennsylvania**

As if Aspen Way's intentional and ongoing relationship with DesignerWare were not enough to establish minimum purposeful contacts with this forum, Aspen Way specifically agreed that Pennsylvania law would govern all disputes regarding its use of this software. [Miscellaneous Sections of Exhibit 2 at 3 and Exhibit 3 at 4.  While this choice-of-law provision "standing alone would be insufficient to confer jurisdiction," combined with other factors, it may

9

reinforce a party's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Budget Blinds, Inc. v. White,* 536 F.3d 244, 261 (3d Cir.2008)(quoting *Burger King,* 471 U.S. at 482); *see also Atl. Fin. Fed. v. Bruno,* 698 F.Supp. 568, 573 (E.D.Pa.1988) (choice of law provision is a "factor to show whether defendants could reasonably foresee that their acts would have effect in Pennsylvania"). The choice of law provision, coupled with the Defendants' continuous and intentional internet transmissions to Pennsylvania, payments and communications involving a Pennsylvania corporation, certainly would have made Aspen Way aware that it "should reasonably anticipate being haled into court" in Pennsylvania. *See Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.,* 75 F.3d 147, 151 (3d Cir. 1996)(quoting *World-Wide Volkswagen,* 444 U.S. at 297).

Furthermore plaintiffs' allegation of a Pennsylvania-based conspiracy establishes jurisdiction. As this Court has held: "[u]nder Pennsylvania law personal jurisdiction of a non-forum coconspirator may be asserted ... **where a plaintiff demonstrates that substantial acts in furtherance of the conspiracy occurred in Pennsylvania and that the non-forum coconspirator was aware or should have been aware of those acts.**" *Santana Prod., Inc. v. Bobrick Washroom Equip.*, 14 F.Supp.2d. 710, 718 (M.D.Pa. 1998) (internal citation omitted). *See also, Shuse v. Nat'l Corrective Group, Inc*., 2010 WL 4942222 (M.D. Pa. Nov. 30, 2010). As explained by the Court in *Massachusetts School of Law at Andover, Inc. v. American Bar Assoc.*, 846 F. Supp. 374 (E.D. Pa. 1994),

> Co-conspirator jurisdiction is not a separate basis of jurisdiction apart from general or specific jurisdiction. Rather, it is based on the same contacts-with-the-forum analysis just discussed. The difference is that a court looks not only at the defendant's forum contacts, but at those of the defendant's "resident" co-conspirators. *The court imputes the contacts of the "resident" co-conspirator over whom it has jurisdiction to the "foreign" co-conspirator to see if there are sufficient contacts to exercise jurisdiction over the latter.*

10

*Id.* at 379 (emphasis supplied).

Plaintiffs have clearly alleged that Aspen Way has aided, abetted and/or conspired with its co-defendant DesignerWare to illegally intercept Plaintiffs' electronic communications. [Complaint, ¶ 51]. Given the fact that there is no question as to the validity of this Court's jurisdiction over DesignerWare, the "resident" co-conspirator, the Court may impute the contacts of DesignerWare to Aspen Way. *See Shuse v. Nat'l Corrective Group*, 2010 WL 4942222; *Santana Prod.,* 14 F.Supp.2d. at 718; *Massachusetts School of Law at Andover*, 846 F. Supp. at 374.

### 3. The Claim Asserted Against Aspen Way Arise Out Of Aspen Way's Contacts With DesignerWare, A Pennsylvania Resident

Plaintiffs can also establish the second prong of the *Farino* test; that is that plaintiffs' claims *arise out* of Aspen Way's activities in Pennsylvania. *See Farino*, 960 F.2d at1221. In this case, plaintiffs Brian and Crystal Byrd filed claims on their own behalf and on behalf of others under the Federal Wiretap Act. In essence, they contend that Aspen Way collaborated and conspired with DesignerWare to surreptitiously collect protected communications and data from them and from other Aspen Way's customers through the use of the PC Rental Agent® and the technical and logistical support provided to Aspen Way by DesignerWare. [*See, e.g.,* Complaint ¶¶ 10, 51-53, 62; Police Report (Exhibit 4)].

Aspen Way did not just purchase a software program from DesignerWare. Rather, the two businesses worked hand-in-hand together via the internet. The collaboration, (*i.e.* the conspiracy) between Aspen Way and DesignerWare is described in the EULA, the PCRA Owner's manuals and, indeed, the police investigation involving the Byrds. For example, on page 3 of 36 of the PCRA Owner's Manual, Aspen Way is directed to specifically log into

11

DesignerWare's Pennsylvania website each and every time it installs PC Rental Agent® on a computer. [Exhibit 5 at 3 of 36]. Aspen Way also receives email messages from directly DesignerWare with each installation, re-installation, computer lockdown, and continually when Detective mode is on. [Exhibit 5 at 32 of 36]. Furthermore, Aspen Way has continuous access to DesignerWare's website to review its messages which DesignerWare retains for 20 days. [Exhibit 5 at 32 of 36; Exhibit 6 (Doc. 39, EULA) at 3 "Support Services"]. Had DesignerWare not sold Aspen Way the PC Rental Agent® and had it not provided the wherewithal to facilitate Aspen Way's efforts to spy on its customers, the facts as alleged in the complaint could not have occurred.

This case is very similar to *CompuServe, Inc. v. Patterson*, *supra*, a case heavily relied upon Judge McLaughlin in his *Zippo* decision. In that case, plaintiff CompuServe was a computer information service headquartered in Ohio. CompuServe operated as an "electronic conduit to provide its subscribers computer software products." *Id*. at 1260. CompuServe contracted with the defendant, a resident of Texas, through a Shareware Registration Agreement ("SRA") with CompuServe for access to computing and information service via the Internet. *Id*. The SRA provided that the agreement would be governed by the laws of Ohio.

As in this case, the defendant in CompuServe challenged the Court's jurisdiction arguing that an Ohio court has no jurisdiction over a Texas company especially when it never set foot in Ohio. After determining that despite the fact that the defendant was never physically in Ohio, the Sixth Circuit held that defendant's actions established that it purposefully availed itself of Ohio jurisdiction. The Sixth Circuit further addressed whether the claims against the defendant arose out of the defendant's activities in Ohio. In this trademark infringement case, the Court

found that it did by focusing on the fact that the server the defendant used was only located in Ohio and thus the infringements occurred, at least in part, in Ohio. *Id*. at 1267.

Similarly, Aspen Way could have used any company to intercept its customers' electronic communications but specifically agreed with a Pennsylvania company to monitor and track its customers, to intercept these communications, to route them to Pennsylvania and then send them back to Aspen Way. Without its Pennsylvania nexus, none of the illegal interceptions would have occurred. [Exhibit 1 (Testimony of Tim Kelly) at 145:25-146:3]. As such, the claims against Aspen Way arise from its contacts with DesignerWare's server in Pennsylvania.

### 4.     Jurisdiction Is Reasonable

Having established that minimum contacts exist, the burden shifts to Aspen Way to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Burger King*, 471 U.S. at 477; *see also Penzoil Prods*., at 207 (noting that if minimum contacts are present, then jurisdiction will be unreasonable only in "rare cases"); *Grand Entm't Group, Ltd. V. Star Media Sales, Inc*., 988 F.2d 476, 483 (3d Cir. 1993)("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."). As the Supreme Court has stated, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987).

As support for the serious burden placed on it by litigating this case in Pennsylvania, Aspen Way suggests: 1) it would be a burden for Aspen Way and the witnesses to travel to this Court; 2) Pennsylvania has little interest in providing a forum to nonresident plaintiffs; and 3) it is more efficient to litigate case in Wyoming.

As for the first factor, the burden on Aspen Way and witnesses to travel to this Court, that this factor is "no longer weighed heavily given the modern advances in communication and transportation." *Panavision Int'l v. Toeppen, 1*41 F.3d 1316, 1323 (9th Cir.1998). In fact, it is widely accepted that this argument is "insufficient to divest a court of personal jurisdiction." *See United States v. Harrell,* 268 F.3d 141, 146 (2d Cir. 2001); *see also Mutual Service Ins. Co. v. Frit Industries, Inc.*, 358 F.3d 1312, 1320 (11th Cir. 2004) (finding that "modern methods of transportation and communication" make any burden insufficient to defeat jurisdiction.).

Addressing the remaining two factors, Aspen Way's contentions are plain wrong. *First*, Pennsylvania has a substantial interest in this case. The hub of the alleged illegal activity in this case takes place in the Court's back yard. *Second,* the single common thread amongst all of the John Doe defendants and the nationwide putative class members is DesignerWare, a company which does not contest jurisdiction as it is located within 20 miles of the Court. The efficiency of pursuing these claims in this Court was made obvious by the ability of the parties to conduct the preliminary hearing in short order. Without question, it is in the judicial system's interest on whole, to keep this case where it is, in the Western District of Pennsylvania.

## CONCLUSION

For all of the reasons set forth above, Plaintiffs submit that jurisdiction in this Court is proper and therefore, Defendant Aspen Way's Motion to Dismiss should be denied.

Dated:        This 28th day of June, 2011.

**LEVIN, FISHBEIN, SEDRAN & BERMAN**

**/s/** Frederick S. Longer
**Frederick S. Longer**
Bar No. PA 46653
flonger@lfsblaw.com
**Arnold Levin**
Bar No. PA 02280
alevin@lfsblaw.com
**Daniel L. Levin**
Bar No. PA 80013
dlevin@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3697
Phone: 877-882-1011
Fax: 215-592-4663

**JAMIESON & ROBINSON, LLC**
**John H. Robinson**
Bar No. WSB 6-2828
robinsn@vcn.com
214 S. Grant Street
Casper, WY 82601
Phone: 307-235-3575
Fax:  307-307-577-9435

**THE SPENCE LAWFIRM**
**G. Bryan Ulmer, III**
ulmer@spencelawyers.com
Bar No. WY 6-2943
**Mel C. Orchard, III**
Bar No. WY 5-2984
orchard@spencelawyers.com
**R. Daniel Fleck**
Bar No. WY 6-2668
fleck@spencelawyers.com
PO Box 548 • 15 South Jackson Street
Jackson, Wyoming 83001
Phone: 307-733-7290
Fax: 307-733-5248

**HERMAN GEREL LLP**
**Christopher V. Tisi**
Bar No. DC 412839; MD 04286
cvtisi@aol.com
2000 L Street, NW Suite 400
Washington, D.C., 20036
Phone 202-783-6400
Fax: 202-416-6392

**Michelle A. Parfitt**
Bar No. VA 33650; DC 358592
mparf@aol.com
**James F. Green**
Bar No. VA 24915; DC 214965; MD 208980
jgreen@ashcraftlaw.com
4900 Seminary Road, Suite 650
Alexandria, Virginia 22311
Phone: 703-931-5500
Fax: 703- 820-0630

**Maury A. Herman**
Bar No. LA 006815
mherman@hhkc.com
**Leonard A. Davis**
Bar No. LA 14190
ldavis@hhkc.com
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: 504-581-4892
Fax: 504-561-6024

**Andrea S. Hirsch**
Bar No. GA 666557
ahirsch@hermangerel.com
230 Peachtree Street, Suite 2260
Atlanta, GA 30303
Telephone: 404-880-9500
Fax: 404-880-9605

## **CERTIFICATE OF SERVICE**

  I, Andrea S. Hirsch, certify that a copy of the foregoing motion was served via ECF on the 28th day of June, 2011.

            /s/ Andrea S. Hirsch
            Andrea S. Hirsch
            Attorney for Plaintiffs