**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CRYSTAL BYRD and BRIAN BYRD,<br>Individually, and on Behalf of all<br>Similarly Situated Persons,<br><br>    Plaintiffs,<br><br>vs.<br><br>AARON'S, INC.,<br>ASPEN WAY ENTERPRISES, INC.,<br>d/b/a Aaron's Sales and Leasing,<br>a franchisee of AARON'S<br>FRANCHISEES; and<br>DESIGNERWARE, LLC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil No. 1:11-cv-101-SPB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT AARON'S, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Aaron's, Inc.

("Aaron's") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss

Plaintiffs' Complaint. As set forth more fully herein, Plaintiffs' Complaint fails to state a single

cognizable cause of action against Aaron's, and it should be dismissed.

## I.    INTRODUCTION

Plaintiffs' Complaint against Aaron's must be dismissed because it fails to state a single

plausible claim for relief against Aaron's.  Plaintiffs' claims under Section 2511 of the Electronic

Communications Privacy Act ("ECPA") fail because:

i    Plaintiffs' Section 2511 claim requires Plaintiffs to establish contemporaneous

interception of an electronic communication.  Plaintiffs' allegations make clear that

there was no such contemporaneous interception of any communication by Aaron's.

i    Although Plaintiffs try to lump all the Defendants together and attribute the alleged

conduct of Aspen Way Enterprises, Inc. ("Aspen Way") and Designerware, LLC

("Designerware") to Aaron's under theories of conspiracy or secondary liability, that attempt falls flat because there is no secondary liability under the ECPA, and even if there were, Plaintiffs have not alleged any facts suggesting that Aaron's conspired with any of the other Defendants or aided and abetted them in any ECPA violation.

Plaintiffs' claims under Section 2512 of the ECPA are also fundamentally flawed:

i   These claims stumble at the outset because there is no private right of action under Section 2512.

i   Even if a private right of action did exist, Plaintiffs' Section 2512 claim must still be dismissed because Plaintiffs have failed to allege sufficient facts to support their Section 2512 claim.  And, under certain subsections of Section 2512, Plaintiffs have affirmatively pled themselves out of their Section 2512 claim against Aaron's by, for example, admitting that it was Designerware, not Aaron's, that manufactured and sold PC Rental Agent and that Aaron's did not advertise PC Rental Agent.

Plaintiffs' claims under the CFAA also must fail because:

i   Plaintiffs have not alleged sufficient facts to show they have suffered $5,000 or more in "loss," which is required for Plaintiffs to have a private right of action under the CFAA.

i   Plaintiffs have not alleged any facts that establish Plaintiffs have suffered the specific type of damage required to state a claim under several subsections of the CFAA.

For all of these reasons, and as set forth more fully herein, Plaintiffs' claims against Aaron's should be dismissed.

## II.    COMPLAINT ALLEGATIONS[1]

In the Complaint, Plaintiffs assert claims against Aaron's, Aspen Way Enterprises, Inc. ("Aspen Way"), Designerware, LLC ("Designerware"), and "John Does (1-100)," who Plaintiffs describe as Aaron's franchisees.  Plaintiffs assert the same claims against each Defendant: (i) Violation of Section 2511of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511; (ii) violation of Section 2512 of the ECPA, 18 U.S.C. § 2512; and (iii) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*[2]  Plaintiffs base each of these claims on the allegation that Aaron's and the other Defendants "have been spying on the activities of Plaintiffs" using PC Rental Agent software.  *See* Complaint at ¶ 3.

Plaintiff Crystal Byrd entered into a lease agreement with Aspen Way for a laptop computer.  *See* Complaint at ¶ 34; Exhibit 1 (the lease agreement, which makes clear it is between Plaintiff Crystal Byrd and Aspen Way, not Aaron's).  Plaintiffs allege that they later learned that the laptop computer Plaintiff Crystal Byrd leased from Aspen Way had PC Rental Agent software installed upon it and that the software had been used to take a photograph of Plaintiff Brian Byrd when he was using the laptop computer.  Complaint at ¶ 37.  Plaintiffs

---

[1]    Aaron's summarizes the Complaint allegations because they must be taken as true for purposes of this Motion to Dismiss.  Aaron's does not concede – and indeed contests – the veracity of Plaintiffs' allegations.

[2]    All of these statutes are primarily criminal statutes.  As a result, they are subject to the so-called rule of lenity:  "The rule of lenity applies to the construction of a statute in a civil setting if, as here, the statute has criminal applications."  *Brett Senior & Assocs., P.C. v. Fitzgerald*, No. 06-1412, 2007 WL 2043377, at *4 (E.D. Pa. July 13, 2007) (citing *U.S. v. Thompson/Center Arms Co.*, 504 U.S. 505, 517-18, 112 S. Ct. 2102, 119 L.Ed.2d 308 (1992)).  The rule of lenity "requires a court to construe ambiguous criminal statutes in favor of the defendant."  *Fitzgerald*, 2007 WL 2043377, at *4 (citing *U .S. v. Edmonds*, 80 F.3d 810, 820 (3d Cir. 1996)); *see also Chas. S. Winner, Inc. v. Polistina*, No. 06-4865 (NLH), 2007 WL 1652292, at *4 (D.N.J. June 4, 2007) (noting that because the CFAA is a criminal statute, it must be construed narrowly).

allege only a single use of the PC Rental Agent software on Plaintiffs' laptop – the taking of a photograph of Plaintiff Brian Byrd.

Although Plaintiffs allege, generically and collectively, that "the Aaron's Defendants" (which Plantiffs define to include Aspen Way) installed the device on Plaintiffs' computer (Complaint at ¶ 35), the Complaint does not contain any specific factual allegations as to the role Aaron's supposedly played in the installation of software on an Aspen Way computer.  Indeed, there is no allegation in the Complaint that Aaron's has ever installed PC Rental Agent on computers leased by its franchisees (like Aspen Way).[3]  To the contrary, Plaintiffs admit that it is Aspen Way that "purchased, installed and/or used PC Rental Agent and installed it on computers it offered for rent or sale without authorization from its customers."  Complaint at ¶ 10.  Indeed, Plaintiffs own allegations acknowledge the possibility that Aaron's, Inc. had nothing to do with the installation of PC Rental Agent on the laptop that Aspen Way leased to Plaintiffs – Plaintiffs allege only that "*one or more* of the Aaron's Defendants routinely installed the PC Rental Agent® device and/or software on all Aaron's RTO computers."  Complaint at ¶ 42.

### III.   ARGUMENT AND CITATION OF AUTHORITIES

A.   Motion to Dismiss Standard

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the United States Supreme Court clarified the standard for determining whether a plaintiff has stated a claim upon which relief can be granted.  The Court held that a complaint must contain more than a simple "the-defendant-unlawfully-harmed-me accusation."  *Id.* at 1949 (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544,

---

[3]   Plaintiffs do allege Aaron's installed PC Rental Agent on computers it offered for rent or sale in its stores.  Complaint at ¶ 9.  Aaron's will disprove that allegation in this case. Nevertheless, even when taken as true for purposes of this Motion to Dismiss, Plaintiff Crystal Byrd's lease agreement makes clear that she did not lease a computer offered for rent or sale by Aaron's; she leased a laptop offered for rent or sale by Aspen Way.  *See* Exhibit 1 to Complaint.

555 (2007)).  Where, as here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then the plaintiff has failed to state a legally cognizable claim for relief, and dismissal is appropriate.  *Iqbal*, 129 S. Ct. at 1950.

The Third Circuit has made clear that: "A motion to dismiss should be granted if the plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010).

"'[C]onclusory or bare-bones allegations will no longer survive a motion to dismiss: threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Warren Gen. Hosp. v. Amgen Inc.*, --- F.3d ----, No. 10-2778, 2011 WL 2321393, at *5 (3d Cir. 2011); *see also Byers v. Intuit, Inc.,* 600 F.3d 286, 297 (3d Cir. 2010) (affirming district court's dismissal of plaintiff's clam where plaintiff merely "incanted" elements of a claim and "failed to bolster her allegations with sufficient supporting facts").  A court must also "disregard legal conclusions." *Santiago*, 629 F.3d at 128.  Thus, plaintiffs must plead *facts* sufficient to support each element of their claim.  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) ("'[S]tating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element."); *Kundratic v. Thomas*, 407 F. App'x 625, 627 n.5 (3d Cir. 2011) (affirming dismissal of a plaintiff's claim because plaintiff failed "to set forth facts attesting to one of the essential elements" of her claim); *Halterman v. Tullytown Borough*, No. 10–7166, 2011 WL 2411020, at

*6 n.1 (E.D. Pa. June 14, 2011) (dismissing a claim where the plaintiff "failed to present a factual basis supporting two of the requisite elements" of the plaintiff's claim).

B.      Plaintiffs' Section 2511 ECPA Claims Must be Dismissed.

   1.      *Plaintiffs do not sufficiently allege that Aaron's intercepted an electronic communication.*

Plaintiffs assert claims under three different subsections of Section 2511 of the ECPA – 18 U.S.C. §§ 2511(1)(a), (1)(c), & (1)(d). [4] All of Plaintiffs' Section 2511 claims require Plaintiffs to show an interception of an electronic communication. *Wesley Coll. v. Pitts*, 974 F. Supp. 375, 383-84 (D. Del. 1997), *aff'd*, 172 F.3d 861 (3d Cir. 1998) (finding that absent an interception, neither the disclosure nor the use of the contents of the communication violates Section 2511); *see also Walsh v. Krantz*, 386 F. App'x 334, 340 (3d Cir. 2010) (same).  Plaintiffs have not alleged facts sufficient to support this essential element of their 2511 claims.

Section 2510(4) of the ECPA defines "intercept" as "the . . . acquisition of the contents of any . . . electronic . . . communication through the use of any electronic, mechanical, or other

_____

[4] Section 2511(1) states in pertinent part:

(1) Except as otherwise specifically provided in this chapter any person who--

   (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any . . . electronic communication; . . .

. . . .

   (c)  intentionally discloses, or endeavors to disclose, to any other person the contents of any . . . electronic communication, knowing or having reason to know that the information was obtained through the interception of [an] . . . electronic communication in violation of this subsection . . . .

   (d) intentionally uses, or endeavors to use, the contents of any . . . electronic communication, knowing or having reason to know that the information was obtained through the interception of  [an] . . . electronic communication in violation of this subsection; . . .

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

device."[5]  18 U.S.C. § 2510(4).  The Third Circuit has held that, for liability to attach under

Section 2511, an interception of an electronic communication "must occur contemporaneously

with the transmission."  *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003);

*see also United States v. Steiger*, 318 F.3d 1039, 1048-49 (11th Cir. 2003) (finding to constitute

an interception an electronic communication must be captured contemporaneously with

transmission); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) (same); *Steve*

*Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457 (5th Cir. 1994) (deeming the ECPA

inapplicable to e-mail stored on a company's computer that operated an electronic bulletin

board); *Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967, 979 (M.D. Tenn. 2008)

("[U]nless an e-mail is actually acquired in its split second transmission over a computer

network, it cannot be 'intercepted' as that term is reasonably understood."); *Wesley Coll.*, 974 F.

Supp. at 386-87 (finding that an interception under Title I of the ECPA occurs when an

electronic communication is *en route* to its intended recipient).  As the Eleventh Circuit has

explained, the ECPA covers "only real-time interception of electronic communications[.]"

*Steiger*, 318 F.3d at 1049.  In other words, a communication must be captured while in "flight."

*Id.* at 1050.  As a result of this requirement, "few seizures of electronic communications from

computers will constitute 'interceptions.'"  *Id.* at 1050.

Conclusory allegations of interception are not enough to state a claim for relief under the

ECPA.  *Holomaxx Techs. v. Microsoft, Corp.*, No. CV–10–4924–JF, 2011 WL 865278, at *7

(N.D. Cal. Mar. 11, 2011) (dismissing complaint for failure to state a claim due to conclusory

allegations of "interception"); *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, No. 07-0129, 2007

---

[5]   Plaintiffs' Section 2511 claim also must fail because PC Rental Agent does not constitute a "device" as the term is used in the ECPA. *See Potter v. Havlicek*, 3:06-cv-211, 2008 WL 2556723, at *8 - *9 (S.D. Ohio June 23, 2008) (finding that "spyware" software was not a "device").

WL 4394447, at *4 (E.D. Pa. Dec. 13, 2007) ("'[t]he Court need not accept a conclusory

allegation that the conduct alleged in the complaint constituted an interception under the'"

ECPA) (quoting *Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263, 1268 (N.D. Cal. 2001)).

Rather, Plaintiffs must allege facts sufficient to show a contemporaneous interception. Plaintiffs

have not carried that burden here. Plaintiffs allege only that the "Aaron's Defendants" took a

picture of Plaintiff Byrd and transmitted it. Compl. ¶ 37; ¶ 45. Plaintiffs do not allege a

contemporaneous electronic transmission by Plaintiff Byrd that Aaron's intercepted. And that is

what Section 2511 requires. Because there was no contemporaneous electronic communication

that Aaron's intercepted "in flight," Plaintiffs' claims under Section 2511 must fail. *See Steiger*,

318 F.3d at 1049-50.[6]

       2.    *Plaintiffs' claims of conspiracy and aiding and abetting liability are not sufficient to state a claim against Aaron's.*

---

[6]    If this Court finds no contemporaneous interception of an electronic communication under *Fraser*, 318 F.3d at 1048-49, then this Court should dismiss Plaintiffs' Section 2511 claim on that ground alone. But, in the event that this Court finds the Plaintiffs have properly alleged a contemporaneous interception, Plaintiffs' Section 2511 claim still must fail because there has been no electronic communication. An electronic communication is defined as the "transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate or foreign commerce . . ." 18 U.S.C. §§ 2510(12). Both the terms "transfer" and "transmit" show that any electronic communication must have been sent from one person to another or one place to another. *Merriam-Webster's Collegiate Dictionary* 1328 & 1329 (11th ed. 2007) (defining transfer in relevant part as "to convey from one person, place or situation to another" or "to cause to pass from one to another"); (defining transmit in relevant part as "to send or convey from one person or place to another"). But here Plaintiffs do not allege that Plaintiffs ever transferred or transmitted the alleged web camera photograph. *See* Complaint. ¶¶ 37, 48. In other words, Plaintiffs have not alleged that Defendants intercepted a photograph that was being sent from one person to another. *Id.* Although Plaintiffs attempt to allege that the Defendants took a picture of Brian Byrd and used the internet to transmit it from Plaintiffs' computer to themselves, Defendants cannot be liable for "intercepting" a transmission they sent. *See generally Ideal Aerosmith, Inc.*, 2007 WL 4394447, at *4 (finding plaintiffs did not have standing to assert claims under the ECPA for communications "sent by third parties"). Moreover, Plaintiffs have not included facts to support their barebones allegation that interstate or foreign commerce was affected by the photograph. 18 U.S.C. §§ 2510(12).

Even if this Court were to find that Plaintiffs have alleged a contemporaneous interception, Plaintiffs must plead facts sufficient to show that Aaron's – not Aspen Way or DesignerWare – committed the interception. Recognizing that they have no direct liability claim against Aaron's, Plaintiffs attempt to cover their bases by alleging that "Defendants, either directly or by aiding, abetting and/or conspiring to do so, have intentionally intercepted and/or procured to be intercepted" Plaintiffs' electronic communications. Compl. ¶ 51. In other words, Plaintiffs seek to impose secondary liability on Aaron's under conspiracy and aiding and abetting theories.

Under the ECPA, however, Aaron's cannot be held liable for conspiring or aiding and abetting others in violating the ECPA. And even if Aaron's could be held liable for conspiring or aiding and abetting others, Plaintiffs have failed to plead facts sufficient to support those theories of liability.

 i.  There is no liability under the ECPA for conspiracy or aiding and abetting.

As a general rule, a court should not find secondary liability under a federal statute unless the text or structure of a statute indicates Congress intended secondary liability to exist. *Doe v. GTE Corp.*, 347 F.3d 655, 658 (7th Cir. 2003) ("Normally federal courts refrain from creating secondary liability that is not specified by statute.") (citing *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994)). Section 2511 does not create secondary liability. As a result, Plaintiffs' claims that Aaron's is liable under the statute as a matter of secondary liability cannot state a claim against Aaron's.

Section 2511, in relevant part, prohibits any person from intentionally intercepting electronic communications, intentionally disclosing electronic communications, or intentionally using intercepted electronic communications in certain circumstances. 18 U.S.C. §§ 2511(1)(a),

(1)(c), & (1)(d).  Section 2520 then allows any person whose electronic communications have been "intercepted, disclosed, or intentionally used in violation of this chapter" to bring "a civil action [to] recover from *the person or entity* . . . which *engaged in that violation* such relief as may be appropriate."  18 U.S.C. § 2520(a) (emphasis added).  Thus, as Section 2520(a) makes clear, only the person or entity that directly violates the statute may be sued civilly.  *See id.*

"Although a statute's structure may show that secondary liability has been established implicitly, . . . it is hard to read § 2511 in that way."  *GTE Corp.*, 347 F.3d at 659 (refusing to find aiding and abetting liability under Section 2511).  As one court stated in finding that a conspiracy claim cannot be stated under the ECPA, "[t]here is no textual support in the statute for applying secondary liability for [ECPA] violations."  *Garback v. Lossing*, No. 09-cv-12407, 2010 WL 3733971, at *5 (E.D. Mich. Sept. 20, 2010).  Other courts have similarly found that a person or entity cannot be held liable for aiding and abetting another in violating the ECPA. *GTE Corp.*, 347 F.3d at 658 (finding no aiding and abetting liability under the ECPA because "nothing in the statute condemns assistants, as opposed to those who directly perpetrate the act"); *Crowley*, 166 F. Supp. 2d at 1269 (holding that the statute "does not provide for a civil action against one who aids and abets a violation of the" ECPA); *see also Pa. Ass'n of Edwards Heirs v. Rightenour*, 235 F.3d 839, 844 (3d Cir. 2000) (noting that Congress has taken a "statute-by statute approach" to civil aiding and abetting liability and that Supreme Court precedent "makes it abundantly clear that, in the absence of statutory authorization, there is no presumption in favor of recognizing a civil aiding and abetting claim").

Indeed, the 1986 amendments to Section 2520 makes plain that there is no secondary liability under Section 2511.  Section 2511(1)(a) also prohibits procuring another "person to intercept or endeavor to intercept, any wire, oral, or electronic communication[.]"  18 U.S.C. §

2511(1)(a).  Before 1986, Section 2520 of the ECPA allowed for civil liability against "any person who intercepts, discloses, or uses, or *procures any other person to intercept, disclose, or use*" certain protected communications.  *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168 (5th Cir. 2000) (quoting prior version of 18 U.S.C. § 2520) (emphasis added).  In 1986, however, Section 2520 was specifically amended to exclude recovery of civil damages against those who "procured" another person to intercept a communication.  *Id.*  The Fifth Circuit has held that this amendment eliminated the private right of action under the ECPA for procuring a violation of the ECPA.  *Id.*  Post-amendment, the statute unambiguously provides that civil damages are only recoverable against those who directly and intentionally *intercept, disclose, or use* the protected communication.  *See id.* at 168-69.  Because Plaintiffs have not alleged a direct, contemporaneous interception by Aaron's, their Section 2511 claims must be dismissed.

ii.   Plaintiffs have failed to allege sufficient facts to support their conspiracy and aiding and abetting claims.

Even if conspiracy and aiding and abetting were proper theories under the ECPA (and they are not), Plaintiffs have failed to allege sufficient factual support to make either theory plausible as *Iqbal* requires.  Plaintiffs allege, with no supporting facts, that Aaron's is liable for "aiding, abetting and/or conspiring to" violate the ECPA, even if it is not directly liable under the Act.  Compl. ¶ 51.  Plaintiffs' allegation of multiple theories of liability and "and/or" language not directed to any particular defendant shows that the plausibility requirement is not satisfied.  *See Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*, No. 09-4567, 2010 WL 1799456, at *11 (D.N.J. May 4, 2010) (granting motion to dismiss ECPA claims where plaintiff's complaint relied on and/or language and conclusory allegations; "[w]hat Plaintiff has alleged in effect is the mere possibility of liability, but not plausible liability").

To state their conspiracy claim, at the very least, Plaintiffs must allege facts sufficient to show that there was: (i) an agreement; and (ii) an intent to achieve a criminal or unlawful purpose.  *See Harmon v. Del. Sec'y of State*, 154 F. App'x 283, 285 n.3 (3d Cir. 2005) (noting a claim for conspiracy "'must allege specific facts showing an agreement and concerted action amongst the defendants'") (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998)); *see also* 20 Am. Jur. Trials 351 § 2 (2011) (noting that a "conspiracy consists of a combination between two or more persons to commit a criminal or unlawful act or to accomplish a lawful act by criminal or unlawful means").  Plaintiffs have failed to even allege – much less support with any facts – that Aaron's agreed with the other defendants to intercept, disclose or unlawfully use any intercepted electronic communications.  Indeed, the only specific allegations in Plaintiffs' Complaint deal entirely with actions taken by Aspen Way and DesignerWare. Compl. ¶¶ 34 - 49.

Plaintiffs have likewise failed to properly allege and support a claim for aiding and abetting liability.  Although the Third Circuit has not addressed aiding and abetting liability under the ECPA, the court has analyzed that sort of liability under another federal statue, the Racketeer Influenced and Corrupt Organizations Act ("RICO").  *See Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 270 (3d Cir. 1995).  There the Court held that to establishing aiding and abetting liability under RICO, the "plaintiff must prove (1) that the substantive act has been committed, and (2) that the defendant alleged to have aided and abetted the act knew of the commission of the act and acted with intent to facilitate it."  *Id.*; *see also Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1430 (3d Cir. 1994) (noting that a civil aiding and abetting claim generally focuses on "a defendant's substantial and knowing assistance to the commission of a tort").  The same analysis should apply here.  Thus, to state an aiding and

abetting claim against Aaron's, Plaintiffs must allege facts sufficient to show that: (1) Aaron's knew about the alleged interception, disclosure or unlawful use of Plaintiffs' electronic communication; and (2) substantially assisted in those alleged actions.

Plaintiffs have not alleged – even in a barebones manner – that Aaron's knew about or substantially assisted Aspen Way or DesignerWare in allegedly intercepting electronic communications from the Plaintiffs.  Moreover, none of the Complaint's allegations would support such an argument.  Again, the allegations as to Plaintiffs, at most, show only that Aspen Way and DesignerWare took a picture of Plaintiff Brian Byrd using PC Rental Agent. Complaint at ¶¶ 34 - 49.  Nothing suggests that Aaron's knew about or substantially assisted Aspen Way or DesignerWare in doing so.  *See id.*  Plaintiffs' Section 2511 claim must fail.

C.      Plaintiffs' Section 2512 ECPA Claim Must be Dismissed.

        1.      *Plaintiffs' Section 2512 Claim Must be Dismissed Because No Private Right of Action Exists for a Violation of that Section.*

Plaintiffs also assert claims against Aaron's for alleged violation of Sections 2512(a), (b), and (c) of the ECPA.  Section 2512 is a *criminal statute*, which makes it unlawful for a person to manufacture, assemble, possess, sell, advertise, send through the mail, or carry in interstate commerce a "device" that is "primarily useful" for the surreptitious interception of communications.[7]  The statute provides that a person who violates Section 2512 "shall be fined

---

[7]   Section 2512(1)(a)-(c)(ii) states in relevant part:

(1) Except as otherwise specifically provided in this chapter, any person who intentionally--

        (a)  sends through the mail, or sends or carries in interstate or foreign commerce, any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications;

        (b)  manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device

under this title or imprisoned not more than five years, or both." 18 U.S.C. § 2512(1). Section 2512 does not, however, provide for a civil private right of action.

Section 2520(a) of the ECPA creates private rights of action for certain – but only certain – sections of the ECPA. Section 2520 does not create a private right of action for violation of Section 2512. Section 2520(a) provides that "any person whose wire, oral, or electronic communication is ***intercepted, disclosed, or intentionally used*** in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in ***that*** violation such relief as may be appropriate." 18 U.S.C. § 2520(a) (emphasis added). Section 2512 has nothing to do with intercepting, disclosing, or intentionally using communications, meaning no private right of action exists for Section 2512's violation. *See, e.g., DirecTV Inc. v. Robson*, 420 F.3d 532, 538-39 (5th Cir. 2005); *DirecTV, Inc. v. Treworgy*,

---

renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce; or

(c) places in any newspaper, magazine, handbill, or other publication or disseminates by electronic means any advertisement of--

    (i) any electronic, mechanical, or other device knowing the content of the advertisement and knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications; or

    (ii) any other electronic, mechanical, or other device, where such advertisement promotes the use of such device for the purpose of the surreptitious interception of wire, oral, or electronic communications,

    knowing the content of the advertisement and knowing or having reason to know that such advertisement will be sent through the mail or transported in interstate or foreign commerce[.]

shall be fined under this title or imprisoned not more than five years, or both.

373 F.3d 1124 (11th Cir. 2004); *DirecTV, Inc. v. Chorba*, No. 3:CV-03-0843, 2005 WL 3095067, at *2 n.4 (M.D. Pa. Nov. 18, 2005); *DirecTV, Inc. v. Weikel*, No. Civ. 03-5300(JBS), 2005 WL 1243378, at *9 (D.N.J. May 25, 2005).  Indeed, the majority of courts that have considered the issue of whether a private right of action exists under Section 2512 have concluded that it does not.  *DirecTV v. Deskin*, 363 F. Supp. 2d 254, 260 (D. Conn. 2005) (noting that the majority of courts find no private right of action for Section 2512 violations)

The Eleventh Circuit's decision in *Treworgy* provides a persuasive analysis as to why there is no private right of action under Section 2512.  The Eleventh Circuit explained that in Section 2520(a) Congress created a private right of action *only* when a defendant has "intercepted, disclosed, or intentionally used [a communication]."  *Treworgy*, 373 F.3d at 1127. Section 2512 does not pertain to *those* violations.  *Id.*  Thus, the court held that no private right of action exists for a Section 2512 violation.  *Id.* at 1129.  As the court explained, "[b]ecause the language of section 2520(a) does not create a private right of action against a person who possesses a device in violation of section 2512(1)(b), we cannot create one."[8]  *Id.*

The Third Circuit has never addressed whether a private right of action exists for a Section 2512 violation.  The Third Circuit has, however, analyzed the scope of Section 2520(a) before – and its decision indicates that it would find no private right of action under Section 2512.  *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162 (3d Cir. 2005).  In *Pepe,* the Third Circuit turned to principles of statutory construction and the plain language of Sections 2511 and 2520(a) to determine if a private right of action exists for Section 2511.  *Id.* at 167.  The court

---

[8]   Although *Treworgy* addressed only Section 2512(1)(b), its logic applies equally to all of Plaintiffs' other Section 2512 claims, which address sending devices through the mail, putting devices into interstate commerce, or advertising devices.  Section 2520(a) also does not refer to any of these actions, meaning no private right of action exists for violating them. *See Treworgy*, 373 F.3d at 1126

noted that Section 2511, among other things, prohibits intentionally intercepting electronic communications.  *Id.*  The court also observed that Section 2520 "expressly authorizes private suits by 'any person whose ... electronic communication is intercepted ... in violation of this chapter.'"  *Id.*  The court found that both sections referred to intercepting electronic communications and that this created "linguistic interlock between the two provisions [that] could not be tighter, nor more obviously deliberate: § 2511(1)(a) renders unlawful the unauthorized intereption of electronic communications . . . while § 2520(a) authorizes private suit against those who have engaged in such activities."  *Id.*

No such "linguistic interlock" exists between Sections 2512 and 2520.  Indeed, the opposite is true:  Sections 2512 and 2520 address entirely different conduct.  Plaintiffs' Section 2512 claim must therefore be dismissed for lack of a private right of action. [9]

> **2.**      *Plaintiffs Have Also Failed to Allege a Plausible Claim for Violation of Section 2512.*

Even if this Court finds that a private right of action does exist under Section 2512 (and it does not), Plaintiffs' claims still must be dismissed because Plaintiffs fail to allege facts sufficient to state a Section 2512 claim against Aaron's.  In support of their Section 2512 claims, Plaintiffs simply parrot the language of the statute.  Under *Iqbal* and *Warren*, this is not enough.

As a preliminary matter, Plaintiffs' claims under Sections 2512(a), (b), and (c)(i) all require Plaintiff to show that PC Rental Agent is a device "primarily useful for the purpose of the

---

[9]  Even if a private right of action did exist under Section 2512, just as they have failed to support their conspiracy and aiding and abetting claims under Section 2511, *see* section III.B.2.ii herein, Plaintiffs have likewise failed to properly allege and support their conspiracy and aiding and abetting claims under Section 2512.  *See* Complaint at ¶ 62 (making barebones conspiracy and aiding and abetting claims under Section 2512).

surreptitious interception of wire, oral, or electronic communications." *See* 18 U.S.C. § 2512.[10] Plaintiffs do not allege that PC Rental Agent is primarily useful for this purpose. Instead, in their specific factual allegations about PC Rental Agent (as opposed to their recitation of Section 2512's prohibitions), Plaintiffs allege that the software was manufactured, assembled, advertised, and sold "for the primary purpose of allowing the Aaron's Defendants to remotely track, access, monitor, monitor [sic] and/or transmit electronic communications on Aaron's RTO computers." Complaint at ¶ 28. Plaintiffs do not include "interception" in this litany of "primary" purposes. Plaintiffs' failure to allege that the primary useful purpose of PC Rental Agent is interception dooms their claims under Section 2512(a), (b), and (c)(i).

Moreover, Plaintiffs' Section 2512 claims also must fail because:

i   To state a claim against Aaron's under section 2512(a), Plaintiff must establish that Aaron's sent PC Rental Agent through the mail or carried it in interstate commerce. Plaintiffs have alleged no facts to support the claim that Aaron's ever engaged in this conduct.

i   To support a claim against Aaron's under Section 2512(b), Plaintiff must establish that Aaron's manufactured, assembled, possessed, or sold PC Rental Agent. Plaintiffs specifically allege that PC Rental Agent is "manufactured, assembled, advertised and sold" by DesignerWare, not Aaron's. Complaint at ¶ 28.[11]

i   To support a claim against Aaron's under Section 2512(c), Plaintiff must establish that Aaron's advertised PC Rental Agent. Plaintiffs do not allege that Aaron's ever

---

[10]   Section 2512(c)(ii) requires an advertisement promoting the use of PC Rental Agent for the purpose of surreptitious interception. Plaintiffs do not allege that Aaron's ever advertised PC Rental Agent at all.

[11]   Thus, if this Court found that a private right of action exists under Section 2512 and that PC Rental Agent is a prohibited software under the statute, then Plaintiffs' only possible claim under Section 2512(b) is one for possession of the software.

advertised PC Rental Agent.  To the contrary, Plaintiffs allege that the "Aaron's

Defendants" secretly installed the software – an action that is the antithesis of

advertising PC Rental Agent.  *Id.* at ¶ 26.

For all of these reasons, Plaintiffs' claims under Section 2512 should be dismissed.

D.    Plaintiffs' CFAA Claim Must be Dismissed.

        Plaintiffs assert claims against Aaron's under four subsections of the CFAA.  Those

subsections prohibit:

i    "intentionally [accessing]  a computer without authorization or [exceeding] authorized

       access, and thereby [obtaining] . . . information from any protected computer;"

i    "knowingly [causing] the transmission of a program, information, code or command, and

       as a result of such conduct, intentionally [causing] damage without authorization, to a

       protected computer;"

i    "intentionally [accessing] a protected computer without authorization, and as a result of

       such conduct, recklessly causes damage*;*" and

i    "intentionally [accessing] a protected computer without authorization, and as a result of

       such conduct, causes damage and loss."

18 U.S.C. §§ 1030(a)(2)(C) & (a)(5)(A)-(C).[12]

        Plaintiffs' CFAA claims must be dismissed because Plaintiffs have failed to plead the

facts necessary to show that they fall within the limited private right of action that exists under

the CFAA.   Plaintiffs' CFAA claims also must be dismissed because Plaintiffs have not alleged

---

[12]    Plaintiffs incorrectly cite to the prior version of the CFAA.  *See* ¶¶ 75-77 (citing to §§
        1030(a)(5)(A)(i), 1030(a)(5)(A)(ii), and 1030(a)(5)(A)(iii) under the prior version of the
        CFAA).  Aaron's references the current version of these same provisions, which appear at §§
        1030(a)(5)(A)-(C).

facts sufficient to show "damage," a defined term under the CFAA and a necessary element of three of the Plaintiffs' four CFAA claims.  Plaintiffs claims under CFAA must therefore be dismissed.

       1.      *Plaintiffs have not established that they have a private right of action under the CFAA.*

To have a private right of action for their CFAA claims, Plaintiffs must satisfy the requirements of Section 1030(g), which allows a plaintiff to bring a civil case for CFAA violations only if they have damages of the sort allowed by the statute that amount to $5,000. Specifically, Section 1030(g) creates a private right of action only in certain, limited circumstances:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. . . .

18 U.S.C. § 1030(g).  In this case, only subclause I is relevant.[13]  Subclause I requires "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value[.]"  18 U.S.C. § 1030(c)(4)(A)(i)(I).  Loss is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]"  18 U.S.C. §

---

[13]   Subclauses II-V, respectively, involves medical treatment, physical injury, threats to public health or safety, and damage to certain computers used by the United States government for specific tasks, none of which is at issue here. *See* 18 U.S.C. § 1030(c)(4)(A)(i)(II)-(V).

1030(e)(11).  Thus, Plaintiffs must sufficiently allege a loss of $5,000 or more in economic damages of the sort allowed by the statute.  Plaintiffs have failed to do so.

Plaintiffs again make a barebones "loss" allegation that merely parrots statutory elements by stating that the "Defendants' conduct has caused a loss to one or more persons during any one-year period aggregating at least $5,000 in value in real economic damages."  Compl. ¶ 81. But this rote recitation of a $5,000 loss does not sufficiently support Plaintiffs' allegations that a $5,000 loss has occurred.  *See, e.g., Direct Supply Inc. v. Pedersen*, No. 10–C–0278, 2011 WL 1131092, at *2 (E.D. Wis. Mar. 28, 2011) (dismissing plaintiff's CFAA claim where plaintiff alleged no facts to support its barebones allegation that he had suffered $5,000 in loss); *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 780 (S.D. Tex. 2010) (dismissing plaintiff's CFAA claim because plaintiff did "not allege any facts showing at least $5,000 of loss, or any loss as a result of investigation or interruption of computer service"); *Bansal v. Russ*, 513 F. Supp. 2d 264, 270 (E.D. Pa. 2007) (dismissing plaintiff's CFAA claim where even construing plaintiff's CFAA "allegations liberally, nothing in his complaint suggests that the alleged CFFA abuse caused compensable economic loss").  Beyond these barebones allegations, Plaintiffs appear to allege loss due to (i) violation of their right to privacy and (ii) "disclosure of personal information that is otherwise private, confidential, and not of public record."  Compl. ¶¶ 80, 82.  Neither of these alleged harms, however, constitutes loss under the CFAA.  Plaintiffs do not allege any "costs" they have incurred due to the use of PC Rental Agent, much less the types of costs that are required to constitute a loss under Section 1030.

Some courts have held that a plaintiff can only suffer a loss when there has been an interruption in service.  *See, e.g., Cont'l Grp, Inc. v. KW Prop. Mgmt., LLC*, 622 F. Supp. 2d 1357, 1371 (S.D. Fla. 2009) (finding the "'because of interruption of service'" language in the

definition of loss applies to the entire definition of loss because otherwise "the second half of the 'loss' definition" would be "surplusage"), *clarified on other grounds* 2009 WL 3644475 (S.D. Fla. Oct. 30, 2009).  Other courts have found that "the term 'loss' encompasses . . . two types of harm: costs to investigate and respond to a computer intrusion, and costs associated with a service interruption."  *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 776 (S.D. Tex. 2010); *see also Clinton Plumbing and Heating of Trenton, Inc. v. Ciaccio*, No. 09-2751, 2010 WL 4224473, at *6 (E.D. Pa. Oct. 22, 2010) ("Various courts have interpreted 'loss' to mean the remedial costs of investigating a computer for damage, remedying damage done, and costs incurred while the computer is inoperable."); *Polistina*, 2007 WL 1652292, at *4 (stating that "the meaning of loss under the statute must pertain to 'a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted.'"). Plaintiffs' claims must be dismissed because they have failed to plead "loss" under either standard.  Nowhere in their Complaint do the Plaintiffs allege either an interruption in service or any costs they incurred to investigate, respond to, or remedy any alleged computer intrusion. Not only have Plaintiffs failed to allege loss, they have set forth absolutely no factual allegations even remotely suggesting that they have suffered $5,000 in losses.  Because Plaintiffs have not sufficiently alleged the facts required to establish that they have the right to bring their CFAA claim, the claim must be dismissed.

      2.      *Plaintiffs have failed to allege the requisite damage.*

      Even if this Court finds that Plaintiffs have established that they fall within the limited private right of action created by Section 1030, three of Plaintiffs' four CFAA claims still must be dismissed because Plaintiffs have failed to allege "damage."  Plaintiffs' claims under Section 1030(a)(5)(A), 1030(a)(5)(B), and 1030(a)(5)(C) all require proof of damage.  Plaintiffs'

only arguably substantive allegation about damage is that they "suffered damage" due to the

"violation of the right to privacy, and disclosure of personal information that is otherwise private,

confidential, and not of public record." Compl. ¶ 80. But this does not constitute damage under

the CFAA. *See id.* Plaintiffs' § 1030(a)(5)(A)-(C) claims must therefore be dismissed.[14]

Under the CFAA, damage is defined as "any impairment to the ***integrity*** or ***availability*** of

data, a program, a system, or information[.]" 18 U.S.C. § 1030(e)(8) (emphasis added). Plaintiffs

parrot this definition in paragraph 78 of the Complaint.[15] Such parroting, however, is insufficient

to state a claim; Plaintiffs must state facts to support their damage allegation. *E.g., Modrowski v.*

*Pigatto*, No. 09 C 7002, 2010 WL 2610656, at *2 (N.D. Ill. June 25, 2010) (dismissing plaintiff's

CFAA claim where plaintiff failed to explain how he suffered damage); *Walter Bennett*

*Commc'ns of Pa., Inc. v. Hibbard*, No. 09-3633, 2009 WL 3856588 (E.D. Pa. Nov. 18, 2009)

(dismissing a CFAA claim where the plaintiff merely recited the elements of a CFAA damage

---

[14]  For Plaintiffs' 18 U.S.C. § 1030(a)(5)(A) claim in particular, Plaintiffs have also failed to allege any facts to support their barebones contention in paragraph 75 of the Complaint that Aaron's *intentionally* caused damage. The Third Circuit has held that in the context of a CFAA claim, to prove intentional conduct, the plaintiff must prove that the defendant "deliberately caused an impairment to the integrity or availability of data, a program, a system, or information." *U.S. v. Carlson*, 209 F. App'x 181, 184 (3d Cir. 2006). The Plaintiffs have not alleged that Aaron's "deliberately" caused any "damage" to the Byrds.

[15]  Likewise, in paragraph 79 of the Complaint, Plaintiffs allege that they have suffered damage due to the "reasonable costs [they incurred] . . . including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." This language, however, merely recites the definition of "loss" under the CFAA, which is again insufficient to state a claim. *See* 18 U.S.C. § 1030(e)(11). In any event, damage and loss are two different concepts under the CFAA, and taking damage to mean the same thing as loss would render the term damage meaningless, an impermissible result. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'"); *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 512 (3d Cir. 2005) ("We must take Congress' use of language as purposeful.").

claim); *Atl. Recording Corp. v. Raleigh*, No. 4:06-CV-1708 (CEJ), 2009 WL 1543458, at *3 (E.D.

Mo. June 2, 2009) (dismissing defendant's CFAA counterclaim where the defendant merely

recited the definition of damage but offered "no supporting facts to" support his damage

allegation); *Fink v. Time Warner Cable*, No. 08 Civ. 9628(LTS)(KNF), 2009 WL 2207920, at *4

(S.D.N.Y. July 23, 2009) (dismissing plaintiff's CFAA claim where plaintiff merely parroted

statutory definition of damage).

      Plaintiffs do not allege any facts establishing that PC Rental Agent rendered their data,

programs, systems, or information unusable.  Likewise, Plaintiffs do not allege facts showing

that PC Rental Agent compromised the integrity of Plaintiffs' data, programs, systems, or

information.  With respect to the integrity prong of the damage inquiry, damage only exists if

data is destroyed, altered or otherwise made unusable.  *See*, *e.g.*,  *Andritz, Inc. v. S. Maint.*

*Contractor, LLC*, 626 F. Supp. 2d 1264, 1266 (M.D. Ga. 2009) (finding plaintiff had not

properly alleged damages where the defendant did not allege that the defendant had deleted or

altered any of plaintiff's data); *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 769 (N.D.

Ill. 2009) ("The plain language of the statutory definition [of damage] refers to situations in

which data is lost or impaired because it was erased or because (for example) a defendant

smashed a hard drive with a hammer."); *Garelli Wong & Assocs., Inc. v. Nichols*, 551 F. Supp.

2d 704, 709 (N.D. Ill. 2008) (finding plaintiff did not sufficiently allege damage under the

integrity prong where the plaintiff did not allege nay "'diminution in the completeness or

useability of data or information on a computer system'"); *Resdev, LLC v. Lot Builders Ass'n*,

*Inc.*, No. 6:04-CV-1374ORL31DAB, 2005 WL 1924743, at *5 n.3 (M.D. Fla. Aug. 10, 2005)

(noting that integrity "ordinarily means 'wholeness' or 'soundness,' . . . and contemplates, in this

context, some diminution in the completeness or useability of data or information on a computer

system").  Taking – and even improperly using – data does not constitute damage as that term is defined in the CFAA.  *E.g.*, *Consulting Prof'l Res., Inc. v. Concise Techs. LLC*, No. 09-1201, 2010 WL 1337723, at *8 (W.D. Pa. Mar. 9, 2010) (finding that deleting files would constitute damage but that inappropriately using data does not constitute damage); *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 737, 743-44 (N.D. Ill. 2009) (holding that improperly disclosing data does not constitute damage under the CFAA).  Plaintiffs have failed to allege sufficiently the damage required to make their CFAA claims against Aaron's plausible.  The claims must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons and on the authorities cited, Plaintiffs have failed to state any claim for relief against Aaron's.  Their Complaint should therefore be dismissed in its entirety against Aaron's.

Dated:  July 18, 2011

<div style="margin-left:40%">

Respectfully submitted,

KNOX McLAUGHLIN GORNALL & SENNETT, P.C.

By*: /s/ Richard A. Lanzillo*
Richard A. Lanzillo, Esq.
PA ID #: 53811
Neal R. Devlin, Esq.
PA ID#: 89223
120 West Tenth Street
Erie, PA  16501-1461
Telephone: (814) 459-2800
Fax: (814) 453-4530
Email:  rlanzill@kmgslaw.com

Attorneys for Defendant,
Aaron's, Inc.

Of Counsel:

</div>

Kristine McAlister Brown (GA 480189)
(admitted pro hac vice)
William H. Jordan (GA 405112)
(admitted pro hac vice)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia  30309-3424
Telephone:  (404) 881-7000
Facsimile:  (404) 881-7777
E-mail:  kristy.brown@alston.com
             bill.jordan@alston.com