## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRYSTAL BYRD and BRIAN BYRD, Individually, and on Behalf of all Similarly Situated Persons, | ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 1:11-cv-101-SPB |
| vs. | ) ) | |
| AARON'S, INC., ASPEN WAY ENTERPRISES, INC., d/b/a Aaron's Sales and Leasing, a franchisee of AARON'S FRANCHISEES; and DESIGNERWARE, LLC, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT AARON'S, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Aaron's, Inc. ("Aaron's") submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Second Amended Complaint ("Second Amended Complaint" or "SAC"). As set forth herein, Plaintiffs' Second Amended Complaint fails to state a single cognizable claim against Aaron's, and it should be dismissed.

## I.        INTRODUCTION

On March 20, 2012, this Court granted Aaron's Motion to Dismiss Plaintiffs' claims after Plaintiffs conceded that they had not adequately alleged a claim against Aaron's. *Byrd v. Aaron's, Inc.* Transcript and Order from Hearing on Objections to the Magistrate Judge's Report and Recommendations (ECF # 96) at 28, 30, 31, 50. The Court allowed the Plaintiffs, however, to conduct limited discovery against Aaron's to see if they could find the factual basis for a claim. *Id.* at 50. Plaintiffs conducted extensive discovery, both of Aaron's and of Defendant DesignerWare, LLC

("DesignerWare").  Plaintiffs are now trying again to assert a claim against Aaron's – this time pursuing claims for violation of Section 2511 of the Electronic Communications Privacy Act ("ECPA"), common law invasion of privacy, conspiracy, and aiding and abetting.  But, Plaintiffs still have not stated a single legally cognizable claim against Aaron's, and their Second Amended Complaint must be dismissed.

Plaintiffs' claims under Section 2511 of the ECPA require Plaintiffs to establish the contemporaneous interception of an electronic communication.  Plaintiffs still have not alleged that Aaron's (as opposed to the other Defendants) actually intercepted any electronic communication – much less have Plaintiffs established the contemporaneous interception of an electronic communication as the ECPA requires.

Undaunted, Plaintiffs try to make a case for vicarious liability by lumping all of the Defendants together and attributing the alleged conduct of Aspen Way Enterprises, Inc. ("Aspen Way") and DesignerWare to Aaron's.  But Plaintiffs' attempt to invoke conspiracy or secondary liability fall flat because there is no secondary liability under the ECPA.

Plaintiffs' common law invasion of privacy claims also must fail.  Plaintiffs' claims are governed by Wyoming law, and Wyoming does not recognize a claim for common law invasion of privacy.   The non-existence of the alleged cause of action under Wyoming law also dooms Plaintiffs' state law conspiracy and aiding and abetting claims.  Put simply, there can be no liability for conspiring to invade Plaintiffs' privacy or aiding and abetting an invasion of privacy when there is no cause of action available for invasion of privacy.

## II. SECOND AMENDED COMPLAINT ALLEGATIONS[1]

In the Second Amended Complaint, Plaintiffs assert claims against Aaron's, Aspen Way, DesignerWare, and "John Does (1-45)" (who Plaintiffs describe as Aaron's franchisees).  Plaintiffs assert the same claims against each Defendant: (i) Violation of Section 2511 of the ECPA, 18 U.S.C. § 2511; (ii) invasion of privacy; (iii) conspiracy; and (iv) aiding and abetting.  Plaintiffs base all of these claims on the overarching allegation that Aaron's and the other Defendants "have been spying on the activities of Plaintiffs" using PC Rental Agent.  (*See* SAC at ¶ 3.)  Although Plaintiffs lob this allegation collectively at all Defendants, Plaintiffs do not allege – nor could they – that Aaron's installed or used PC Rental Agent on the computers it offered for lease or sale in its stores.

Plaintiff Crystal Byrd's lease agreement was with Aspen Way, not Aaron's. (*See id.* ¶ 57; *see also* Original Complaint at ¶ 34; Exhibit 1 (Plaintiff's lease agreement, which makes clear it is between Plaintiff Crystal Byrd and Aspen Way).[2]

---

[1] Aaron's summarizes the Second Amended Complaint allegations because they must be taken as true for purposes of this Motion to Dismiss.  Aaron's does not concede – and indeed contests – the veracity of Plaintiffs' allegations.

[2] Although Plaintiffs' Second Amended Complaint references the lease agreement it is not actually attached.  The lease agreement, however, is attached to Plaintiffs' Original Complaint.  This Court may still properly consider the lease agreement attached to the Original Complaint because it appears in the case's record, is referenced in the Second Amended Complaint, and is relied on by the Plaintiffs.  *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (court may consider "documents that are attached to or submitted with the complaint . . . and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'");  *Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (court may consider a document that is not attached to the complaint if the document forms the" basis of a claim[,]" which means the document

Pursuant to her agreement with Aspen Way, Plaintiff Crystal Byrd leased a laptop computer.  Plaintiffs Crystal and Brian Byrd allege that they later learned that the laptop computer Crystal Byrd leased from Aspen Way had PC Rental Agent software installed. (SAC ¶ 58.)  They further allege that Aspen Way used the software to take a photograph of Brian Byrd and a screen shot of the computer screen while Bryan Byrd was using the computer to play internet poker.  (*Id.* at ¶¶ 61-63.)

Although Plaintiffs allege, generically and collectively, that "the Aaron's Defendants" (which Plaintiffs define to include Aspen Way) installed the PC Rental Agent software on Plaintiffs' computer (*Id.* ¶ 58), the Second Amended Complaint makes clear that Aspen Way – not Aaron's – installed PC Rental Agent on Crystal Byrd's computer.  (*E.g.*, *Id.* ¶¶ 15, 33, 37, 38.)  Indeed, Plaintiffs concede that it was only Aspen Way and other franchisees that purchased, installed, and used PC Rental Agent, not Aaron's.  (*E.g.*, *id.* at ¶¶ 32, 33, 37, 38.)

Nevertheless, Plaintiffs assert claims against Aaron's based on the allegations that: (i) Aaron's allowed franchisees access to DesignerWare's website, (ii) emails from Detective Mode to Aspen Way passed through Aaron's servers, and (iii) Aaron's conducted a purely economic analysis referenced as a"Beta" study "to determine PC Rental Agent's effectiveness."[3]  (*E.g*, *Id.* ¶¶ 43, 44, 49, 52.)  Plaintiffs also ineffectively allege that Aaron's controlled or had the ability to control various aspects of

---

is "integral to or explicitly relied upon in the complaint"), *abrogation on other grounds recognized by In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010).

[3] Noticeably absent from Plaintiffs' Complaint is any allegation that, as a part of or as a result of this "Beta" study, Aaron's began installing or using PC Rental Agent on computers it offered for lease or sale in its stores.

franchisees' operations.   (*Id.* ¶ 83.)[4]

## III.   ARGUMENT AND CITATION OF AUTHORITIES

A.   Motion to Dismiss Standard

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the United States Supreme Court clarified the standard for determining whether a plaintiff has stated a claim upon which relief can be granted.  The Court held that a complaint must contain more than a simple "the-defendant-unlawfully-harmed-me accusation."  *Id.* at 1949 (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)).  Where, as here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then the plaintiff has failed to state a legally cognizable claim for relief, and dismissal is appropriate. *Iqbal*, 129 S. Ct. at 1950.

The Third Circuit has made clear that: "A motion to dismiss should be granted if the plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010).

"'[C]onclusory or bare-bones allegations will no longer survive a motion to dismiss: threadbare recitals of the elements of a cause of action, supported by mere

---

[4] Aaron's denies that Plaintiffs have alleged sufficient facts to establish that Aaron's  controlled its franchisees – both with respect to the installation or use of PC Rental Agent and in any other way.  Moreover, vicarious liability does not exist, as a matter of law, with respect to the claims asserted.  *See* Section III.B.3 of this Memorandum.

conclusory statements, do not suffice.'" *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77,

84 (3d Cir. 2011); *see also Byers v. Intuit, Inc.,* 600 F.3d 286, 297 (3d Cir. 2010)

(affirming district court's dismissal of plaintiff's claim where plaintiff merely "incanted"

elements of a claim and "failed to bolster her allegations with sufficient supporting

facts").  A court must also "disregard legal conclusions."  *Santiago*, 629 F.3d at 128.

Thus, plaintiffs must plead *facts* sufficient to support each element of their claim.  *Great*

*W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010)

("'[S]tating ... a claim requires a complaint with enough factual matter (taken as true) to

suggest' the required element."); *Kundratic v. Thomas*, 407 F. App'x 625, 627 n.5 (3d

Cir. 2011) (affirming dismissal of a plaintiff's claim because plaintiff failed "to set forth

facts attesting to one of the essential elements" of her claim); *Halterman v. Tullytown*

*Borough*, No. 10–7166, 2011 WL 2411020, at *6 n.1 (E.D. Pa. June 14, 2011)

(dismissing a claim where the plaintiff "failed to present a factual basis supporting two of

the requisite elements" of the plaintiff's claim).

B.    Plaintiffs' Section 2511 ECPA Claims Must be Dismissed.

      *1.   Plaintiffs do not allege facts sufficient to establish that Aaron's is directly liable for violating the ECPA.*

    Plaintiffs assert claims under three different subsections of Section 2511 of the

ECPA – 18 U.S.C. §§ 2511(1)(a), (1)(c), & (1)(d).  These sections prohibit intercepting

electronic communications, using or disclosing intercepted electronic communications, or

endeavoring to take any of these actions.  Specifically, the statute provides, in relevant

part:

    (1) Except as otherwise specifically provided in this chapter any person who--

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any . . . electronic communication; . . .

. . . .

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any . . . electronic communication, knowing or having reason to know that the information was obtained through the interception of [an] . . . electronic communication in violation of this subsection . . . .

(d) intentionally uses, or endeavors to use, the contents of any . . . electronic communication, knowing or having reason to know that the information was obtained through the interception of [an] . . . electronic communication in violation of this subsection; . . .

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

*Id.*

Instead of alleging any conduct by Aaron's that violates the ECPA, Plaintiffs have focused the Second Amended Complaint on allegations of misconduct by the John Doe franchisees and Aspen Way.  For example, Plaintiffs allege that:

ı   "Aaron's Franchisees purchased, installed and/or used PC Rental Agent" (SAC ¶ 10);

ı   "Aspen Way entered into an agreement with DesignerWare, and pursuant to that agreement, purchased, installed and used PC Rental Agent[] from DesignerWare and installed it on computers Aspen Way offered for rent or sale" (*Id.* ¶ 15);

ı   "Aspen Way and other Aaron's Franchisees have entered into Agreements with DesignerWare" (*Id.* ¶ 32);

ı   "Aspen Way and numerous Aaron's Franchisees have secretly installed this spying device and/or software" (*Id.* ¶ 33);

LEGAL02/33695046v1

ı   Aspen Way and Franchisees installed PC Rental Agent and installed and
    built Detective Mode (*Id.* ¶ 37);

ı   The "installer" – Aspen Way and the John Doe Franchisees – "can secretly
    take photographs with the RTO computer's webcams, and capture
    keystrokes, and screen shots" (*Id.* ¶ 38);

ı   Aaron's franchisees spied on their customers (*Id.* ¶ 45),

ı    "Franchisees' illegally spied upon its [sic] customers and intercepted their
    personal and private information and electronic communications" (*Id.* ¶
    74); and

ı   "[C]ustomers have had their images, keystrokes, screen shots, private and
    personal information and communications captured from their computers
    and transmitted from their computers to Aaron's Franchisee stores and
    their employees" (*Id.* ¶ 79).

In sharp contrast – even after extensive discovery – Plaintiffs have not alleged
that Aaron's engaged in this sort of conduct.  Plaintiffs have not alleged that Aaron's
intercepted any electronic communication by Plaintiffs or endeavored to do so.  Nor have
Plaintiffs' alleged that Aaron's used or disclosed any intercepted electronic
communication by Plaintiffs.  Without allegations of this conduct – which is the only
conduct prohibited by the sections of the ECPA Plaintiffs have sued upon – Plaintiffs'
claims must fail.

Nonetheless, Plaintiffs allege that Aaron's should be directly liable under the
ECPA after September 2, 2010 because after that time Aaron's: (i) knew "what" its
alleged "express consent was permitting to occur" and (ii) conducted a "Beta study to

determine the viability of the PC Rental Agent[] or similar software for its corporate stores" rather than terminate "its involvement and discontinue its express consent to allow . . . misconduct to occur through its corporate property and structure." *See id.* ¶ 95. Noticeably absent from these allegations is any claim that Aaron's intercepted, disclosed, or used an electronic communication, or that it endeavored to take any of these actions or that it ever installed PC Rental Agent, or similar software, even as part of its assessment of PC Rental Agent's effectiveness. *See id.* There is simply no case law to support the proposition that one can be held liable for violating Section 2511 based on alleged knowledge that another is violating the statute. And Plaintiffs' claim that Aaron's violated the statute by analyzing whether to use PC Rental Agent defies credulity – particularly given that there is no allegation (nor could there be) that Aaron's began installing or using PC Rental Agent on the computers sold or leased in its stores before, during or after conducting the study. Plaintiffs' failure to allege conduct on the part of Aaron's that violates Section 2511 requires dismissal of its direct liability claim under the ECPA.

> 2.      *Aaron's cannot be held secondarily liable for violating the ECPA.*

Plaintiffs allege three theories of secondary liability – conspiracy, aiding and abetting, and vicarious liability. Under the ECPA, however, Aaron's cannot be held secondarily liable for violating the ECPA regardless of the theory. The ECPA simply does not permit secondary liability.

As a general rule, a court should not find secondary liability under a federal statute unless the text or structure of a statute indicates Congress intended secondary liability to exist. *Doe v. GTE Corp.*, 347 F.3d 655, 658 (7th Cir. 2003) ("Normally

federal courts refrain from creating secondary liability that is not specified by statute.")

(citing *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164

(1994)).  Section 2511 does not create secondary liability, meaning Plaintiffs' claims that

Aaron's is secondarily liable under the statute must fail.

Section 2511, in relevant part, prohibits any person from intentionally intercepting

electronic communications, intentionally disclosing electronic communications, or

intentionally using intercepted electronic communications in certain circumstances.  18

U.S.C. §§ 2511(1)(a), (1)(c), & (1)(d).  Section 2520 then allows any person whose

electronic communications have been "intercepted, disclosed, or intentionally used in

violation of this chapter" to bring "a civil action [to] recover from ***the person or entity*** . .

. which ***engaged in that violation*** such relief as may be appropriate."  18 U.S.C. §

2520(a) (emphasis added).  Thus, as Section 2520(a) makes clear, only the person or

entity that directly violates the statute may be sued civilly.  *See id.*

"Although a statute's structure may show that secondary liability has been

established implicitly, . . . it is hard to read § 2511 in that way."  *GTE Corp.*, 347 F.3d at

659 (refusing to find aiding and abetting liability under Section 2511).  As one court

explained in holding that a conspiracy claim cannot be stated under the ECPA, "[t]here is

no textual support in the statute for applying secondary liability for [ECPA] violations."

*Garback v. Lossing*, No. 09-cv-12407, 2010 WL 3733971, at *5 (E.D. Mich. Sept. 20,

2010); *Kirch v. Embarq Management Co.*, No. 10–2047–JAR, 2011 WL 3651359, at *7

(D. Kan. Aug. 19, 2011) (finding the ECPA's language does not allow secondary

liability).  Other courts have similarly found that a person or entity cannot be held liable

for aiding and abetting another in violating the ECPA.  *GTE Corp.*, 347 F.3d at 658

LEGAL02/33695046v1

(finding no aiding and abetting liability under the ECPA because "nothing in the statute condemns assistants, as opposed to those who directly perpetrate the act"); *Crowley*, 166 F. Supp. 2d at 1269 (holding that the statute "does not provide for a civil action against one who aids and abets a violation of the" ECPA); *In re Toys R Us, Inc., Privacy Litig.*, No. 00-CV-2746, 2001 WL 34517252, at *7 (Oct. 9, 2001) (holding no aiding and abetting liability exists under the ECPA); *see also Pa. Ass'n of Edwards Heirs v. Rightenour*, 235 F.3d 839, 844 (3d Cir. 2000) (noting that Congress has taken a "statute-by statute approach" to civil aiding and abetting liability and that Supreme Court precedent "makes it abundantly clear that, in the absence of statutory authorization, there is no presumption in favor of recognizing a civil aiding and abetting claim").

Indeed, the 1986 amendments to Section 2520 makes plain that there is no secondary liability under Section 2511.  Section 2511(1)(a) also prohibits procuring another "person to intercept or endeavor to intercept, any wire, oral, or electronic communication[.]"  18 U.S.C. § 2511(1)(a).  Before 1986, Section 2520 of the ECPA allowed for civil liability against "any person who intercepts, discloses, or uses, or *procures any other person to intercept, disclose, or use*" certain protected communications.  *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168 (5th Cir. 2000) (quoting prior version of 18 U.S.C. § 2520) (emphasis added).  In 1986, however, Section 2520 was specifically amended to exclude recovery of civil damages against those who "procured" another person to intercept a communication.  *Id.*  The Fifth Circuit has held that this amendment eliminated the private right of action under the ECPA for procuring a violation of the ECPA.  *Id.*; *see also Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, --- F. Supp. 2d ----, 2012 WL 4054141, at *8 (D.D.C. 2012)

(agreeing with *Peavy* and citing several other cases to support its conclusion that there is no procuring liability under the ECPA).  Post-amendment, the statute unambiguously provides that civil damages are only recoverable against those who directly and intentionally *intercept, disclose, or use* the protected communication.  *See Peavy*, 221 F.3d at 168-69;  *Gaubatz*, --- F. Supp. 2d ----, 2012 WL 4054141, at *9.  Because Plaintiffs have not alleged a direct, contemporaneous interception by Aaron's, their Section 2511 claims must be dismissed.

> 3.    *Plaintiffs do not sufficiently allege an interception of an electronic communication.*

All of Plaintiffs' Section 2511 claims – whether premised on direct or secondary liability – require Plaintiffs to establish the interception of an electronic communication. *Wesley Coll. v. Pitts*, 974 F. Supp. 375, 383-84 (D. Del. 1997), *aff'd*, 172 F.3d 861 (3d Cir. 1998) (holding that absent an interception, neither the disclosure nor the use of the contents of the communication violates Section 2511); *see also Walsh v. Krantz*, 386 F. App'x 334, 340 (3d Cir. 2010) (same).  Plaintiffs have not alleged facts sufficient to support this essential element of their Section 2511 claims.

As an initial matter, this Court has already held that it is "convinced that an interception of an electronic communication did not occur with respect to the web cam photo."  *Byrd v. Aaron's, Inc.* Transcript and Order from Hearing on Objections to the Magistrate Judge's Report and Recommendations (ECF # 96) at 49 (adopting Magistrate Judge Baxter's "R and R in that respect").  So that matter has already been resolved – and the web cam pictures, as discussed further below, cannot form the basis of Plaintiffs' Section 2511 claim.

The Court has also stated that it is "very skeptical whether an 'interception' of an

'electronic communication' as required under the ECPA occurred in this case." *Id.*
Despite conducting discovery against DesignerWare, Plaintiffs allegations regarding
interception remain virtually the same.  There is no reason for the Court to be any less
skeptical now of whether an interception of an electronic communication occurred than it
was when it first analyzed this issue.  Indeed, given that the Plaintiffs have conducted
extensive discovery but failed to come forth with additional facts supporting their claims,
this Court should be more skeptical, not less.

      As previously explained, Section 2510(4) of the ECPA defines "intercept" as "the
. . . acquisition of the contents of any . . . electronic . . . communication through the use of
any electronic, mechanical, or other device." [5]   18 U.S.C. § 2510(4).  The Third Circuit
has held that, for liability to attach under Section 2511, an interception of an electronic
communication "must occur contemporaneously with the transmission."  *Fraser v.
Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003);  *see also United States v.
Steiger*, 318 F.3d 1039, 1048-49 (11th Cir. 2003) (finding to constitute an interception an
electronic communication must be captured contemporaneously with transmission);
*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) (same); *Steve Jackson
Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457 (5th Cir. 1994) (deeming the ECPA
inapplicable to e-mail stored on a company's computer that operated an electronic
bulletin board); *Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967, 979 (M.D.
Tenn. 2008) ("[U]nless an e-mail is actually acquired in its split second transmission over

---

[5]    Plaintiffs' Section 2511 claim also must fail because PC Rental Agent does not
constitute a "device" as the term is used in the ECPA. *See Potter v. Havlicek*, 3:06-
cv-211, 2008 WL 2556723, at *8 - *9 (S.D. Ohio June 23, 2008) (finding that
"spyware" software was not a "device").

a computer network, it cannot be 'intercepted' as that term is reasonably understood."); *Wesley Coll.*, 974 F. Supp. at 386-87 (finding that an interception under Title I of the ECPA occurs when an electronic communication is en route to its intended recipient). As the Eleventh Circuit has explained, the ECPA covers "only real-time interception of electronic communications[.]" *Steiger*, 318 F.3d at 1049. In other words, a communication must be captured while in "flight." *Id.* at 1050. As a result of this requirement, "few seizures of electronic communications from computers will constitute 'interceptions.'" *Id.* at 1050.

Conclusory allegations of interception are not enough to state a claim for relief under the ECPA. *Holomaxx Techs. v. Microsoft, Corp.*, No. CV–10–4924–JF, 2011 WL 865278, at *7 (N.D. Cal. Mar. 11, 2011) (dismissing complaint for failure to state a claim due to conclusory allegations of "interception"); *Ideal Aerosmith, Inc. v. Acutronic USA*, Inc., No. 07-0129, 2007 WL 4394447, at *4 (E.D. Pa. Dec. 13, 2007) ("'[t]he Court need not accept a conclusory allegation that the conduct alleged in the complaint constituted an interception under the'" ECPA). Rather, Plaintiffs must allege facts sufficient to show a contemporaneous interception. Plaintiffs have not carried that burden here.

Plaintiffs allege that, using the Detective Mode function of the PC Rental Agent software, a photograph was taken of Plaintiff Byrd and a screenshot was taken of the Plaintiffs' computer while Brian Byrd was using the computer to play internet poker. SAC ¶ 61. Yet, Plaintiffs do not allege that Aaron's took the photograph or screenshot. *Id.* Even as to DesignerWare and Aspen Way, Plaintiffs do not allege a contemporaneous electronic transmission by Plaintiff Byrd that DesignerWare or Aspen Way intercepted. And that is what Section 2511 requires. Plaintiffs allege only that a photograph of Brian

14

Byrd was taken and that a screenshot of the static information on Plaintiffs' computer was taken.  In other words, they do not allege any contemporaneous communication that was captured "in flight" between Brian Byrd and another party. [6]   Because there was no contemporaneous electronic communication that Aaron's intercepted "in flight," Plaintiffs' claims under Section 2511 must fail. [7]  *See Steiger*, 318 F.3d at 1049-50.

---

[6]   Plaintiffs do not allege that Defendants used the keylogging feature of PC Rental Agent to monitor Plaintiffs' computer usage.  Instead, they allege that whatever was shown on the computer's screen, including whatever Brian Byrd typed, was captured as part of the screenshot.  (SAC ¶ 61.)  Again, even if this occurred (and Plaintiffs do not allege that it did) this would only be a static capture of what was on the computer's screen at the time the screenshot was allegedly taken.  No keystrokes would have been captured "in flight" contemporaneously with transmission as required to establish liability under Section 2511.  Moreover, the key strokes that PC Rental Agent allegedly captured from unnamed class members do not constitute electronic communications, which are defined as the "transfer of signs, signals, writing, images, sounds, data, or intelligence . . . by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate or foreign commerce . . . ." 18 U.S.C. §§ 2510(12) (emphasis added).  Here, the Byrds allege keystrokes are captured and then later emailed to the franchisee.  (SAC ¶ 38.)  This allegation acknowledges that the keystrokes are first captured solely on the computer and only later transmitted.  Keystrokes captured solely on the computer and only later transmitted by email to a third party does not affect interstate commerce, meaning the keystrokes are not electronic communications.  *Rene v. G.F Fishers, Inc.*, 817 F. Supp. 2d 1090, 1093-94 (S.D. Ind. 2011) (dismissing ECPA claim where key logger allegedly captured keystrokes and only later transmitted the captured key strokes by email).

[7]   If this Court finds no contemporaneous interception of an electronic communication under *Fraser*, 318 F.3d at 1048-49, then this Court should dismiss Plaintiffs' Section 2511 claim on that ground alone.  But, in the event that this Court finds the Plaintiffs have properly alleged a contemporaneous interception by Aaron's, Plaintiffs' Section 2511 claim still must fail because there has been no electronic communication.  An electronic communication is defined as the "transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate or foreign commerce . . . ." 18 U.S.C. §§ 2510(12).  Both the terms "transfer" and "transmit" show that any electronic communication must have been sent from one person to another or one place to another.  *Merriam-Webster's Collegiate Dictionary* 1328 & 1329 (11th ed. 2007) (defining transfer in relevant part as "to convey from one person, place or situation to another" or "to cause to pass

C.      Plaintiffs' state law claims fail under Wyoming law.

Plaintiffs bring state law claims for invasion of privacy, conspiracy, and aiding and abetting.  As an initial matter, under Pennsylvania's choice-of-law rule, these claims are governed by Wyoming law.  Under Wyoming law, all of these claims fail.  Wyoming does not recognize a tort claim for invasion of privacy, and Plaintiffs' state law conspiracy and aiding and abetting claims cannot survive without a viable underlying tort claim.

1.      *Wyoming law applies to Plaintiffs' state law claims.*

i.      Pennsylvania's choice-of-law rule.

Before addressing Plaintiffs' state law claims, this Court must determine what state's law governs those claims.  Here, the choice would appear to be between Wyoming and Pennsylvania law.  As a federal district court exercising supplemental jurisdiction over the state law claims, the court "must apply the choice of law rules of the forum state" – here, Pennsylvania.  *Press v. United Airlines, Inc.*, No. 10–cv–03584, 2012 WL

---

from one to another"); (defining transmit in relevant part as "to send or convey from one person or place to another").  But here Plaintiffs do not allege that Plaintiffs ever transferred or transmitted the alleged web camera photograph or screenshot.  (*See* SAC ¶¶ 61, 62.)  In other words, Plaintiffs have not alleged that Defendants intercepted a photograph or screenshot that was being sent from one person to another.  *Id.*  Although Plaintiffs attempt to allege that the Designerware and Aspen Way took a photograph of Brian Byrd and a screenshot of his computer and then used the internet to transmit it from Plaintiffs' computer to themselves, Defendants cannot be liable for "intercepting" a transmission they sent.  *See generally Larson v. Liberty Mut. Fire Ins. Co.*, Civil No. 11–00272 SOM/BMK, 2012 WL 93181, at *8 (D. Hawai'I Jan. 10, 2012) (finding no interception of an electronic communication because person "could not have intercepted his own transmission"); *Ideal Aerosmith, Inc.*, 2007 WL 4394447, at *4 (finding plaintiffs did not have standing to assert claims under the ECPA for communications "sent by third parties").  Moreover, Plaintiffs have not included facts to support their barebones allegation that interstate or foreign commerce was affected by the photograph.  18 U.S.C. §§ 2510(12).

1569786 (M.D. Pa. May 18, 2012) (citing *Sys. Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1136 (3d Cir.1977)).

Pennsylvania has generally abandoned the traditional *lex loci delicti* tort choice-of-law rule.  It now applies a "flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 219-220 (3d Cir. 2005).  This approach combines the approaches of the Restatement (Second) of Conflicts of Laws and a governmental interest analysis. *Id.* at 220.

Before applying this hybrid approach, though, a court must first determine whether the potentially relevant state's laws conflict at all. *Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006).  If no conflict exists, a court may cite to either state's law. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 229 (3d Cir. 2007).  If a conflict exists, "then the court should examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an "unprovided-for" situation." *Id.* at 230; *see also Berg Chilling Sys.*, 435 F.3d at 462 ("Once it is determined that an actual conflict exists, Pennsylvania follows a 'flexible rule,' that 'permits analysis of the policies and interests underlying the particular issue before the court.'").

A true conflict exists if "both jurisdictions' interests would be impaired by the application of the other's laws (*i.e.*, there is a true conflict)." *Hammersmith*, 480 F.3d at 230.  If a "true" conflict exists, a court should apply "the law of the state having the most significant contacts or relationships with the particular issue." *Budget Rent-A-Car System, Inc. v. Chappell*, 407 F.3d 166, 170 (3d Cir. 2005).  "A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of the

LEGAL02/33695046v1

other jurisdiction's law." *Id.*   When a false conflict exists, a court must apply the law of the only interested jurisdiction.  *Id.*  Finally, in an unprovided for situation – meaning "neither jurisdiction's interests would be impaired if its laws are not applied" – the *lex loci delicti* rule (the law of the place of the wrong) governs.  *Id.*

Where a true conflict exists, Pennsylvania courts have found that the "relevant contacts for a tort are enumerated in Restatement (Second) of Conflict of Laws § 145(2)(a)-(d), and include: '(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.'"  *Taylor v. Mooney Aircraft Corp.*, 265 F. App'x 87, 91 n.4 (3d Cir. 2008).  "Where the site of an accident is not fortuitous, 'the place of injury assumes much greater importance, and in some instances may be determinative.'"  *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1072 (3d Cir. 1996).

      ii.      <u>An actual conflict exists between Wyoming and Pennsylvania law.</u>

Wyoming does not recognize invasion of privacy torts, including intrusion upon seclusion.  *Lake v. Wal-Mart Stores, Inc.*, 582 N.W. 2d 231, 234 (Minn. 1998) (noting that Wyoming has never recognized invasion of privacy torts).  Pennsylvania does.  *Pro Golf Manufacturing, Inc. v. Tribune Review Newspaper*, 809 A.2d 243, 248 (Pa. 2002). This is an actual conflict.  *See Hammersmith*, 480 F.3d at 230 (stating that there is no actual conflict when the jurisdiction's laws are the same, but if the jurisdiction's laws differ, then the court must move to the next step of the choice-of-law analysis).

      iii.     <u>Wyoming has an interest in its law applying and that interest would be impaired if Pennsylvania law applied.</u>

Wyoming has a strong interest in deciding what torts to recognize under its laws. *LeJeune*, 85 F.3d at 1071 (3d Cir. 1996) (stating, in a case where a state did not recognize a particular tort, that a state "has an interest in prescribing the rules governing torts occurring nonfortuitously within its borders"); *see also Kibbee v. First Interstate Bank*, 242 P.3d 973, 992 (Wyo. 2010) ("This Court has always been very cautious and deliberate in deciding whether to adopt new causes of action."). Here, Wyoming's interest in regulating actionable torts within its borders would be impaired if this Court applies Pennsylvania law. Wyoming courts have not taken the step of recognizing a claim for invasion of privacy torts, including the claim Plaintiffs purport to assert here. If Plaintiffs brought their claims in a Wyoming court that applied Wyoming law to their disputes, they would have no claim. If this Court applies some other state's law to create a claim for these Wyoming Plaintiffs that does not exist under Wyoming law, then it would be impairing and impeding Wyoming's state interests (and encouraging forum shopping to boot). *See LeJeune*, 85 F.3d at 1071(finding, in a case where a state did not recognize a particular tort, that the state's interests would be impaired if another state's law was applied and noting that "[a] state could have a host of reasons for limiting liability, including encouraging economic activity in the state . . . , and lowering costs to consumers"); *see also In re Flonase Antitrust Litig.*, 815 F. Supp. 2d 867, 881-82 (E.D. Pa. 2011) (finding states that did not recognize a particular claim had an interest in their states law applying and that such interest would be impaired if the court applied another state's law that did recognize the claim at issue).

If Plaintiffs can show that Pennsylvania has an interest that would be impaired if its law was not applied, then a "true" conflict exists. As discussed below, if a true

conflict exists, Wyoming law applies.  If Pennsylvania does not have an interest that would be impaired, then a "false" conflict exists, and Wyoming law would still apply. *Chappell*, 407 F.3d at 170.

    iv.    Wyoming has the most significant relationship and contacts with the Plaintiffs' state law claims.

The contacts relating to Plaintiffs' state law claims weigh heavily in favor of Wyoming law.  Any injury the Byrds suffered occurred in Wyoming. (SAC ¶¶ 61 (alleging Brian Byrd was in Wyoming when Detective Mode was used); 63 (alleging Aspen Way Wyoming store manager confronted Brian Byrd with photograph in Wyoming); 73 (alleging law enforcement investigated the Casper, Wyoming Aspen Way store).)  The injury causing conduct – activation of Detective Mode by the Aspen Way Wyoming store – occurred in Wyoming.  (SAC ¶ 63.)  The Byrds are Wyoming citizens. (SAC ¶¶ 7, 8.)  The Byrds and Aaron's have no relationship, and the injury the relationship arose from – the relationship between the Byrds and Aspen Way – arose and exists in Wyoming.  (SAC  ¶ 57; *see also* Original Complaint at ¶ 34; Exhibit 1 (the lease agreement, which makes clear it is between Plaintiff Crystal Byrd and Aspen Way, not Aaron's).  The only contact potentially weighing in favor of some other state's law is that Aaron's is a Georgia corporation – and that contact certainly does not weigh in favor of applying Pennsylvania law. (SAC ¶ 10.)  In sum, where, as here, almost all of the contacts are in one state, and particularly where that state is the place where the injury occurred, that state's law – Wyoming – applies.[8]

---

[8] Civil conspiracy and aiding and abetting claims are derivative of the underlying tort claim.  To the extent these claims are recognized at all, they fail – under both Pennsylvania and Wyoming law – if the underlying tort claims fails.

        2.      *Under Wyoming law, Plaintiffs' state law invasion of privacy, conspiracy and aiding and abetting claims fail.*

Wyoming does not recognize invasion of privacy torts.  *Lake v. Wal-Mart Stores, Inc.*, 582 N.W. 2d 231, 234 (Minn. 1998); *see also* Tigran Palyan, *Common Law Privacy in a Not So Common World: Prospects for the Tort of Intrusion Upon Seclusion in Virtual Worlds*, 38 Sw. L. Rev. 167, 180 n.106 (2008) (stating that Wyoming does not recognize intrusion upon seclusion as a privacy tort).  That claim thus fails as a matter of law.

Wyoming, following the Tenth Circuit Court of Appeals, has acknowledged the concept of civil conspiracy.  *White v. Shane Edeburn Const.*, LLC, 285 P.3d 949, 957 (Wyo. 2012).  Liability for a civil conspiracy, however, depends on the performance of an underlying tortious act and is not independently actionable in Wyoming.  *White*, 285 P.3d at 958 ("[A] plaintiff cannot claim civil conspiracy or punitive damages without an underlying cause of action in tort.").  Thus, because Plaintiffs cannot state a claim for invasion of privacy, they also cannot state a claim for civil conspiracy.  *See White v. Shane Edeburn Const.*, LLC, 285 P.3d 949, 957 (Wyo. 2012) ("[A] plaintiff cannot claim civil conspiracy or punitive damages without an underlying cause of action in tort.") ; *Commonwealth of Penn. v. TAP Pharm. Prods., Inc.*, 36 A.3d 1197, 1289 (Pa. Commw. Ct. 2011) (stating that proof of a separate underlying tort is required as a predicate to a civil conspiracy claim); *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 116 F. Supp. 2d 610, 620 (W.D. Pa. 1999) (dismissing claim for civil conspiracy and aiding and abetting for failure to sufficiently plead an underlying tortious act).  Because Wyoming law applies to the invasion of privacy claim, it also necessarily applies to the derivative civil conspiracy and aiding and abetting claim.

No Wyoming court has recognized an independent cause of action for civil aiding and abetting claims, so that claim also fails as a matter of law. But even if Wyoming had recognized this claim, it is axiomatic that aiding and abetting could not exist where there has been no underlying tort. *See generally White*, 285 P.3d at 958 (finding a plaintiff cannot state a conspiracy claim without an underlying tort); *Black v. Wyoming*, 46 P.3d 298, 301 (Wyo. 2002) (noting that to prove a *criminal* aiding and abetting claim the government must prove that someone committed a crime). Thus, this claim also fails as a matter of law. For all of these reasons, Plaintiffs' state law claims for conspiracy and aiding and abetting must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons and on the authorities cited, Plaintiffs have failed to state any claim for relief against Aaron's. Their Complaint should therefore be dismissed in its entirety against Aaron's.

Dated:  October 15, 2012

<blockquote>
Respectfully submitted,

KNOX McLAUGHLIN GORNALL & SENNETT, P.C.

By: */s/ Richard A. Lanzillo*
    Richard A. Lanzillo, Esq.
    PA ID #: 53811
    Neal R. Devlin, Esq.
    PA ID#: 89223
    120 West Tenth Street
    Erie, PA  16501-1461
    Telephone: (814) 459-2800
    Fax: (814) 453-4530
    Email:  rlanzill@kmgslaw.com

    Attorneys for Defendant,
    Aaron's, Inc.
</blockquote>

Of Counsel:

Kristine  McAlister  Brown  (GA
480189)
(admitted pro hac vice)
William H. Jordan (GA 405112)
(admitted pro hac vice)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia  30309-3424
Telephone:  (404) 881-7000
Facsimile:  (404) 881-7777
E-mail:  kristy.brown@alston.com
          bill.jordan@alston.com