# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRYSTAL BYRD** and **BRIAN BYRD**, | ) | |
| Individually, and on Behalf of all | ) | |
| Similarly Situated Persons, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil No. 11-101 |
| | ) | |
| **AARON'S, INC., AH & H LEASING, LLC,** d/b/a | ) | |
| Aaron's Sales and Leasing, a franchisee of AARON'S, | ) | |
| INC., **AMG ENTERPRISES GROUP, LLC,** d/b/a | ) | |
| Aaron's Sales and Leasing, a franchisee of AARON'S, | ) | |
| INC., d/b/a Aaron's Sales and Leasing, a | ) | |
| franchisee of AARON'S, INC., **ARONA** | ) | |
| **CORPORATION**, d/b/a Aaron's Sales and Leasing, | ) | |
| a franchisee of AARON'S, INC., d/b/a Aaron's Sales | ) | |
| and Leasing, a franchisee of AARON'S, INC.; | ) | |
| **ASPEN WAY ENTERPRISES, INC.,** d/b/a | ) | |
| Aaron's Sales and Leasing, a franchisee of AARON'S, | ) | |
| INC.; **BEAR RENTAL PURCHASE, LTD.,** d/b/a | ) | |
| Aaron's Sales and Leasing, a franchisee of AARON'S, | ) | |
| INC.; **BOXER ENTERPRISE, INC.,** d/b/a Aaron's | ) | |
| Sales and Leasing, a franchisee of AARON'S, INC.; | ) | |
| **CIRCLE CITY RENTALS,** d/b/a Aaron's Sales and | ) | |
| Leasing, a franchisee of AARON'S, INC.; | ) | |
| **CMH LEASING PARTNERS, LLC,** d/b/a Aaron's | ) | |
| Sales and Leasing, a franchisee of AARON'S, INC.; | ) | |
| **CRAM LEASING, INC.,** d/b/a Aaron's Sales and | ) | |
| Leasing, a franchisee of AARON'S, INC.; | ) | |
| **DC SALES AND LEASE, INC.,** d/b/a Aaron's Sales | ) | |
| and Leasing, a franchisee of AARON'S, INC.; | ) | |
| **DIRIGO LEASING, INC.,** d/b/a Aaron's Sales and | ) | |
| Leasing, a franchisee of AARON'S, INC.; | ) | |
| **DPR ALASKA, LLC,** d/b/a Aaron's Sales and Leasing, | ) | |
| a franchisee of AARON'S, INC.; **DPR COLORADO,** | ) | |
| **LLC,** d/b/a Aaron's Sales and Leasing, a franchisee of | ) | |
| AARON'S, INC.; **DW3, LLC,** d/b/a Aaron's Sales and | ) | |
| Leasing, a franchisee of AARON'S, INC.; | ) | |
| **DWC VENTURES, LLC,** d/b/a Aaron's Sales and | ) | |
| Leasing, a franchisee of AARON'S, INC.; | ) | |
| **FAIRWAY LEASING, LLC,** d/b/a Aaron's Sales and | ) | |
| Leasing, a franchisee of AARON'S, INC.; **FIVE STAR** | ) | |
| **FINANCIALS, LLC**, d/b/a Aaron's Sales and Leasing, | ) | |

a franchisee of AARON'S, INC.; **FT GOT THREE,**
**LLC,** d/b/a Aaron's Sales and Leasing, a
franchisee of AARON'S, INC.; **GNS & ASSOCIATES,**
**INC.,** d/b/a Aaron's Sales and Leasing, a
franchisee of AARON'S, INC.; **GREAT AMERICAN**
**RENT-TO-OWN, INC.,** d/b/a Aaron's Sales and
Leasing, a franchisee of AARON'S, INC.;
**GREEN RIVER CORPORATION,** d/b/a Aaron's
Sales and Leasing, a franchisee of AARON'S, INC.;
**HANSON HOLDING COMPANY,** d/b/a Aaron's
Sales and Leasing, a franchisee of AARON'S, INC.;
**HONEY HARBOR INVESTMENTS, LLC,** d/b/a
Aaron's Sales and Leasing, a franchisee of AARON'S,
INC., **HOWARD RENTS, LLC,** d/b/a Aaron's Sales
and Leasing, a franchisee of AARON'S, INC.;
**HPH Investments, LLC**, d/b/a Aaron's Sales and
Leasing, a franchisee of AARON'S, INC.;
**J&L BEACH ENTERPRISES, INC.,** d/b/a Aaron's
Sales and Leasing, a franchisee of AARON'S, INC.;
**J.R. RENTS, INC.,** d/b/a Aaron's Sales and Leasing,
a franchisee of AARON'S, INC.;
**J.M. DARDEN AND COMPANY**, d/b/a Aaron's
Sales and Leasing, a franchisee of AARON'S, INC.;
**JENFOUR, LLC,** d/b/a Aaron's Sales and Leasing,
a franchisee of AARON'S, INC.;
**JENKINS RENTAL, LLC,** d/b/a Aaron's Sales and
Leasing, a franchisee of AARON'S, INC.;
**KFJ ENTERPRISES, LLC**, d/b/a Aaron's Sales and
Leasing, a franchisee of AARON'S, INC.;
**LIFESTYLE FURNITURE LEASING**, d/b/a
Aaron's Sales and Leasing, a franchisee of AARON'S,
INC.; **LTL INVESTMENTS, LLC**, d/b/a Aaron's
Sales and Leasing, a franchisee of AARON'S, INC.;
**MADISON CAPITAL INVESTMENTS, INC**., d/b/a
Aaron's Sales and Leasing, a franchisee of AARON'S,
INC.; **MKW INVESTMENTS, INC.,** d/b/a Aaron's
Sales and Leasing, a franchisee of AARON'S, INC.;
**NO THREE PUTTS ENTERPRISES, LLC,** d/b/a
Aaron's Sales and Leasing, a franchisee of AARON'S,
INC.; **NW FREEDOM CORP.,** d/b/a Aaron's Sales and
Leasing, a franchisee of AARON'S, INC.;
**POMONA LANE PARTNERS, LLC**, d/b/a Aaron's
Sales and Leasing, a franchisee of AARON'S, INC.;
**R & DOUBLE K, LLC,** d/b/a Aaron's Sales and
Leasing, a franchisee of AARON'S, INC.;
**REBCO INVESTMENTS, LLC,** d/b/a Aaron's

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Sales and Leasing, a franchisee of AARON'S, INC.;                                     )
**REX NEAL,** d/b/a Aaron's Sales and Leasing, a                                       )
franchisee of AARON'S, INC.; **ROYAL RENTS, INC.,**                                   )
d/b/a Aaron's Sales and Leasing, a franchisee of                                      )
AARON'S, INC.; **ROYAL ROCKET RETAIL, LLC,**                                          )
d/b/a Aaron's Sales and Leasing, a franchisee of                                      )
AARON'S, INC.; **SEI/Aaron's, INC.,** d/b/a Aaron's                                   )
Sales and Leasing, a franchisee of AARON'S, INC.;                                     )
**SHINING STAR**, d/b/a Aaron's Sales and Leasing,                                    )
a franchisee of AARON'S, INC.;                                                        )
**SHOWCASE HOME FURNISHINGS, INC**.; d/b/a                                            )
Aaron's Sales and Leasing, a franchisee of AARON'S,                                   )
INC.; **SULTAN FINANCIAL CORP**., d/b/a Aaron's                                       )
Sales and Leasing, a franchisee of AARON'S, INC.;                                     )
**TANGLEWOOD MANAGEMENT, LLC,** d/b/a                                                 )
Aaron's Sales and Leasing, a franchisee of AARON'S,                                   )
INC.; **TDS Foods, Inc.,** d/b/a Aaron's Sales and                                    )
Leasing, a franchisee of AARON'S, INC.; **TUR, INC**.,                                )
d/b/a Aaron's Sales and Leasing, a franchisee of                                      )
AARON'S, INC.; **WATERSHED DEVELOPMENT**                                              )
**CORPORATION**, d/b/a Aaron's Sales and Leasing, a                                   )
franchisee of AARON'S, INC.;**WGC, LLC**, d/b/a                                       )
Aaron's Sales and Leasing, a franchisee of AARON'S,                                   )
INC.; **JOHN DOES (1-45) AARON'S FRANCHISEES;**                                       )
and **DESIGNERWARE, LLC**,                                                            )
                                                                                     )
             Defendants.                                     )

---

## CORRECTED THIRD AMENDED CLASS ACTION COMPLAINT

---

Plaintiffs Crystal and Brian Byrd, individually and on behalf of all similarly situated persons, by and through their undersigned attorneys allege the following.

## <u>NATURE OF THE ACTION</u>

1.     Plaintiffs, Crystal and Brian Byrd, bring this action on their own behalf and as a Class Action for the benefit of a class consisting of all customers of Aaron's, Inc. ("Aaron's"), its franchisees d/b/a Aaron's Sales and Leasing ("Franchisees") and other John Doe franchisees (collectively hereafter referred to as the "Aaron's Defendants") who reside in the United States,

who have purchased, leased, rented or rented to own ("RTO"), Aaron's computers and people who used said computers whose electronic communications and/or images were intercepted, accessed, monitored and/or transmitted by a spying device or software without authorization or permission, wherever they may reside in the United States of America.

2.      Plaintiffs and the Class seek injunctive relief and damages caused by Defendants' unlawful invasion of privacy and interception of electronic communications and images in violation of the Federal Wiretap Act as amended by the Electronic Communications Privacy Act (hereinafter referred to as the "Wiretap Act" or the "Electronic Communications Privacy Act").

3.      Unbeknownst to Plaintiffs and the members of the Class, and without their authorization, Defendants have been spying on the activities of Plaintiffs and Class members through the use of the PC Rental Agent® device which was designed to, and in fact did, access, intercept, transmit, use and/or disclose electronic communications, and capture photographs of persons using computers in the privacy of their homes or other places in which they had reasonable expectations of privacy.  In addition, this spyware allowed Defendants to collect, transmit and store Class members' personal and financial information, including credit and debit card numbers, expiration dates, security codes, pin numbers, passwords, social security numbers, birth dates, identity of children and the children's personal and school records, tax returns, personal health information, employment records, bank account records, email addresses, login credentials, answers to security questions  and private communications with health care providers, therapists, attorneys and other confidants (collectively, "Personal Information").  This highly confidential information has been circulated repeatedly without encryption over the internet and stored on numerous computers around the country and possibly worldwide.

4.      Despite Defendants knowledge of which customers had their Personal Information compromised by PC Rental Agent's Detective Mode, Defendants has yet to provide any notice to these individuals that their Personal Information was breached and remains at risk.

## THE PARTIES, JURISDICTION AND VENUE

5.      Plaintiffs and the Class bring this action pursuant to §§ 2511 and 2520 of title 18 of the United States Code also known as the Electronic Communication Privacy Act ("ECPA") or Wiretap Act.

6.      This Court has original jurisdiction of Plaintiffs' and the Class' federal law claims pursuant to 28 U.S.C. §§ 1331 and 1337.

7.      This Court also has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the claims in the action within the original jurisdiction that they form part of the same case or controversy.

8.      Plaintiff Crystal Byrd is a resident of Casper, Natrona County, Wyoming, and was a customer of Aaron's and/or Aspen Way, by virtue of her rental and purchase of a laptop computer from the Aaron's store located at 4050 Plaza Drive, Casper, Wyoming.

9.      Plaintiff Brian Byrd is a resident of Casper, Natrona County, Wyoming, and was an authorized user of an Aaron's and or Aspen Way's computer.

10.     Defendant DesignerWare, LLC, is a Pennsylvania limited liability corporation, with a principal place of business in North East, Pennsylvania.  DesignerWare, LLC designed, manufactured, assembled, possessed, marketed, advertised and sold to the Aaron's Defendants the devices and/ or software (known as PC Rental Agent®) which permitted the illegal and wrongful activity further described herein.

11.     Defendant Aaron's is a Georgia corporation, with a principal place of business in Atlanta, Georgia, and has retail store locations through America, including Pennsylvania, and other states and territories of the United States.  During the time relevant to this Complaint, Aaron's Franchisees purchased, installed and/or used PC Rental Agent® and installed it on computers it offered for rent or sale without authorization from its customers.  As referenced through the facts alleged herein, Aaron's has purposely availed itself to the jurisdiction of the state of Pennsylvania by agreeing with its franchisees to open its portal on its internal intranet, which allowed and permitted its Aaron's stores throughout the country to utilize the DesignerWare server in Erie, Pennsylvania to invade the privacy of Plaintiffs and others, and to intercept their communications through Emails transmitted from Erie to the Aaron's stores, through the Aaron's portal and corporate server.

12.     Defendant AH & H Leasing, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a California business that has retail stores in California.

13.     Defendant AMG Enterprises Group, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a New Jersey business that has a retail store in New Jersey.

14.     Defendant Arona Corporation, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is an Iowa business that has retail stores in Iowa and other states.

15.     Defendant Aspen Way Enterprises, Inc., d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Montana business that has retail stores in Wyoming and other states.

16.     Defendant Bear Rental Purchase, Ltd., d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Texas business that has retail stores in Texas.

17.     Defendant Boxer Enterprise, Inc., d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Pennsylvania business that has retail stores in Pennsylvania.

18.     Defendant Circle City Rentals, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is an Indiana business that has retail stores in Indiana.

19.     Defendant CMH Leasing Partners, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Georgia business that has retail stores in Pennsylvania.

20.     Defendant Cram Leasing, Inc., d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Washington business that has a retail store in Washington.

21.     Defendant DC Sales and Lease, Inc., d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a South Dakota business that has retail stores in Colorado.

22.     Defendant Dirigo Leasing, Inc, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Maine business that has retail stores in Maine.

23.     Defendant DPR Alaska, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Texas business that has retail stores in Alaska.

24.     Defendant DPR Colorado, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Texas business that has retail stores in Colorado.

25.     Defendant DW3, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Kentucky business that has retail stores in Indiana.

26.     Defendant DWC Ventures, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is an Ohio business that has retail stores in.

27.     Defendant Fairway Leasing, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Kentucky business that has retail stores in Kentucky.

28.     Defendant Five Star Financials, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a California business that has retail stores in California.

29.     Defendant FT Got Three, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is an Alabama business that has a retail store in Alabama.

30.     Defendant GNS & Associates, Inc., d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is an Alabama business that has retail stores in Alabama and other states.

31.     Defendant Great American Rent-To-Own, Inc., d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Michigan business that has retail stores in Michigan.

32.     Defendant Green River Corporation, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Georgia business that has retail stores in Colorado.

33.     Defendant Hanson Holding Company, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is an Arkansas business that has retail stores in Nebraska and other states.

34.     Defendant Honey Harbor Investments, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a California business that has a retail store in California.

35.     Defendant Howard Rents, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Kentucky business that has retail stores in West Virginia.

36.     Defendant HPH Investments, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is an Alabama business that has retail stores in Alabama.

37.     Defendant J&L Beach Enterprises, Inc., d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a South Carolina business that has retail stores in South Carolina.

38.     Defendant J.R. Rents, Inc., d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Delaware business that has retail stores in Delaware.

39.     Defendant J.M. Darden and Company, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a California business that has retail stores in California.

40.     Defendant Jenfour, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is an Oregon business that has a retail store in Oregon.

41.     Defendant Jenkins Rental, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is an Oregon business that has a retail store in Oregon.

42.     Defendant KFJ Enterprises, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Pennsylvania business that has retail stores in Pennsylvania.

43.     Defendant Lifestyle Furniture Leasing, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Georgia business that has retail stores in Alabama.

**43A.    Defendant LTL Investments, LLC d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Montana business that has retail stores in Montana.**

44.     Defendant Madison Capital Investments, Inc, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Pennsylvania business that has a retail store in Pennsylvania.

45.     Defendant MKW Investments, Inc., d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Missouri business that has retail stores in Missouri.

46.     Defendant No Three Putts Enterprises, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Montana business that has a retail store in South Dakota.

47.     Defendant NW Freedom Corp., d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Washington business that has retail stores in Oregon and several other states.

48.     Defendant Pomona Lane Partners, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a New York business that has a retail store in Pennsylvania.

49.     Defendant R & Double K, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Connecticut business that has a retail store in Connecticut.

50.     Defendant REBCO Investments, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a New Jersey business that has retail stores in Pennsylvania.

51.     Defendant Rex Neal, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Georgia business that has a retail store in Georgia.

52.     Defendant Royal Rents, Inc., d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Georgia business that has retail stores in Georgia and Alabama.

53.     Defendant Royal Rocket Retail, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Missouri business that has a retail store in Missouri.

54.     Defendant SEI/Aaron's, Inc., d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Georgia business that has retail stores in numerous states.

55.     Defendant Shining Star, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a North Carolina business that has retail stores in Ohio and West Virginia.

56.     Defendant Showcase Home Furnishings, Inc., d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Texas business that has retail stores in Texas.

57.     Defendant Sultan Financial Corp., d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a California business that has retail stores in California.

58.     Defendant Tanglewood Management, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Kentucky business that has retail stores in Kentucky.

59.     Defendant TDS Foods, Inc., d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Pennsylvania business that has a retail store in Pennsylvania.

60.     Defendant TUR, Inc., d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Colorado business that has retail stores in Colorado and other states.

61.     Defendant Watershed Development Corporation, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Illinois business that has retail stores in Illinois and other states.

62.     Defendant WGC, LLC, d/b/a Aaron's Sales and Leasing, is a franchisee of Aaron's, Inc., and is a Georgia business that has retail stores in Georgia and Maryland.

63.     Pursuant to the franchise agreement between the Franchisees and Aaron's, Aaron's retained and maintained the power, control and ability to revoke and terminate any Franchise for any reason it unilaterally deemed appropriate or necessary.

64.     At all times relevant to the facts alleged herein, Aaron's Inc. retained the control to prevent the Franchisees' use of Aaron's corporate server and a portal Aaron's intentionally opened within Aaron's internal intranet, as well as Email transmitted through Aaron's corporate server, which allowed the Franchisees to intercept electronic communications and images, as alleged herein.

65.     Instead, Aaron's chose to permit such activity despite specific knowledge that its Franchise stores were utilizing the integral portal and Aaron's corporate server to secretly gather photographs of Aaron's customers in their home as well as their computer keystrokes and screenshots, all without the permission of those customers.

66.     During the time relevant to this Complaint, the Franchisees entered into agreements with DesignerWare, and pursuant to that agreement, purchased, installed and used PC Rental Agent® from DesignerWare and installed it on computers offered for rent or sale without authorization from its customers.  Pursuant to said agreements with DesignerWare, and through the use of PC Rental Agent®, and technical support offered by DesignerWare in Pennsylvania, the Franchisees purposely availed themselves to the jurisdiction of the state of Pennsylvania.

67.     The John Does Defendants are also Aaron's Franchisees who have entered into Agreements with DesignerWare, and who have, pursuant to those agreements, purchased PC Rental Agent® and installed it on their computers for rent or purchase without authorization from their customers.  Through the use of PC Rental Agent® and the technical support offered by DesignerWare in Pennsylvania, the John Does purposely availed themselves to the jurisdiction of the state of Pennsylvania.

68.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c) as DesignerWare, LLC, the designer and distributor of PC Rental Agent® device and/or software, has its principal place of business is located in North East, Pennsylvania.  Moreover, in this district, DesignerWare receives, manages, stores, intercepts, discloses and transmits images secretly taken of Aaron's customers in their home or other places where customers had expectations of privacy, via computer webcams, as well as keystrokes, screen shots, and electronic communications intercepted by PC Rental Agent® and/or Software for the Aaron's Defendants.

69.     Venue is proper in this district because the Aaron's Defendants received, managed, accessed, intercepted and transmitted communications collected in this district,

including the images secretly taken of customers via computer webcams, through the use of the PC Rental Agent® device and/or software intentionally installed on their rental computers throughout the country (including the computer rented, owned and used by class plaintiffs Crystal and Brian Byrd).

70.     In connection with the acts and conduct complained of below, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the internet, or made such use possible.

## CLASS ACTION ALLEGATIONS

71.     Plaintiffs Crystal and Brian Byrd bring this action on behalf of themselves and a Class of all other persons similarly situated pursuant to Fed. R. Civ. P. 23 as defined as follows:

> All customers of the Aaron's Defendants who reside in the United States, who have purchased, leased, rented or rented to own, Aaron's computers and people who used said computers whose Personal Information, electronic communications and/or images were intercepted, accessed, monitored and/or transmitted by Defendants via PC Rental Agent® or other devices or software without the customer's authorization.

72.     Specifically excluded from the Class are the Defendants themselves, any subsidiary of any of the Defendants, any family members of the Defendants who are such customers, all employees and directors of Defendants or any subsidiary, and their legal representatives.

73.     The Class is so numerous that joinder of all members is impracticable.  The customers of the Aaron's Defendants who have similarly purchased, leased, rented or rented to own ("RTO") such computers are estimated to be greater than eight hundred (800) individuals and entities.

74.     Plaintiffs' claims are typical of the Class, as plaintiffs and all other Class members were injured in exactly the same way – by the unauthorized collection, interception and/or transmission of their Personal Information and electronic communications and images, all through PC Rental Agent® installed on their Aaron's RTO computer.

75.     Plaintiffs will fairly and adequately represent the interests of the Class and have retained counsel competent and experienced in Class Action litigation.

76.     Plaintiffs have no interests that are contrary to or in conflict with those of the Class.

77.     A Class Action is superior to other available methods for the fair and efficient adjudication of this controversy under the acts described below.  Given the nature of these claims, the expense and burden of individual litigation make it virtually impossible for the Class members individually to seek redress for the unlawful conduct alleged.

78.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a Class Action.

79.     Common questions of law and fact exist as to all members of the Class and predominate over any questions effecting solely individual members of the Class.  Among the questions of law and fact, common to the Class:

a.     Whether Defendants' acts as alleged herein violated the ECPA.

b.     Whether Defendants' acts as alleged herein constituted invasions of Plaintiffs' privacy.

c.     Whether Defendants participated in and pursued the concerted action or common course of conduct complained of; and

       d.      Whether Plaintiffs and members of the Class are entitled to compensatory damages, as well as statutory and punitive damages pursuant to the ECPA.

80.     Plaintiffs bring this action under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to all members of the Class, thereby making final relief concerning the Class as a whole appropriate.  In the absence of appropriate injunctive relief requiring Defendants to notify all Class Members that their Personal Information has been breached, Class Members will suffer irreparable harm.  Defendants' uniform conduct towards Plaintiffs and the other members of the Class makes certification under Rules 23(b)(2) appropriate.

81.     Plaintiffs also bring this action under Rule 23(b)(3) because common questions of law and fact identified herein predominate over questions of law and fact affecting individual members of the Class.  Indeed, the predominant issues in this class are whether Defendants have violated the law by the unauthorized, inappropriate and undisclosed invasion of privacy, and by their remote interception and transmission of communications and information secretly obtained by computers rented, leased and/or sold to said Class members, and in the intentional unauthorized interception and use of electronic and computer communications and information, including "screen shots," photographs and information (including keystrokes) relating to internet usage.  Certification under Rule 23(b)(3) is appropriate because:

       a.      by virtue of the secret nature of the spying device and software described in this complaint, individual class members may not be aware that they have been wronged and are thus unable to prosecute individual claims or take appropriate steps to protect their Personal Information;

b.      concentration of the litigation concerning this matter in this Court is desirable;

c.      the claims of the representative Plaintiffs are typical of the claims of the members of the purported class;

d.      a failure of justice will result from the absence of a class action; and

e.      the difficulties likely to be encountered in the management of this class action are not great.

## SUBSTANTIVE ALLEGATIONS[1]

### FACTS CONCERNING FRANCHISEES' USE OF PC RENTAL AGENT®

82.     Since 2007, franchise field consultants employed by Aaron's have brought the PC Rental Agent® product to the attention of the Franchisee principals, and suggested they explore using it.

83.     Since at least June of 2009, the Franchisees have entered into agreements with DesignerWare, pursuant to which the Franchisees would purchase, and DesignerWare would provide, a spying device and software product called PC Rental Agent®, as well as technical support, and use of the DesignerWare server in Northeast, Pennsylvania, that would permit Defendants to conduct the spying activity alleged herein.

84.     Since at least June of 2009, the Franchisees have secretly installed this spying device and/or software on Aaron's RTO computers.  As designed, PC Rental Agent®, would permit the Aaron's Defendants to remotely and surreptitiously access, monitor, intercept, and/or

---

[1] A substantial portion of what is alleged herein was discovered through a document subpoena and a Rule 30(b)(6) deposition, permitted by Aaron's Inc. through a confidentiality agreement between Plaintiffs and Aaron's, Inc., which prohibits disclosure of documents containing the information alleged, and direct quotation from such materials or the deposition testimony.  In the event this matter is not resolved at mediation, Plaintiffs will seek this information through conventional discovery or through such other means as agreed upon or ordered by the Court, so it may be disclosed to the Court.  This footnote has been expressly disclosed to Aaron's Inc., prior to the filing of this amended pleading, and Aaron's Inc. approves its substance.

transmit Personal Information as well as electronic communications and images, including, but not limited to, images of monitors or screens ("screen shots"), keystrokes, as well as images captured by the computers' respective cameras ("webcams") of whatever person(s) was sitting in front of the computer, and whatever activity was occurring at the time the webcam was capturing the photographs.

85.    PC Rental Agent® makes possible such illegal, surreptitious, and unauthorized remote electronic surveillance, intrusion on Plaintiffs' seclusion, and the interception of protected communications.

86.    PC Rental Agent® is manufactured, assembled, advertised and sold to the Franchisees by DesignerWare for the purpose of allowing the Aaron's Defendants to remotely spy on Plaintiffs, as well as track, access, monitor, intercept and/or transmit electronic communications on Aaron's RTO computers.

87.    PC Rental Agent® is a device and/or software that is manufactured, advertised to be and is, in fact, invisible or generally undetectable to customers and to other end users of Aaron's RTO computers.

88.    Once PC Rental Agent® is installed on the RTO computers, it permits the installer – in this case the Franchisees – to remotely "install" or "build" a "Detective Mode" on the RTO computer over the internet and through the PC Rental Agent® and/or DesignerWare website.

89.    After the Detective Mode has been remotely installed on the RTO computers, the installer is able to choose various levels of surveillance upon the RTO computer and the computer users.   These various levels of surveillance permit the installer to secretly take photographs with the RTO computers' webcams, and capture keystrokes, and screen shots.   The

surveillance is sent from DesignerWare to the installer through Email transmissions, which have attachments that show those keystrokes, screenshots, and webcam images.

90.     DesignerWare's owner, Tim Kelly described the PC Renal agent this way in an August 26, 2010 email:

> The way the Detective [Detective Mode] works is like many spyware/malware programs.  The Agent [PC Rental Agent] runs outside the user session so it is not detectable by antivirus programs, etc.  However when you turn on the Detective, the Agent takes an executable and inject[s] it into the user session and hooks the screen, keyboard, and mouse so it can 'Spy' on the user and gather information.  A similar program could be launched to steal credit cards or someone's information.

91.     As noted by the Federal Trade Commission's ongoing investigation into this matter, Detective Mode gathers data about whoever is using the computer, whether it is the computer's renter or another individual.  At one level of activation, Detective Mode will gather data and transmit it to DesignerWare every two minutes that the computer is connected to the Internet for a period of 60 minutes.  Designerware then forwards the data via e-mail to the licensee who activated the program.  If the rent-to-own store wants more information, it can cause Detective Mode to record data every two minutes until prompted to stop doing so. DesignerWare's servers collect this information and transmit it to the franchisee for however long the franchisee leaves the program turned on.  In numerous instances, data gathered by Detective mode has revealed private, confidential, and personal details about the computer user. For example, keystroke logs have displayed usernames and passwords for access to email accounts, social media websites and financial institutions.  Screenshots have captured additional confidential and personal information, including medical records, private emails to doctors, employment applications containing Social Security numbers, bank and credit card statements, and discussions of defense strategies in a pending lawsuit.  When activated, Detective Mode can

also cause a computer's webcam to surreptitiously photograph not only the computer user, but also anyone else within view of the camera.  In numerous instances, Detective Mode webcam activations have taken pictures of children, individuals not fully clothed, and users engaged in sexual activities.

92.     Aaron's Inc., requires its franchise stores to receive Aaron's and Franchise-business Email through Aaron's official "aarons.com" or "aaronrents.com" email accounts, which are transmitted through the Aaron's, Inc. corporate server and/or intranet.

93.     Through Aaron's franchise agreements with its Franchisees ("franchise agreements") Aaron's prohibits its Franchisees from using any website in connection with franchised business without the express consent of Aaron's.  The agreements further provide that such consent may be arbitrarily withheld by Aaron's.

94.     Pursuant to the franchise agreements, once the express consent to use a website is granted, Aaron's, Inc. retains the right to monitor the use and content of any such website accessed or used in connection with the all of its Franchisees' business; and, upon Aaron's request, the Franchisees must provide Aaron's Inc. with access and any other information related to any website as is requested by, and in the sole discretion of, Aaron's.

95.     Before consent was obtained from Aaron's, concerning its Franchisees' access or use of the DesignerWare's or PC Rental Agent® website(s), a firewall within the Aaron's corporate server prevented the Franchisees from being able to access said website(s), or install the Detective Mode on the RTO computers held by Plaintiffs and other Aaron's customers; and thus, at that time the use of PC Rental Agent® by the Franchisees was not possible.

96.     By at the latest, June 15, 2009, at the request of Franchisee, HPH Investments, LLC, store F313, Aaron's Inc. expressly consented to the use of the DesignerWare's and/or PC

Rental Agent® website(s), by opening a portal on the Aaron's intranet, allowing the Franchisee to access the DesignerWare website and use the PC Rental Agent® to install the Detective Mode on RTO computers, and thereafter illegally spy on Aaron's customers, all through the Aaron's corporate server.

97. After June 15, 2009, Aaron's consented to its Franchisees' use of and access to the DesignerWare and/or PC Rental Agent® website(s) on multiple occasions for various Franchisees on multiple occasions including the following dates: July 31, 2009, February 2, 2010, May 10, 2010, and November 2, 2010.

98. Eventually, Aaron's consented to all of its Franchisees' use of the DesignerWare and/or PC Rental Agent® website(s), and it opened the portal for all such businesses, allowing Franchise stores throughout the country, which were selling and leasing Aaron's computers, to build the Detective Mode and use the PC Rental Agent® through the Aaron's corporate server, and thereafter to secretly spy on their customers and access their customers' computers, from which they captured keystrokes, screen shots, and photographs taken with the computers' respective webcams, also through the Aaron's corporate server.

99. The merchandising department for Aaron's publishes a weekly newsletter called The Source, within which they have offered technical support information to their Franchisees concerning the use of PC Rental Agent® and the resolution of conflicts existing between it and other antivirus software.

100. Between June 15, 2009 and December 15, 2011, Aaron's never denied any of its Franchisees' requests for consent to access or use the DesignerWare or PC Rental Agent® website(s).

101.    On September 2, 2010, Aaron's Vice President Scott Harvey, and other top executive officers within Aaron's were advised through a series of Emails from other corporate employees that the PC Rental Agent®, which its Franchisees were using, was very intrusive, key-logging all the customer's key strokes, transmitting images of the customers' screenshots, and transmitting photographs of computer users taken through the customers' webcams.  The series of Emails included an example of the spying capabilities.

102.    By September 2, 2010 – at the latest – Aaron's knew that by consenting to its Franchisees' access to and use of the DesignerWare or PC Rental Agent® website(s), and requiring that such use of and access to such website(s) be through its corporate intranet and corporate server as well as that the images and data gathered in such spying activity be transmitted to the Franchisee stores through Aaron's corporate server, Aaron's was intimately and integrally involved with its Franchisees' acts of building Detective Mode and spying upon Aaron's customers.

103.    Despite this knowledge, Aaron's did not revoke its consent for its Franchisees' use of or access to the DesignerWare or PC Rental Agent® website(s) for more than 15 months, and instead, chose to continue permitting such access and use of the websites and the spying activity, all through its corporate intranet and server.

104.    Aaron's did not tell its Franchisees to stop using the PC Rental Agent® to spy on customers, and in fact, did not see anything wrong with its Franchisees' activities.

105.    After learning of the true capabilities of PC Rental Agent®, in the fall of 2010, Aaron's Inc. conducted an analysis of the benefits of the PC Rental Agent® by comparing its Franchisees' pre and post installation profits, to determine the PC Rental Agent®'s effectiveness, and to decide if it might be something its corporate stores should have (the "Beta study").

106.    Both during and after the Beta study, Aaron's engaged in discussions with another vendor of similar spying software to determine capabilities and cost for Aaron's corporate.

107.    Because it was an integral link in the process of allowing its Franchisees to build the Detective Mode and then gather the illegally obtained information through the Aaron's corporate server, Aaron's retained electronic duplicates of every Email containing all the illegally intercepted communications and images.

108.    It has been the practice and policy of the Aaron's Defendants to conceal from their customers – and not expressly reveal nor obtain such customers' consent or authority to permit – their ability to remotely intrude upon the seclusion of Plaintiffs and Aaron's customers in their homes or other private areas, or to remotely access, intercept and monitor customers' private, personal electronic communications, information, screen shots, keystrokes or images captured on webcams and to further disclose to consumers exactly the kinds of private information and images that can be and were routinely collected, transmitted and stored.

109.    The Aaron's Defendants' sales, rental or lease agreements neither seek permission from, nor disclose to RTO customers the presence of PC Rental Agent® nor its ability to monitor and intercept Personal Information, electronic communications, photographs taken with the webcam, and other data from Aaron's RTO computers, wherever those computers may be.

110.    After the initiation of this suit, in May 2011, Aaron's website stated "Aaron's cares about our customers – this is the value we've built our business on for more than 55 years. Aaron's customers can be assured that we're taking this allegation very seriously.  We are conducting a thorough investigation and diligently reach out to our customers to address any of their concerns."



111.    Upon information and belief Aaron's has not contacted any customer nor instructed its Franchisees to contact any customer who had Detective Mode run on their computers ("Detective Mode Customers") to notify them that their Personal Information or the Personal Information of anyone who came into contact with their computer was compromised.

112.    The identity of all the Detective Mode Customers is known only by Defendants.

113.    Despite this specific promise by Aaron's, to our knowledge no Detective Mode Customers have received any notice and they continue to suffer harm and potential harm because their personal private information and webcam images have been downloaded by Aaron's franchise employees and may have been possibly transmitted to other third parties thereby placing them at an increased risk of fraud and identity theft and causing direct financial expenses associated with credit monitoring, replacement of compromised credit, debit and bank card numbers, and other measures needed to protect against fraud arising from Defendants' conduct.

114.    Plaintiffs' counsel have recently suggested to Aaron's counsel that notice be sent to the Detective Mode Customers and Aaron's counsel has refused.

115.     Plaintiffs' counsel have recently requested that Aaron's consent to a mandatory injunction consisting of the following:

1.   A brief description of what happened, including the date(s) Detective Mode was activated on their computer;

2.   A description of the types of information that was captured by Detective Mode (such as whether credit card numbers, Social Security number, date of birth, home address, banking records, employment records, emails, instant messages, pictures, webcam images, etc., were involved);

3.   Any steps the individual should take to protect themselves from potential harm resulting from the breach;

4.   Contact procedures for individuals to ask questions or learn additional information, which includes a toll-free telephone number, an e-mail address, Web site, or postal address;

5.   Recommendations that the individual contact his or her credit card companies to obtain new credit cards, contact information for the various credit bureaus, and contact information for credit monitoring services (if credit card information was breached);

116.     Aaron's has refused this request.

117.     Because of the actions and inaction of Aaron's, irreparable harm as set forth above is continuing to be suffered by Detective Mode Customers and will continue until such time as the Detective Mode Customers are provided with notice that their Personal Information was compromised.

**FACTS REGARDING THE BYRDS**

118.     On July 30, 2010, Plaintiff Crystal Byrd entered into an Aaron's RTO lease agreement for a "Dell Inspiron 14" laptop computer.  The Byrd lease agreement provided that Crystal Byrd would pay three separate installments by November 15, 2010 for the purchase of said computer.

119.    The Byrd lease agreement did not disclose that the Aaron's Defendants had installed a device which could monitor the Byrds in their home, and intercept their private communications.

120.    The Byrd's timely paid off the lease "in full," according to the lease agreement terms, by October 1, 2010.

121.    Beginning on November 16, 2010 at 10:51 pm, Aspen Way initiated Detective Mode on the Byrd's computer and kept Detective Mode running through December 20, 2010.

122.    On December 20, 2010, at 3:00 pm E.S.T., Brian Byrd was using the aforementioned computer, playing poker on the internet, when – unbeknownst to him and without his permission or authority – a photograph of him and a screenshot of his computer screen, showing the internet page with which he was communicating, and from which he was receiving communications, as well as the keystrokes he was entering into the computer while communicating with the online internet site, were captured and sent from his computer to the DesignerWare server in Pennsylvania, which, in turn, transmitted said intercepted information via Email to Aspen Way's store in Casper, Wyoming, through the Aaron's corporate server in Atlanta, Georgia.

123.    On approximately 347 occasions on 11 different days between November 16, 2010 and December 20, 2010, the Byrds' computer was secretly accessed by Aspen Way, resulting in their images being taken with the webcam and their communications as well as personal records, login credentials and passwords being stolen, all via PC Rental Agent® and the DesignerWare and Aaron's Inc. corporate server.

124.    On or about the 22nd day of December, 2010, Christopher Mendoza, the store manager for the Aaron's Aspen Way store in Casper, Wyoming, went to the home of class

representatives Brian and Crystal Byrd.  At that time, Mendoza incorrectly claimed that the Byrds were in default on their lease agreement and demanded that the Byrd computer be returned to Aaron's.  To further support his attempts to collect the Byrd computer, Mendoza informed co-plaintiff Brian Byrd that he had obtained a photograph of Brian Byrd while using the internet on his computer – and Mendoza showed Byrd the photograph and screenshot which had been taken and intercepted remotely using the PC Rental Agent® as referenced in the preceding paragraph.  When Brian Byrd demanded that Mendoza explain how Mendoza had obtained an unauthorized photograph, Mendoza responded that he was not supposed to disclose that Aaron's had the photograph.

125.    Byrd told Mendoza that, contrary to Mendoza's claim, the computer had been paid "in full" and advised that Mendoza needed to leave, at which point Mendoza left the Byrd residence.

126.    Following his encounter with Mendoza, co-plaintiff Brian Byrd contacted law enforcement to report the incident.  Law enforcement responded to the Byrd residence and commenced an investigation.

127.    The law enforcement investigation determined that on or about the 22nd of December, Mendoza was directed by his supervisor, Sian Baker, to retrieve Crystal Byrd's computer because the Byrds were allegedly (but incorrectly) in default of their RTO lease agreement.

128.    Upon information and belief, Baker provided Mendoza the photograph of Brian Byrd taken by the PC Rental Agent® device; the photograph that Mendoza later showed to Brian and Crystal Byrd, and directed Mendoza to repossess the computer.

129.     The law enforcement investigation further determined that one or more of the Aaron's Defendants routinely installed the PC Rental Agent® device and/or software on all Aaron's RTO computers, and that this device and/or software permitted Defendants to remotely gather, intercept, transmit and store private electronic images, information and communications from RTO customers, including but not limited to photographs, screen shots and keystrokes.

130.     The law enforcement investigation further determined that the Aaron's Defendants purchased the spying device called PC Rental Agent® from co-defendant DesignerWare.

131.     Ashton Kelly, an agent or employee of DesignerWare, was interviewed by law enforcement and he confirmed that the PC Rental Agent® permitted (and continued to permit) the Aaron's Defendants to gather, transmit and store screen shot images, keystrokes and photographs taken via the webcam without the customer's knowledge or consent

132.     Ashton Kelly further advised law enforcement that the photographs are taken remotely via the webcam through "prompting," which occurs when the customer receives a "pop-up" box on his computer screen which states that the customer's windows system registry, or part of the windows software, needs to be registered.

133.     The "pop-up" box described in the previous paragraph further requires the Aaron's RTO customer (or any authorized user) to enter his or her name, address and telephone number, after which they are given access to the computer.  At the time the user enters the information, the PC Rental Agent® causes the webcam to take, transmit and store an unauthorized photograph and other data of the user entering the information.  Neither the "pop-up" box nor any other statement from any Defendant (including the Rental Agreement) notified

or advised the Byrds (or any end user) that private electronic communications and images were being intercepted, transmitted and/or monitored.

134.    While law enforcement was conducting its investigation at the Casper Aaron's store, a law enforcement officer observed an unauthorized photograph of another Aaron's customer, and was told that Aaron's stores regularly received Emails from DesignerWare with unauthorized photographs and other communications taken of customers and authorized users through the use of the PC Rental Agent®.

135.    Upon information and belief, Detective Mode is no longer running on the Byrds' computer.  However, the electronic communications and Personal Information that Defendants were able to intercept has been repeatedly transmitted via unencrypted email and forwarded to unknown persons and locations.

136.    Defendants have yet to notify the Byrds or any other member of the Class and identify the extent and content of Personal Information that has been compromised, despite Defendants' knowledge of such.  The result of such conduct prevents Plaintiffs and the Class Members from taking all necessary steps to mitigate any damages that may result from Defendants' illegal conduct, including contacting credit bureaus and changing passwords, pin numbers, account numbers and other at risk Personal Information.

**EXTENT OF FRANCHISEES' USE OF PC RENTAL AGENT®**

137.    Aaron's express consent to permit its Franchisees to access and use the DesignerWare and PC Rental Agent® website(s) through the Aaron's Inc. corporate intranet and server has resulted in several hundred thousands of occasions when its Franchisees' illegally spied upon its customers and intercepted their personal and private information and electronic communications.

138.    Aspen Way alone spied on its customers and intercepted their personal and private information and electronic communications on more than fifty thousand (50,000) occasions.

139.    The images gathered by Franchisees' secret spying activity, via use of PC Rental Agent® and the DesignerWare and Aaron's corporate servers, included photographs taken through the webcam of individuals in various private and compromising positions.

140.    The electronic information which defendants intercepted from members of the class included personal and/or private information.

141.    Defendants' do not filter sensitive or private data when they illegally intercept such private information from the members of the class, regardless of whether that information comes from inside the privacy of the class members' homes or elsewhere.

142.    Between June of 2009 and January of 2012, more than 800 Franchisees' customers have had their images, keystrokes, screen shots, private and personal information and communications captured from their computers and transmitted from their computers to Franchisee stores and their employees, without their knowledge.

143.    Of those customers referenced in the preceding paragraph, most of them have had their privacy invaded and their seclusion intruded upon by Defendants by the surreptitious use of the webcam on their computers, and the resulting photographs captured from the webcams on their computers, whether those were taken in their homes, or in other places in which Plaintiffs had a reasonable expectation of privacy.

144.    In December of 2011, Aaron's, Inc. expressly revoked its consent for its Franchisees to access or use DesignerWare or PC Rental Agent® website(s), and began taking steps to close the portal on its intranet so its Franchisees could no longer access DesignerWare or

utilize the PC Rental Agent® spying device and software through the Aaron's corporate server and intranet.

145.    The last known transmission of illegally intercepted images, keystrokes, screen shots and other protected and private information, which passed through the Aaron's corporate server, occurred in January of 2012.

146.    At all times relevant to this Complaint, Aaron's retained actual and sufficient authority and control over the Franchisees who utilized PC Rental Agent® to spy on their customers, so as to be vicariously liable for the acts of the Franchisee.  Aaron's, Inc. retained such authority and control through their various agreements with their Franchisees, including but not limited to, requiring the Franchisees to comply with a binding operations manual, the contents of which were promulgated by Aaron's and over which they maintained absolute control; and, preserving the unilateral ability to immediately terminate and revoke any Franchise for failing to comply with the binding operations manual.

147.    The agreements between Aaron's and its Franchisees gave Aaron's the following exclusive, and unilateral authority and control over the Franchisees' businesses:

     a.    hours of operation;

     b.    inventory;

     c.    store appearance;

     d.    equipment requirements, including mandatory purchase of equipment packages;

     e.    approval and consent concerning any proposed leased premises;

     f.    uniform accounting and reporting practices and procedures;

     g.    determination of, and restriction concerning, product lines;

     h.    determination of, and restriction concerning, sources of supply;

i.      use of internet through Aaron's intranet and requiring Aaron's consent concerning any website the Franchisees wished to access for business purposes

j.      mandating transmission of Franchisee business Email through Aaron's corporate server.

## DEFENDANTS' FAILURE TO NOTIFY CLASS MEMBERS
## THAT THEIR PERSONAL INFORMATION WAS COMPROMISED HARMED
## PLAINTIFFS AND THE OTHER CLASS MEMBERS

148.    Personal Information is a valuable asset.  A "cyber black-market" exists in which criminals openly post stolen credit card numbers, Social Security numbers, and other personally identifiable information on a number of Internet websites. As one industry report recognized, this "credit card black-market operates very much in the open" and a number of websites exist that offer stolen credit card numbers and associated credentials. The report went on to state:

> It is clear from the current state of the credit card black-market that cyber criminals can operate much too easily on the Internet. They are not afraid to put out their email addresses, in some cases phone numbers and other credentials in their advertisements. It seems that the black market for cyber criminals is not underground at all. In fact, it's very "in your face."

http://www.stopthehacker.com/2010/03/03/the-underground-credit-card-blackmarket/ (last accessed on December 10, 2012).

149.    Furthermore, information about Plaintiffs and the other Class Members may also be used to harass or stalk them.  Defendants captured what could be considered extremely embarrassing and compromising information about Class Members which could easily be used as a tool for blackmail and/or extortion.  And, the threat of "spear phishing"—where details of a person's Usage Data can be used to tailor a "phishing" message that looks authentic, but is actually a ruse to get the consumer to divulge account information—is real.

150.     Defendants alone know which computers had Detective Mode installed and activated as well as which customers had their Personal Information compromised by the installation and activation of Detective Mode.

151.     Despite this knowledge, Defendants have done nothing to notify the harmed individuals.

152.     As a result of Defendants' conduct, franchisee employees and other unknown individuals continue to possess and potentially spread the Personal Information of Plaintiffs and the other Class members.  Immediate and detailed notice of the breach to the effected Class Members is essential to rectify past harm and to rectify ongoing and future harm.

153.     Defendants' failure to provide notice has further exacerbated the damages sustained by Plaintiffs and the other Class members arising from Defendants' conduct.

## CAUSES OF ACTION

### COUNT I
**(Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511)**

154.     Plaintiffs repeat and re-allege each and every allegation above as if fully set forth herein.

155.     Defendants have intentionally intercepted and/or procured to be intercepted Plaintiffs' and Class members' electronic communications without Plaintiffs' or the Class members' knowledge, authorization, or consent in violation of 18 U.S.C. § 2511.

156.     Defendants have also intentionally used and/or procured to be used a devise to intercept the above-referenced electronic communications.

157.     An "electronic communication" is defined in § 2510(12) as any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in

part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce.

158.    Defendants violated 18 U.S.C. § 2511(1)(a) by intentionally, collecting, gathering intercepting, endeavoring to intercept, transmit, procure, store any other person to intercept or endeavor to intercept Plaintiffs' and Class members' electronic communications.

159.    Defendants violated 18 U.S.C. § 2511(1)(c) by intentionally collecting, transmitting, storing and disclosing, or endeavoring to disclose, to any other person, the contents of Plaintiffs and Class members' electronic communications, knowing or having reason to know that the information was obtained through the interception of Plaintiffs' and class members electronic communications.

160.    Defendants violated 18 U.S.C. § 2511(1)(d) by intentionally using or endeavoring to use, the contents of Plaintiffs' and class members electronic communications, knowing or having reason to know that the information was obtained through the interception of Plaintiffs' electronic communications.

161.    Neither Plaintiffs nor class members authorized or consented to Defendants' interception of electronic communications.

162.    Aaron's is directly liable for every interception which occurred after September 2, 2010, at the latest, at which time it knew what its express consent was permitting to occur by virtue of the use of the Aaron's Inc. corporate intranet, server and Email accounts; as well as for its determination to jointly continue its participation and to conduct a Beta study to determine the viability of the PC Rental Agent® or similar software for its corporate stores, rather than terminate its involvement and discontinue its express consent to allow such misconduct to occur through its corporate property and structure.

163.    Aaron's is also vicariously liable for the actions of its Franchisees as it retained actual and sufficient control over its Franchisees, as alleged herein, including, but not limited to controlling specific aspects of its Franchisees' business operations from which the injury arose, to wit: the mandated use of the Aaron's corporate intranet, server and Email and express consent that was required under the franchise agreements, and which it granted to its Franchisees, so they could access and use the PC Rental Agent® – all necessarily through Aaron's Inc. server.

164.    Section 2520 of the ECPA provides for a private cause of action and allows for declaratory and equitable relief as appropriate and statutory damages of the greater of $10,000 or $100 a day for each day of violation, actual and punitive damages, and reasonable attorney's fees and costs.

## COUNT II
### (Invasion of Privacy)

165.    Plaintiffs repeat and re-allege each and every allegation above as if fully set forth herein.

166.    These Defendants, through their concerted and agreed upon conduct as alleged herein, engaged in actions which constituted the intentional intrusion on the seclusion of plaintiffs' and their customers' private concerns, including, but not limited to, the private occurrences, communications, engagements, and otherwise personal and private engagements, transmissions and recordings of information, whether occurring in their homes or in other places in which plaintiffs and others had a reasonable expectation of privacy.

167.    Each Defendant's actions played an integral and necessary part, without which, these intrusions on seclusion and invasions of privacy could not have been committed, insofar as the Franchisees intended to intrude upon Plaintiffs' seclusion by purchasing PC Rental Agent® from DesignerWare; Aaron's made such intrusion possible by opening the portal on its intranet

34

so its Franchisees could access DesignerWare's server and website to use the PC Rental Agent®
to activate and build the Detective Mode and begin spying on Plaintiffs, and by Aaron's Inc.'s
choice to leave open such portal even after learning of the very intrusive nature of the PC Rental
Agent® and what it was allowing the Franchisees to do; and by DesignerWare's creation of and
provision of the software which made the spying possible, and the server which was the hub
from which all of the spying activities were communicated to Franchisees through Aaron's
server.

168.    The private information of Plaintiffs surreptitiously obtained as referenced herein,
was viewed, posted, ogled, shared, available and displayed unnecessarily and illegally by
Defendants in their Franchise stores, and elsewhere.

169.    Aaron's Inc. is directly liable for all of its direct participation in the illegal
conduct alleged herein after September 2, 2010, at the latest, at which time it knew that its
express consent was permitting to occur by virtue of the use of the Aaron's Inc. corporate
intranet, server and Email accounts; as well as for its determination to jointly continue its
participation and to conduct a Beta study to determine the viability of the PC Rental Agent® or
similar software for its corporate stores, rather than terminate its involvement and discontinue its
express consent to allow such misconduct to occur through its corporate property and structure.

170.    Aaron's is also vicariously liable for the actions of its Franchisees as it retained
actual and sufficient control over its Franchisees, as alleged herein, including, but not limited to
controlling specific aspects of its Franchisees' business operations from which the injury arose,
to wit: the mandated use of the Aaron's corporate intranet, server and Email and express consent
that was required under the franchise agreements, and which it granted to its Franchisees, so they
could access and use the PC Rental Agent® – all necessarily through Aaron's Inc. server.

171.    The intentional and deliberate intrusion on seclusion as referenced in the preceding paragraph and throughout this Complaint, did cause, and would cause, mental suffering, shame, or humiliation to persons of ordinary sensibilities, and thus, was substantial and highly offensive to reasonable persons, and thus, Plaintiffs and the Class members are entitled to compensatory damages for their injuries.

172.    The intentional and deliberate intrusion on seclusion as referenced herein constituted wanton, willful and malicious conduct justifying an award of punitive damages against these Defendants.

### COUNT III
### (Conspiracy)

173.    Plaintiffs repeat and re-allege each and every allegation above as if fully set forth herein.

174.    Of Defendants DesignerWare, the Franchisees, and/or Aaron's, two or more of them acted with a common purpose to commit and do unlawful acts, to wit: to commit the tort of intrusion on seclusion, and thus invade the privacy of Plaintiffs and the class members; and to illegally and in violation of the ECPA, intercept electronic communications; all as alleged herein.

175.    One or more of the Defendants committed overt acts to further their common purpose as described here:

a.    DesignerWare designed and made available for sale, its spying software, PC Rental Agent®, and then provided and maintained a server in Northeast, Pennsylvania, within the Western District of Pennsylvania, and said server made possible the illegal acts complained of herein as it served as the hub through which all spying and collection of intercepted communications commended and was transmitted and conducted.  Without the DesignerWare product and server, none of the illegal conduct was possible.

36

b.      The Franchisees entered into agreements with DesignerWare for the purchase of the spying software and the use of DesignerWare's server for the purpose of committing the illegal acts complained of herein, and then issued the commands that travelled through both the Aaron's Inc. server and the DesignerWare server, that remotely began and completed the installation of the Detective Mode upon the RTO computers, as well as the commands to commence the illegal spying and interception of personal, private and electronic communications.  Without the commands given by the Franchisees, none of the illegal conduct would have occurred.

c.      Aaron's Inc. expressly consented to, aided, assisted and directly participated in said spying activities while maintaining control and authority over its corporate intranet and server, as well as its Franchisees, as alleged herein, and after learning of the very illegal nature of the spying activities, which its express consent, aid and assistance made possible, chose to continue to expressly consent aid and abet in such illegal spying and, in fact, utilize its Franchisees' illegal conduct as a Beta study to determine if it might prove profitable for its corporation.  Further, between September of 2010 and December of 2011, Aaron's was not a passive participant in the conspiracy, and did not withdraw or disavow participation in the conspiracy.  Without expressly consenting to its Franchisees' requests, and thereafter providing the avenue to the DesignerWare and PC Rental Agent® website and server, and ultimately, the customers' RTO computers, and without its continued cooperation in allowing such illegal spying and interception of personal and private information and communications, none of the illegal conduct was possible

176.     The conduct of these Defendants was *per se*, malicious as they acted in concert to commit unlawful acts, and, alternatively, was malicious as they undertook the activity with the intent to injure Plaintiffs and the class, and was without legal justification.

177.     The conduct of these Defendants caused actual legal damage to Plaintiffs and the class as described herein, including, but not limited to, the statutory damages provided for in the ECPA, the compensatory damages to which they are entitled for the invasion of their privacy, the theft of their images and likeness, their personal and private information and communications, as well as their attorneys fees and punitive damages.

178.     The Defendants are jointly and severally liable for the compensatory damages caused to Plaintiffs and the Class.

## COUNT IV
### (Aiding and Abetting)

179.     Plaintiffs repeat and re-allege each and every allegation above as if fully set forth herein.

180.     Aaron's Inc. aided and abetted the Franchisees in their acts of invading the privacy, and intercepting the private and personal information and communications – electronic and otherwise – of Plaintiffs and the Class; to wit: Aaron's Inc. knew, understood, or learned that tortuous and criminal acts had been, were, or would be committed, by the Franchisees; that those Defendants' tortuous and illegal conduct constituted breaches of common law and statutory duties toward Plaintiffs and the Class; and thereafter provided substantial assistance to those Defendants' in the form of physical assistance, participation and/or encouragement of their conduct.

181.     The substantial assistance provided by Aaron's, Inc., as alleged herein, included their express consent to permit the Franchisees to use and access the DesignerWare and/or PC

Rental Agent® website(s) via the Aaron's, Inc. corporate intranet and server to build and install the Detective Mode on Aaron's customers' RTO computers, as well as their consent to allow the Franchisees to secretly spy on and invade the privacy of Aaron's customers in their homes, and intercept private and personal information and electronic communications, all through the Aaron's, Inc. server and the email accounts it owned and managed.

182.     Not only was the substantial assistance provided by Aaron's, Inc. a proximate cause of the resulting illegal conduct and damages to Plaintiffs and the Class, as alleged herein, such illegal conduct and resulting damages was impossible without Aaron's substantial assistance.

183.     As alleged herein, Plaintiffs and the Class suffered damages as a result of such aiding and abetting by Aaron's, Inc.

184.     As a result, Aaron's is jointly and severally liable for the compensatory damages caused to Plaintiffs and the Class.

WHEREFORE, Plaintiffs Brian and Crystal Byrd, and all members of the Class, request judgment in their favor and against Defendants, jointly and severally, as follows:

a.     For an order certifying the Class under the appropriate provisions of Rule 23 and appointing Plaintiffs and their legal counsel to represent the Class;

b.     Requiring Defendants to provide immediate and appropriate notice, credit monitoring and identity-theft prevention services to Plaintiffs and the other Class members;

c.     Awarding damages as provided by the Electronic Communications Privacy Act including declaratory relief, actual damages, punitive damages and reasonable attorneys' fees and costs to counsel for the Class pursuant;

d.      Awarding compensatory and punitive damages where appropriate for all

other claims; and

e.      Granting such other and further relief as is just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs and the members of the Class hereby demand a trial by jury on all issues

for which a right to jury trial exists.

**LEVIN, FISHBEIN, SEDRAN & BERMAN**

/s/ Frederick S. Longer
**Frederick S. Longer**
Bar No. PA 46653
flonger@lfsblaw.com
**Arnold Levin**
Bar No. PA 02280
alevin@lfsblaw.com
**Daniel L. Levin**
Bar No. PA 80013
dlevin@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3697
Phone: 877-882-1011
Fax: 215-592-4663

**JAMIESON & ROBINSON, LLC**
**John H. Robinson**
Bar No. WSB 6-2828
robinsn@vcn.com
214 S. Grant Street
Casper, WY 82601
Phone: 307-235-3575
Fax:  307-307-577-9435

**THE SPENCE LAWFIRM**
**G. Bryan Ulmer, III**
ulmer@spencelawyers.com
Bar No. WY 6-2943
**Mel C. Orchard, III**

Bar No. WY 5-2984
orchard@spencelawyers.com
**R. Daniel Fleck**
Bar No. WY 6-2668
fleck@spencelawyers.com
PO Box 548 • 15 South Jackson Street
Jackson, Wyoming 83001
Phone: 307-733-7290
Fax: 307-733-5248

**HERMAN GEREL LLP**
**Christopher V. Tisi**
Bar No. DC 412839; MD 04286
cvtisi@aol.com
2000 L Street, NW Suite 400
Washington, D.C., 20036
Phone 202-783-6400
Fax: 202-416-6392

**Michelle A. Parfitt**
Bar No. VA 33650; DC 358592
mparf@aol.com
**James F. Green**
Bar No. VA 24915; DC 214965; MD 208980
jgreen@ashcraftlaw.com
4900 Seminary Road, Suite 650
Alexandria, Virginia 22311
Phone: 703-931-5500

**Maury A. Herman**
Bar No. LA 006815
mherman@hhkc.com
**Leonard A. Davis**
Bar No. LA 14190
ldavis@hhkc.com
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: 504-581-4892

**Andrea S. Hirsch**
Bar No. GA 666557
ahirsch@hermangerel.com
230 Peachtree Street, Suite 2260
Atlanta, GA 30303
Telephone: 404-880-9500