**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **CRYSTAL BYRD, et al,** | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| **vs.** | ) | **C.A.No. 11-101Erie** |
| | ) | **District Judge Bissoon** |
| **AARON'S, INC., et al.,** | ) | **Magistrate Judge Baxter** |
| **Defendants.** | ) | |


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
on Defendants' Motions to Dismiss the Corrected Third Amended Complaint


**I.      RECOMMENDATION**

It is respectfully recommended that:

- The motion to dismiss filed by Defendant Aspen Way Enterprises [ECF No. 161] should be DENIED;

- The motion to dismiss filed by Defendant Aaron's, Inc. [ECF No. 163] should be GRANTED IN PART AND DENIED IN PART.

It is further recommended that the following motions be granted for lack of subject matter jurisdiction based on Plaintiffs' lack of standing:

- The motion to dismiss filed by Defendant Arona Corporation [ECF No. 192] be GRANTED ;

- The motion to dismiss filed by Defendants AH&H Leasing, LLC, Bear Rental Purchase, Ltd., Boxer Enterprise, Inc., Circle City Rentals, CMH Leasing Partners, LLC, CRAM Leasing, Inc., DC Sales & Lease, Inc., Dirigo Leasing, Inc., DPR Alaska, LLC, DPR Colorado, LLC, DW3, LLC, DWC Ventures, LLC, Fairway Leasing, LLC, Five Star Financials, LLC, FT Got Three, LLC, GNS & Associates, Inc., Green Fiver Corporation, Hanson Holding Company, Honey Harbor Investments, LLC, Howard Rents, LLC, HPH Investments, LLC, J&L Beach Enterprises, Inc., J.R. Rents, Inc., Jenfour, LLC, Jenkins Rental, LLC, KFJ Enterprises, LLC, Lifestyle Furniture Leasing, Madison Capital Investments, Inc., MKW Investments, Inc., No Three Putts

1

Enterprises, LLC, NW Freedom Corporation, Pomona Lane Partners, LLC, R & Double K, LLC, Rebco Investments, LLC, Rex Neal, Inc., Royal Rents, Inc., Royal Rocket Retail, LLC, SEI/Aaron's, Inc., Shining Star, Showcase Home Furnishings, Inc., Sultan Financial Corporation, Tanglewood Management, LLC, TDS Foods, Inc., Tur, Inc., Watershed Development Corporation, and WGC, LLC [ECF No. 194] be GRANTED.

- The motions for joinder filed by Defendants Great American Rent-to-Own, AMG Enterprises Group, and J.M. Darden and Company [ECF Nos. 298, 299, and 300] be GRANTED.

The Clerk of Courts should be directed to terminate the following as parties to this action:

AH&H Leasing, LLC, AMG Enterprises Group, LLC, Arona Corporation, Bear Rental Purchase, Ltd., Boxer Enterprise, Inc., Circle City Rentals, CMH Leasing Partners, LLC, CRAM Leasing, Inc., DC Sales & Lease, Inc., Dirigo Leasing, Inc., DPR Alaska, LLC, DPR Colorado, LLC, DW3, LLC, DWC Ventures, LLC, Fairway Leasing, LLC, Five Star Financials, LLC, FT Got Three, LLC, GNS & Associates, Inc., Great American Rent-to-Own, Inc., Green Fiver Corporation, Hanson Holding Company, Honey Harbor Investments, LLC, Howard Rents, LLC, HPH Investments, LLC, J&L Beach Enterprises, Inc., J.R. Rents, Inc., J.M. Darden & Company, Jenfour, LLC, Jenkins Rental, LLC, KFJ Enterprises, LLC, Lifestyle Furniture Leasing, Madison Capital Investments, Inc., MKW Investments, Inc., No Three Putts Enterprises, LLC, NW Freedom Corporation, Pomona Lane Partners, LLC, R & Double K, LLC, Rebco Investments, LLC, Rex Neal, Inc., Royal Rents, Inc., Royal Rocket Retail, LLC, SEI/Aaron's, Inc., Shining Star, Showcase Home Furnishings, Inc., Sultan Financial Corporation, Tanglewood Management, LLC, TDS Foods, Inc., Tur, Inc., Watershed Development Corporation, and WGC, LLC.

## II.    REPORT

### A.  Relevant Procedural History

On May 3, 2011, Plaintiffs Crystal and Brian Byrd, filed the instant purported class action. Plaintiffs alleged that Defendants have violated 18 U.S.C. § 2511, referred to as the Electronic Communications Privacy Act, and invaded their privacy.

Since the filing of the Original Complaint, this case has undergone an unusual and lengthy procedural process, most of which is not relevant here. Currently, the operative complaint is the Corrected Third Amended Complaint. ECF No. 296. All Defendants seek dismissal of the Corrected Third Amended Complaint. This Court will begin by briefly reviewing the allegations of that filing.

### B.    The Allegations of the Corrected Third Amended Complaint

According to the Corrected Third Amended Complaint, Defendants (Aaron's franchisee stores) have been secretly installing PC Rental Agent on rent-to-own computers since June 2009. ECF No. 296, ¶ 84. PC Rental Agent permits Defendants to "remotely and surreptitiously access, monitor, intercept, and/or transmit personal information as well as electronic communications and images, including, but not limited to, images of monitors or screens ("screen shots"), keystrokes, as well as images captured by the computers' respective cameras ("webcams") of whatever person was sitting in front of the computer, and whatever activity was occurring at the time the webcam was capturing the photographs." Id. at ¶ ¶ 3, 84.

In July of 2010, Plaintiff Crystal Byrd entered into a lease agreement for a laptop computer with an Aaron's franchisee store located in Casper, Wyoming, operated by Aspen Way Enterprises. Id. at ¶ 118. See also ECF No. 1, Lease Agreement attached to Original Complaint.

The lease agreement provided that Crystal Byrd pay three separate installments toward the purchase of the laptop. ECF No. 296, ¶ 118. The lease agreement did not disclose that PC Rental Agent had been installed on the laptop and could be used by others to monitor the computer use. Id. at ¶ 119. Crystal Byrd satisfied the lease in full in October 2010, by paying the outstanding balance in cash. Id. at ¶ 120.

Allegedly, on December 20, 2010, Plaintiff Brian Byrd was using the laptop computer to play poker on the Internet. Id. at ¶ 122. While playing his game, a digital photographic image of him as well as a screenshot of his computer screen were surreptitiously taken. Id. The screen shot revealed the Internet site with which he was communicating and from which he was receiving communication. Id. Additionally, the actual keystrokes Byrd was entering into the computer were recorded. Id. This information was captured by the PC Rental Agent software and transmitted to DesignerWare's server in Pennsylvania. Id. These communications were then re-transmitted to the Aspen Way store in Wyoming, where the Byrds had originally purchased the laptop. Id.

The Byrds' laptop computer was secretly accessed by Aspen Way 347 times on eleven different days between November 16, 2010, and December 20, 2010. Id. at ¶ 123. Plaintiffs allege that Aaron's Inc. expressly consented to have its franchisee stores access and use the DesignerWare and PC Rental Agent websites through the Aaron's Inc. corporate intranet and server to spy on unsuspecting customers. Id. at ¶ 137. Aspen Way alone (owner of multiple franchise stores in several states) intercepted its customers' information on more than 50,000 occasions. Id. at ¶ 138; ¶ 15.

Besides Aspen Way, Plaintiffs have named fifty-one franchisee Defendants (as well as 1-45 John Doe Franchisee Defendants) in this action. These Franchisee Defendants will hereinafter

referred to as "Franchisee Defendants" as opposed to Aspen Way, which will be referred to by name.

The Corrected Third Amended Complaint raises four separate counts:

>Count I – violation of the Electronic Communications Privacy Act;

>Count II – Invasion of Privacy based on Intentional Intrusion upon Seclusion under state law;

>Count III – Conspiracy (to violate ECPA and invade privacy); and

>Count IV – Aiding and Abetting (to violate ECPA and invade privacy).

ECF No. 296.

Currently pending before this Court are motions to dismiss by all served Defendants. See ECF Nos. 161, 163, 192, 194, 298, 299, and 300. The issues raised therein are fully briefed and are ripe for disposition by this Court.

### C.    Motions to Dismiss by Franchisee Defendants

The Franchisee Defendants (other than Aspen Way Enterprises) move for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction on the basis of lack of standing.[1]

### 1)    Motion to dismiss – 12(b)(1) lack of subject matter jurisdiction

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal of a complaint if the court lacks subject matter jurisdiction to hear the case. Among other things, a defendant may challenge the court's subject matter jurisdiction based on the plaintiff's lack of standing. ACLU-NJ v. Township of Wall, 246 F.3d 258, 261 (3d Cir. 2001). For the purposes of constitutional standing, a plaintiff must show: (1) that he or she has suffered an injury in fact –

---

[1] Arona Corporation, one of the named Franchisee Defendants, also moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2).

that is, an invasion of a legally protected interest which is concrete and particularized, and actual or imminent rather than conjectural or hypothetical; (2) that there is a causal connection between the injury and the conduct complained of, such that the injury fairly is traceable to the challenged action of the defendant, rather than the result of an independent action of some third party not before the court; and (3) that it is likely the injury will be redressed by a favorable decision of the court. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992). Absent standing, and by extension subject matter jurisdiction, the court does not possess the power to decide the case, and any disposition it renders is a nullity. <u>Int'l Ass'n of Machinists & Aerospace Workers v. NW. Airlines</u>, 673 F.2d 700, 711 (3d Cir. 1982).

A defendant may challenge a court's subject matter jurisdiction with either a facial or factual attack. <u>Gould Electronics Inc. v. U.S.</u>, 220 F.3d 169, 176 (3d Cir. 2000). In a facial attack, the defendant contests the sufficiency of the well-pleaded allegations insofar as they provide a basis for the court's exercise of subject matter jurisdiction; as under Rule 12(b)(6), the court the court must treat the complaint's well-pleaded jurisdictional facts as true and view them in the light most favorable to the plaintiff. <u>NE Hub Partners, L.P. v. CNG Transmission Corp.</u>, 239 F.3d 333, 341 (3d Cir. 2001); <u>Cunningham v. Lenape Regional High Dist. Bd. of Educ.</u>, 492 F.Supp.2d 439, 446-47 (D.N.J. 2007). Dismissal pursuant to a facial attack "is proper only when the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous." <u>Kehr Packages v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (internal quotation omitted).

In a factual attack, on the other hand, the defendant challenges the factual basis underlying the court's subject matter jurisdiction with extrinsic evidence, essentially making the argument that the allegations supportive of jurisdiction are not true. <u>Cunningham</u>, 492 F.Supp.2d

at 447. Because this Court must be satisfied at all times that it has the power to hear the case, it "may consider evidence outside the pleadings" "to resolve factual issues bearing on jurisdiction." Gould Electronics, 220 F.3d at 176; Gotha v. U.S., 115 F.3d 176, 179 (3d Cir. 1997); Int'l Ass'n of Machinists, 673 F.2d at 711. Once the defendant presents extrinsic evidence contesting the jurisdictional facts set forth in the complaint, the court must permit the plaintiff to respond. Gould Electronics, 220 F.3d at 177. "The court may then determine jurisdiction by weighing the evidence presented by the parties," "*evaluating for itself* the merits of the jurisdictional claims." Id.; Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977) (emphasis added). In making this evaluation, no presumption of truthfulness attached to the allegations set forth in the complaint. Mortensen, 549 F.2d at 891. Rather, the challenge must be evaluated solely on the merits of the evidence submitted on jurisdiction. Id.

### 2) Standing against the Franchisee Defendants[2]

These Defendants argue that because there is no allegation that they have had any dealings with the Byrds, the Byrds lack standing to bring a claim against them. See ECF Nos. 192, 194, 298, 299, and 300.

The question of standing is a threshold inquiry. City of Pittsburgh v. West Pennsylvania Power Co., 147 F.3d 256, 264 (3d Cir. 1998). The party invoking federal jurisdiction bears the burden of establishing standing. Lujan, 504 U.S. at 561. Standing is not merely a "pleading requirement but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof,

---

[2] The issues presented here overlap with issues that impact the certification of any class in this case. However, "[b]ecause individual standing requirements constitute a threshold inquiry, the proper procedure when the class plaintiff lacks individual standing is to dismiss the complaint, not to deny class certification." William Rubenstein and Alba Conte, Newberg on Class Actions, § 2:6 (5th ed. 2012). See Part 2.a infra.

i.e., with the manner and degree of evidence required at the successive stages of the litigation."
Id.

The standing inquiry "involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498 (1975).  To maintain an action in federal court, a plaintiff must demonstrate constitutional standing by satisfying several requirements imposed by Article III of the Constitution.  See Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137-38 (3d Cir. 2009).[3]  The Third Circuit has summarized the "irreducible constitutional minimum" of Article III's standing requirements as consisting of three elements:

> First, the plaintiff must have suffered a concrete, particularized injury-in-fact, which must be actual or imminent, not conjectural or hypothetical.  **Second, that injury must be fairly traceable to the challenged action of the defendant,** and not the result of the independent action of some third party not before the court.  Third, the plaintiff must establish that a favorable decision likely would redress the injury.

Id. (internal citation omitted) (emphasis added).

Plaintiffs must demonstrate that they have standing to bring each and every claim against each and every Defendant.  Id. at 139 n.5 (a plaintiff "must demonstrate standing for each claim it seeks to press" and "must demonstrate standing separately for each form of relief sought") quoting Daimler-Chrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006) and Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc., 528 U.S. 167, 185 (2000).

---

[3] Additionally, plaintiffs must demonstrate prudential standing by meeting certain judge-made requirements designed to limit the exercise of federal jurisdiction.  Without these additional prudential considerations, "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent ... and judicial intervention may be unnecessary to protect individual rights."  Warth, 422 U.S. at 500.

In opposition to the motions to dismiss by the Franchisee Defendants, the Byrds maintain that they have standing because they are seeking to hold accountable the defendant co-conspirators at whose hands the class suffered injury. ECF No. 288, page 7. Furthermore, the Byrds argue that they have standing to pursue their claims against all the named Defendants based upon the Franchisee Defendants' alleged involvement in the conspiracy claim and that they are "alleging an injury that is fairly traceable to the other franchisees that will be redressed by the relief requested by virtue of their well-pleaded conspiracy." Id. Despite their arguments, the Byrds do not achieve standing against the Franchisee Defendants either by way of their status as proposed class representatives or by way of the conspiracy claim.

### a) Class

Generally, a plaintiff may only assert his or her "own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 474-75 (1982). See also Powers v. Ohio, 499 U.S. 400 (1991). Class actions are the exception to this general rule. However, the fact that a suit is filed as a proposed class action does not change the question of standing. Lewis v. Casey, 518 U.S. 343, 357 (1996). That a suit may be filed as a proposed class action "adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 40 n.20 (1976).[4] In multi-defendant class actions, the named plaintiffs must show that each

---

[4] See also Warth, 422 U.S. at 502 (named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); O'Shea v. Littleton, 414 U.S. 488

defendant has harmed at least one of them. Class representatives do not gain standing through injuries to class members. <u>See</u> William Rubenstein and Alba Conte, <u>Newberg on Class Actions</u> § 2:5 (5th ed. 2012) ("Generally, class representatives do not have standing to sue defendants who have not injured them even if those defendants have allegedly injured other class members.").

### b) Conspiracy

The law generally holds all conspirators jointly and severally liable for the conduct of each of their co-conspirators. Joint and several liability attaches to all co-conspirators in a conspiracy because the co-conspirators agreed to undertake an act together.[5]

Here, Plaintiffs allege that Aspen Way engaged in a conspiracy with DesignerWare and Aaron's Inc. to violate their rights under the ECPA and to invade their privacy. Furthermore, the conspiracy as alleged here is that each of the Franchisee Defendants conspired with DesignerWare and Aaron's Inc. to spy on that Franchisee Defendant's own customers. In other words, Aaron's Inc. and DesignerWare conspired with each Franchisee Defendant, including

---

(1974) ("If none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); <u>In re McNeil Consumer Healthcare</u>, 877 F.Supp.2d 254, 273 (E.D. Pa. 2012); <u>Matte v. Sunshine Mobile Homes, Inc</u>., 270 F.Supp. 2d 805, 826 (W.D. La. 2003) <u>quoting</u> <u>Chevalier v. Baird Sav. Ass'n</u>, 66 F.R.D. 105 (E.D. Pa. 1975) ("[S]tanding is one of the keys necessary to open the door to the federal courthouse. Rule 23 merely provides a procedural doorstop which holds the door open for qualified class members, once it has been opened by the person or persons initially seeking entry.").

[5] Indeed, agreement between the parties is a necessary element of a conspiracy claim. For example, in Pennsylvania, "[t]he essential elements of a claim for civil conspiracy are as follows: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." <u>Perez v. Gamez</u>, 2013 WL 6073877, at * 9 (M.D.Pa. Nov. 18, 2013) (internal citation omitted). <u>See also</u> <u>Savage v. Judge</u>, 644 F.Supp.2d 550, 561 (E.D. 2009) (stating that an agreement to do an unlawful act is "the *sine qua non* of a conspiracy"). It is not enough that the end result of the parties' independent conduct caused the plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism. <u>Savage</u>, 644 F.Supp.2d at 561.

Aspen Way, in multiple <u>separate</u> conspiracies. There is no allegation that Aspen Way entered into an arrangement to gather information from or about the customers of any other Franchisee Defendant.

While the alleged conspiracies may be parallel to each other, a conspirator in Conspiracy 1 is not liable for the actions of a conspirator in Conspiracy 2 because there is no agreement between the conspirators of Conspiracy 1 and Conspiracy 2. Plaintiffs do not suggest that each of the Franchisee Defendants had any type of agreement or understanding with one another with respect to the use of PC Rental Agent. So then, hypothetically, Aaron's Inc. may be held liable for the actions of Aspen Way against Aspen Way's own customers, but Aspen Way will not be held liable for the actions of another Franchisee defendant against that Franchisee's customers because there is no alleged agreement between and amongst the Franchisee Defendants.

Plaintiffs suggest that Aaron's, DesignerWare and all the Franchisee Defendants (including Aspenway) participated in a "conspiracy wheel." Plaintiffs explain that Aaron's and Designerware acted at the hub of the conspiracy, each Franchisee Defendant acted as an individual spoke, and all were bound together by a rim of a shared common profit motive driving their use of PC Rental Agent. ECF No. 306, Plaintiffs' Joint Reply Brief on Motion for Certification of Class, pages 24-26.

Plaintiffs' reliance on a "conspiracy wheel" theory is misplaced. This type of conspiracy has "a long history in anti-trust jurisprudence" and consists of "a hub, generally the dominant purchaser or supplier in the relevant market, and the spokes, made up of the distributors involved in the conspiracy, [while] the rim of the wheel is the connecting agreements among the horizontal competitors (distributors) that form the spokes." <u>Howard Hess Dental Labs Inc. v. Dentsply Int'l Inc.</u>, 602 F.3d 237, 255 (3d Cir. 2010) <u>quoting</u> <u>Total Benefits Planning Agency,</u>

Inc. v. Anthem Blue Cross & Blue Shield, 552 F.3d 430, 435 n.3 (6th Cir. 2008). See also In re Insurance Brokerage Antitrust Litig., 618 F.3d 300 (3d Cir. 2010). There is no "horizontal agreement" here, which is essential to complete the "conspiracy wheel." As alleged in the Corrected Third Amended Complaint, Plaintiffs do not plead an agreement between the Franchisee Defendants to support a single uniform conspiracy amongst them, so as to overcome these standing issues.

### c) Plaintiffs' Juridical Link Theory

In order to overcome the standing problem, Plaintiffs argue that this Court should apply the juridical link doctrine to this case. ECF No. 288, page 9.

This juridical link doctrine was first mentioned in LaMar v. H&B Novelty & Loan Co., 489 F.2d 461 (9th Cir. 1973), which held in assessing Rule 23's typicality requirement that "a plaintiff who has no cause of action against the defendant cannot fairly and adequately protect the interests of those who do have such causes of action … even though the plaintiff may have suffered an identical injury at the hands of a party other than the defendant." Id. at 466. The LaMar Court then suggested, in dicta and without further discussion, that there may be two exceptions to that rule: One exception covers cases in which the named plaintiff's injuries were "the result of a conspiracy or concerted schemes between the defendants" and another exception covers cases in which it would be "expeditious" to combine the defendants into one action because they are "juridically related." Id.

The Third Circuit has not adopted this doctrine and the only Third Circuit case to discuss the juridical link doctrine of LaMar did so in the context of tolling a statute of limitations time bar in a case that had been certified as a class action. See Haas v. Pittsburgh National Bank, 526 F.2d 1083 (3d Cir. 1975). The discussion of the matter is limited to the following in Haas:

On appeal, plaintiffs do not contest the district court's holding that Haas could not represent the class of Equibank cardholders …

> It is well settled that a class action may not be maintained unless the plaintiff representative is a member of the class he purports to represent. An extension of this rule has recently evolved as a result of class actions frequently being instituted by a plaintiff against multiple defendants, not all of whom had dealings with the class representative but who at least engaged in conduct closely similar to that of the defendants against whom the nominal plaintiff has a cause of action. Whether for reasons of lack of standing, or for lack of Rule 23(a)(3) typicality, it has been held that a nominal plaintiff may not maintain an action on behalf of a class against a specific defendant if the plaintiff is unable to assert an individual cause of action against that defendant.

Haas, 526 F.2d at 1096, and n.18. There is no legitimate reason for this Court to adopt the juridical link doctrine in the case at hand, especially based on the language and situation in Haas. Instead, we find the Second Circuit's recent rejection of the doctrine persuasive:

> "[W]hether or not Rule 23 would permit a plaintiff to represent a class against non-injurious defendants cannot affect the plaintiff's Article III standing to sue the non-injurious defendants. **A federal rule [of procedure] cannot alter a constitutional requirement.** It is well established that a plaintiff must demonstrate standing for each claim she seeks to press. Thus, with respect to each asserted claim, a plaintiff must always have suffered a distinct and palpable injury to herself. In no event … may Congress abrogate the Article III minima…"

Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 64 (2d Cir. 2012) (emphasis added) (internal citation omitted).

The Byrds simply have no standing to bring the claims alleged in the Corrected Third Amended Complaint against the Franchisee Defendants (other than Aspen Way with whom they did business) and accordingly, the motions to dismiss by these Defendants should be granted due to the lack of subject matter jurisdiction.

In a footnote, Plaintiffs state that if this Court finds that the Byrds do not have standing to bring the claims against the Franchisee Defendants with whom they have not conducted

business, "Plaintiffs should be permitted an opportunity to intervene nominal plaintiffs that are aligned with each of the TAC Franchisees." ECF No. 288, page 10 n.9. Plaintiffs have been granted several opportunities to amend the complaint and have been generously and repeatedly granted extensions of time to do so. There has been ample time for them to add new plaintiffs in their own right and as proposed class representatives. This case is well over two years old and allowing further amendment of the complaint (and likely further discovery in order to ascertain the identities of nominal plaintiffs for each of the fifty-one named Franchisee Defendants, all of which should have been done by now) unfairly prejudices all Defendants in this already protracted litigation and should not be permitted.

### D.     Motion to Dismiss by Aspen Way

Defendant Aspen Way moves to dismiss the complaint solely based on the lack of personal jurisdiction.

#### 1) Previous ruling on personal jurisdiction

Aspen Way has repeatedly argued that this Court lacks personal jurisdiction over it. In a Report and Recommendation analyzing Aspen Way's motion to dismiss the First Amended Complaint, the undersigned recommended that the motion to dismiss be denied, concluding that Plaintiffs had sufficiently alleged: 1) that Aspen Way "purposefully availed itself of the privilege of conducting actions within the forum state"; 2) that the present litigation "arises out of or relates to" the contacts between Aspen Way and Pennsylvania; and 3) that the "burden on Aspen Way in traveling to this jurisdiction was not so great as to violate notions of fair play and substantial justice so as to be unconstitutional." ECF No. 84. It was recommended therein that "jurisdictional issues may be revisited in the future," but "at this preliminary stage of the

proceedings without the benefit of discovery," the motion to dismiss for lack of personal jurisdiction should be denied.  Id.

Following a hearing on the Objections to that Report and Recommendation, former District Judge Sean McLaughlin ruled that the purposeful availment prong was lacking on the record and that it could not be cured by amendment of the complaint. ECF No. 95, page 9, lines 15-16. Judge McLaughlin went on to rule that Plaintiffs' vague allegations of conspiracy were insufficient under Twombly, but that Plaintiffs would be permitted to amend the complaint to raise a conspiracy claim. Id.

The operative complaint now raises conspiracy (for violation of the ECPA, as well as for the invasion of privacy) as a separate cause of action.[6]


### 2)  Standard of Review

"Because federal courts are courts of limited jurisdiction, a presumption arises that they are without jurisdiction until the contrary affirmatively appears."  Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982).  In ruling on a motion to dismiss under Rule 12(b)(2), the court is required, as with Rule 12(b)(6) motions, to accept as true all allegations contained in the complaint and view all factual disputes in plaintiff's favor.  D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) citing Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir.

---

[6] The law of the case doctrine does not apply here as no pure issue of law was actually decided in the prior proceedings. See Pepper v. United States, ___ U.S. ___, ___, 131 S.Ct. 1229, 1250 (2011); Benjamin ex rel. Yock v. Dep't of Public Welfare of Pennsylvania, 701 F.3d 938, 949 (3d Cir. 2012).

2004).  Unlike a Rule 12(b)(6) motion[7], however, the scope of the Court's review on a Rule

12(b)(2) motion is not limited to the face of the complaint, but may include affidavits or other

competent evidence submitted by the parties.  Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir.

1990) citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir.

1984).  Ultimately, the plaintiff bears the burden of proving, by a preponderance of the evidence,

facts sufficient to establish personal jurisdiction over the defendants.  Metcalfe v. Renaissance

Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) citing Pinker v. Roche Holdings Ltd., 292 F.3d

361, 368 (3d Cir. 2002).

If an evidentiary hearing is not held on the 12(b)(2) motion, then the plaintiff need only

demonstrate a *prima facie* case of personal jurisdiction at the preliminary stages of litigation.  Id.

citing O'Connor v. Sandy Lane Hotel Co, 496 F.3d 312, 316 (3d Cir. 2007); D'Jamoos, 566 F.3d

at 102, citing Miller Yacht Sales, 384 F.3d at 97.  Aspen Way has not submitted any evidence in

support of its pending motion to dismiss. [8]

---

[7]  There is a "significant procedural distinction" between a motion to dismiss based on Rule
12(b)(2) and a motion to dismiss based on Rule 12(b)(6):  "A Rule 12(b)(2) motion … is
inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether
in personam jurisdiction actually lies."  Piano Wellness, LLC v. Williams, 2011 WL 6722520, at
*2 n.2 (D.N.J. Dec. 21, 2011) citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735
F.2d 61, 66 n.9 (3d Cir. 1984).

[8]  Once a defendant submits contradictory evidence through an affidavit, plaintiff may not rest on
the allegations in the complaint, but must come forward with affidavits or other competent
evidence to show that personal jurisdiction is proper.  In re Chocolate Confectionary Antitrust
Litig., 602 F.Supp.2d 528, 556 (M.D. Pa. 2009) citing Patterson, 893 F.2d at 603-04; Dayhoff
Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996); Time Share Vacation Club, 735 F.2d
at 66 n.9.  To satisfy this burden, the plaintiff "may not rely on bare pleadings, but must produce
competent evidence to establish 'with reasonable particularity' the nature and extent of the
defendant's contacts with the forum state."  Burke v. Quartey, 969 F.Supp. 921, 924 (D.N.J.
1997) citing Patterson, 893 F.2d at 603-04; see also Sprague Energy Corp. v. Union Drawn Steel
II, Ltd., 2008 WL 696911, at *2 (W.D. Pa. 2008) ("[B]ecause a 12(b)(2) motion requires
resolution of factual issues outside the pleadings, the plaintiff may not rely on the pleadings
alone to carry its burden of establishing the jurisdictional facts.").  Once the plaintiff has

### 3) Analysis of personal jurisdiction in the Corrected Third Amended Complaint

Generally, "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts." J. McIntyre Machinery, Ltd. v. Nicastro, ___ U.S. ___, ___, 131 S.Ct. 2780, 2787 (2011).  However, a state "may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Daimler v. Bauman, ___ U.S. ___, ___, 2014 WL 113486, at *6 (Jan. 14, 2014) quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. ___, ___, 131 S.Ct.  2846, 2853 (2011).

Pennsylvania's long-arm statute permits its state courts to exercise personal jurisdiction over nonresident defendants "to the constitutional limits of the Due Process Clause of the Fourteenth Amendment[9]." See 42 Pa. Cons. Stat. Ann. § 5322.  In other words, "a district court's exercise of personal jurisdiction pursuant to Pennsylvania's long-arm statute is therefore valid as long as it is constitutional." Pennzoil Products Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 200 (3d Cir. 1998) quoting Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992).

Specific personal jurisdiction "allows for the exercise of personal jurisdiction over

---

sustained this burden, the 12(b)(2) motion will be denied despite any controverting presentation by defendant.  Chocolate Confectionary, 602 F.Supp.2d at 557 citing Cateret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 142 n.1. (3d Cir. 1992); Burke, 969 F.Supp. at 924; see also Metcalfe, 566 F.3d at 331.

[9]  The jurisdiction of courts considering state law cases is constrained by the Due Process Clause of the Fourteenth Amendment, while the Due Process Clause of the Fifth Amendment limits jurisdiction in federal question cases.  See World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980); Peay v. Bellsouth Med. Assistance Plan, 205 F.3d 1206 (10th Cir. 2000).

a nonresident defendant for actions arising out of the defendant's contact with the forum." Farino, 960 F.2d at 1221. See also Daimler, 2014 WL 113486, at *9, quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977) (specific jurisdiction is "trained on the relationship among the defendant, the forum and the litigation."). In this specific personal-jurisdiction-inquiry,"[t]he threshold requirement is that the defendant must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.'" D'Jamoos, 566 F.3d at 102, quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958). See also O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007). Next, plaintiff must show that the litigation "arises out of or relate[s] to" those contacts. O'Connor, 496 F.3d at 318. After the sufficient minimum contacts have been established by plaintiff, courts will consider whether the exercise of jurisdiction would otherwise comport with "traditional notions of fair play and substantial justice." Id. at 324, quoting Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945).

Here, Plaintiffs urge this Court to exercise personal jurisdiction over Aspen Way based upon the "absent co-conspirator" doctrine. "Under Pennsylvania law[10] personal jurisdiction of a non-forum co-conspirator may be asserted … where a plaintiff demonstrates that substantial acts in furtherance of the conspiracy occurred in Pennsylvania and that the non-forum co-conspirator was aware or should have been aware of those acts." Aluminum Bahrain B.S.C. v. Alcoa Inc., 866 F.Supp.2d 525, 528-29 (W.D. Pa. 2012)(citing cases). The Court examines the forum contacts of the defendant's 'resident' co-conspirator, here DesignerWare. Massachusetts School

_____

[10]  The availability of the conspiracy theory of jurisdiction, under which the in-forum acts of co-conspirators can be attributed to an out-of-forum defendant, is a question of state law. See Miller Yacht Sales, 384 F.3d at 102 n.8. The parties do not dispute that Pennsylvania law applies to this analysis. See In re Columbia Gas Sys. Inc., 50 F.3d 233, 240 n.10 (3d Cir. 1995) (where "the parties do not make an issue of choice of law, [the Court has] no obligation to make an independent determination of what rule would apply if they had made an issue of the matter").

18

of Law at Andover, Inc. v. American Bar Association, 846 F.Supp. 374, 379-80 (E.D.Pa. 1994), aff'd, 107 F.3d 1026, 1042 (3d Cir. 1997). The Court then imputes the contacts of the 'resident' co-conspirator over whom it has jurisdiction (DesignerWare) to the 'foreign' co-conspirator (Aspen Way) to determine if there are sufficient contacts to exercise jurisdiction over the latter. Id. So then, this Court must determine whether Plaintiffs have sufficiently alleged that substantial acts in furtherance of the conspiracy (to violate the ECPA and to invade privacy) occurred in Pennsylvania and that Aspen Way was aware or should have been aware of those acts (taken by DesignerWare in Pennsylvania).

*Substantial Activities in Furtherance of the Conspiracy in Pennsylvania*

In the Corrected Third Amended Complaint, Plaintiffs allege that Aspen Way, in concert with DesignerWare (a Pennsylvania corporation with its principal place of business located within this district) and Aaron's Inc., used PC Rental Agent to violate the ECPA and to invade their privacy, which Plaintiffs plead as the basis of their state law conspiracy claim. Plaintiffs allege that DesignerWare and Aspen Way entered into a business relationship whereby Aspen Way purchased PC Rental Agent, a software product designed to capture data from its customers' laptop computers.

DesignerWare maintained its computer servers in Pennsylvania and Aspen Way necessarily and repeatedly utilized this computer server in order to operate the PC Rental Agent software. Plaintiffs allege that DesignerWare's server operated as the hub through which the collection of the intercepted information was conducted (ECF No. 296, ¶ 175) and that through PC Rental Agent, DesignerWare records, stores, intercepts, discloses and transmits images secretly taken from the computers (id. at ¶¶ 68-69). After its collection, the information is sent

from DesignerWare's server to the Franchisee store that installed the PC Rental Agent on the corresponding laptop. Id. at ¶ 89. The sworn testimony of DesignerWare's Tim Kelly supports these allegations. The PC Rental Agent can only be installed through DesignerWare's website (ECF No. 43, page 133, lines 1-5) and no part of PC Rental Agent can be operated by Aspen Way without the use of DesignerWare's Pennsylvania-based computer server (ECF No. 171-1, pages 3, 6).

Aspen Way's own employees have explained that the first time each Aspen Way rental computer connected to the Internet, Aspen Way received an electronic file directly from DesignerWare's Pennsylvania-based server. ECF No. 77-2, Affidavit of Senior Regional Manager John Pollack, page 5, ¶ 28. In the event Aspen Way sought the coordinates for a particular computer, Aspen Way was required to log on to the DesignerWare website in order to retrieve the desired information. Id. at page 6, ¶ 31.

To activate the Detective Mode function of PC Rental Agent on each computer, the rent-to-own store was required to affirmatively "sign on to the server and activate the build, install and active sequence" through the DesignerWare website. ECF No. 43, Testimony of Kelly, page 184, lines 17-20; ECF No. 72-2, Pollack Affidavit, ¶ 39. Next, after receiving a communication back from the customer's computer, the DesignerWare server would then remotely install Detective Mode, and begin collecting data. ECF No. 171-2, Testimony Kelly, pages 4-8. The PC Rental Agent product required that all collected data route through the DesignerWare servers in Pennsylvania, and the data was tagged and attached to DesignerWare emails from the address support@designerware.com. Id. at pages 8-10.

The Byrds allege that beginning on November 16, 2010, Aspen Way initiated the Detective Mode function of PC Rental Agent on Crystal Byrd's laptop and kept it running

through December 20, 2010. ECF No. 296, ¶ 121. Plaintiffs claim that the Byrd laptop was accessed by Aspen Way in Casper, Wyoming, through the DesignerWare server in Pennsylvania and the Aaron's corporate server in Georgia, approximately 347 times during the 34 day period. Id. at ¶ ¶ 122-3. The repeated accessing of the Byrds' laptop through the DesignerWare server in Pennsylvania constitutes substantial acts in the furtherance of the conspiracy.

*Aspen Way should have known of the acts in Pennsylvania*

PC Rental Agent's product manual prominently displays DesignerWare's status as a Pennsylvania corporation. ECF No. 171-3. The manual provides usage instructions all of which require accessing the DesignerWare website, and the use of DesignerWare's servers for the PC Rental Agent product to function. Id.

The product manual also contains the End User License Agreement which expressly states that the parties agree to be governed by the laws of the state of Pennsylvania. ECF No. 171-1, Testimony of Kelly, pages 9-10. Additionally, every time the rent-to-own store installed the PC Rental Agent software and every time it entered the DesignerWare website, the store was forced to acknowledge the End User License Agreement which indicates that "this license acquired in the United States, this EULA is governed by the laws of the State of Pennsylvania." Id. at pages 9-10. While this License Agreement does not extend to legal disputes involving the Byrds, since they are not parties to it, Aspen Way's repeated acceptance of the Agreement demonstrates that it should have been aware that DesignerWare was conducting activities in furtherance of the conspiracy in Pennsylvania.[11]

---

[11] Plaintiffs also aver that Aspen Way sent monthly payments to DesignerWare in Pennsylvania. Aspen Way belittles this contact. However, the evidence before this Court reveals that Aspen Way continuously made payments over a period of several years via the mail to DesignerWare at

Plaintiffs have sufficiently alleged that DesignerWare (a co-conspirator) engaged in substantial acts in furtherance of the conspiracy in Pennsylvania. Furthermore, Plaintiffs have sufficiently alleged that Aspen Way was an active and key participant (indeed, Aspen Way is the initiator of the surreptitious collection of data from the Byrds' computer) and should have been aware of the acts done in Pennsylvania. The absent co-conspirator doctrine is applicable here.

While there is no doubt that there is a burden on Aspen Way in defending this litigation in Pennsylvania, Aspen Way has failed to make a compelling argument that litigation here would be constitutionally unreasonable. See O'Connor, 496 F.3d at 324 (because the existence of minimum contacts makes jurisdiction presumptively constitutional, the defendant "must present a compelling case that the presence of some other specific considerations would render jurisdiction unreasonable."); Pennzoil Products, 149 F.3d at 207 (considerable burden on defendant to show unreasonableness). Bringing suit against Aspen Way in this District does not offend traditional notions of fair play and substantial justice.

Accordingly, Aspen Way's motion to dismiss for lack of personal jurisdiction should be denied.

**E.     Motion to Dismiss by Aaron's Inc.**

Finally, Defendant Aaron's Inc. moves to dismiss based on Plaintiffs' failure to state a claim upon which relief can be granted under Rule 12(b)(6).

**1)  Standard of Review**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the

---

its Pennsylvania address. See ECF No. 77-1, Affidavit of Aspen Way President Rohnn Lampi, page 6, ¶ 37. Courts have found that sending payments for services rendered to a particular forum can be a "minimum contact" conferring jurisdiction. See, e.g., Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249, 1267 (11th Cir. 2010).

complaint must be accepted as true.  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for

enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
>> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### 2) The § 2511 Claims – Count I

#### a) Direct Liability

Plaintiffs assert claims under three subsection of § 2511 of the ECPA – 18 U.S.C. §§ 2511(1)(a), (1)(c), and (1)(d). The ECPA imposes civil liability on any person who (1) "intentionally intercepts, endeavors to intercept, or procures any other person to intercept, any ... electronic communication"; or who (2) either "intentionally discloses, or endeavors to disclose to any other person," or "intentionally uses, or endeavors to use the contents of any ... electronic communication, knowing or having reason to know that the information was obtained through the interception of a[n] ... electronic communication."18 U.S.C. § § 2511(1), 2520.[12]

Aaron's argues that although the Corrected Third Amended Complaint implicates Aspen Way and DesignerWare, it does not specifically claim that Aaron's itself bears any direct

---

[12] The stated purposed of the ECPA is to protect the privacy of communications and the statute provides for both civil and criminal penalties, as well as a private cause of action. See DIRECTV v. Pepe, 431 F.3d 162, 166 (3d Cir. 2005) (private cause of action exists under § 2511 of ECPA).

liability under the statute. Aaron's argues that Plaintiffs do not allege that Aaron's intercepted any communication or that it used or disclosed any intercepted communications to others. ECF No. 164, page 8. This Court disagrees.

Plaintiffs allege that Aaron's reconfigured its own corporate servers opening a portal through which franchisees and Designerware could operate the PC Rental Agent. ECF No. 296, ¶¶ 95-98. Prior to this reconfiguration of the corporate server, the PC Rental Agent could not operate because of a firewall within the Aaron's server which prevented the franchisees from being able to access the website or install Detective Mode. Id. A weekly newsletter published by Aaron's offered technical support information to franchisees concerning the use of PC Rental Agent. Id. at ¶ 99.

Moreover, by September of 2010, top executive officers within Aaron's were made aware that the franchisees were using PC Rental Agent to log customer's key strokes, transmit images of customers screenshots, and take photographs of computer users through the computer's webcams. Id. at ¶ 101. Plaintiffs allege that "Aaron's was intimately and integrally involved with its Franchisees' acts of building Detective Mode and spying upon Aaron's customers," by consenting to its franchisees' use of the PC Rental Agent in allowing access to the DesignerWare website through its own corporate intranet and corporate server as well as requiring that the images and data collected through PC Rental Agent be transmitted to the franchisee stores through the corporate server. Id. at ¶ 102. Aaron's continued to permit the access and use of PC Rental Agent through its corporate intranet and server even after being expressly advised of its intrusive capabilities. Id. at ¶¶ 104-05. Further, Plaintiffs allege that because Aaron's was an "integral link in the process of allowing" the building and use of Detective Mode and the "gather[ing] of the illegally obtained information through the Aaron's

corporate server," the Aaron's server retained electronic duplicates of every email containing the gathered data and images. Id. at ¶ 107.

These allegations are sufficient under the statute to state a claim of direct liability on the part of Aaron's.

### b) Interception of Electronic Communication[13]

Next, Defendants argue that Plaintiffs have not sufficiently alleged the interception of an electronic communication.

The statute explains that an "intercept" occurs whenever the contents of any electronic communication are in transmission and are simultaneously acquired by an electronic, mechanical, or other device; while an "electronic communication" includes "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects" interstate commerce. 18 U.S.C. §§ 2510(4) & (11); Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 113 (3d Cir. 2003) (requiring simultaneity of acquisition and transmission of electronic communication) citing United States v. Steiger, 318 F.3d 1039, 1048-49 (11th Cir. 2003).

Aaron's argues that the allegations regarding their use of PC Rental Agent to remotely obtain information from the laptops of franchisee customers are insufficient to state a cause of action under the ECPA because Plaintiffs do not allege that this material was obtained while it was in transmission. Perhaps, Aaron's is seeking particular words to follow the statute; but, allegations that the Byrds' computer was accessed over three hundred times on eleven separate days is sufficient to plead an "intercept" under the ECPA, such that the federal cause of action

---

[13] This Court has previously held that the photographs of computer users taken surreptitiously through the webcams do not as a matter of law constitute the interception of an electronic communication under the ECPA. See ECF No. 96.

survives, regardless of whether Plaintiffs have specifically pled that all the material gathered in the three hundred-plus collections was in transmission. Furthermore, given the sophistication of the technology at issue[14], this Court is not convinced that there is no plausibility that the collected material was in some state of "transmission" as envisaged by the statute when it was obtained by PC Rental Agent so as to rule that the claim is non-cognizable. See Phillips, 515 F.3d at 234 ("stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element" and "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.").

Moreover, this Court is conscious of the fact that some specific information, possibly necessary to more fully state a claim, may be covered by the protective order previously entered herein. Aaron's requested a protective order, asking that certain specific personal information acquired from Aaron's customers (and/or its franchisee's customers, like the Byrds) be kept from public view in order to protect their privacy. Defendant Aaron's cannot have its cake and eat it too. Aaron's requested the protective order, and now faults Plaintiffs for their lack of specificity in the complaint. Indeed, the Corrected Third Amended Complaint references this fact. ECF No. 296, page 16 n.1.

---

[14] See generally United States v. Councilman, 245 F.Supp.2d 319, 321 (D.Mass) ("Technology has, to some extent, overtaken language. Traveling the internet, electronic communications are often – perhaps constantly both 'in transit' and 'in storage' simultaneously, a linguistic but not a technological paradox.") aff'd, 373 F.3d 197 (1st Cir. 2004), rev'd en banc, 418 F.3d 67 (1st Cir. 2005).

Thus, the Court will not recommend dismissal of these claims unless and until a more fully-developed record indicates otherwise.[15]

### 3) Invasion of Privacy Claim – Count II

Next, Aaron's argues that this claim should be dismissed because the cause of action is not recognized by the state of Wyoming.[16]

Plaintiffs argue that this Court should hold, based upon a Wyoming Supreme Court case construing an insurance contract (Shoshone First Bank v. Pacific Employers Ins. Co., 2 P.3d 510 (2000)) and a Minnesota Supreme Court case analyzing Minnesota law (Lake v. Wal-Mart Stores, Inc., 582 N.W. 2d 231, 234 (Minn. 1998)), that the tort of invasion of privacy[17] is cognizable under Wyoming law.

---

[15] Although evidence has been submitted in support of and in opposition to the motion for certification of the class, this Court must limit its review on a motion to dismiss to the allegations of the complaint. "Unless the court converts a motion to dismiss into a motion for summary judgment, it is generally confined to the four corners of the complaint when evaluating its sufficiency." Tri3 Enterprises, LLC v. Aetna, Inc., 535 Fed. App'x 192, 195 (3d Cir. 2013) citing Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992). See also Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) ("... certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an Federal Rule of Civil Procedure 56 motion for summary judgment."); Ickes v. Flanagan, 2008 WL 859183, at *1 (W.D. Pa.) quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994) ("in addition to the allegations contained in the pleadings, the Court may also review 'matters of public record, exhibits attached to the complaint and items appearing in the record of the case.").

[16] There is no disagreement between Aaron's and Plaintiffs that Wyoming law should be applied to the Byrds' state law claim. Accordingly, this Court need not engage in a choice-of-law analysis. See In re Columbia Gas Sys. Inc., 50 F.3d at 240 n.10 (where "the parties do not make an issue of choice of law, [the Court has] no obligation to make an independent determination of what rule would apply if they had made an issue of the matter"). See also TIG Ins. Co. v. Reliable Research Co., 334 F.3d 630, 635 (7th Cir. 2003) citing Matter of Stoecker, 5 F.3d 1022, 1029 (7th Cir. 1993).

[17] Generally, four separate torts are recognized under the umbrella of invasion of privacy: 1) unreasonable intrusion upon the seclusion of another; 2) the appropriation of another's name or

28

Plaintiffs' reliance on these cases is misplaced. In the <u>Shoshone</u> case, the Wyoming Supreme Court held that an insurer had a duty to fully defend under an insurance contract. 2 P.3d 510. The question presented to the Wyoming Supreme Court by a federal district court sitting in Wyoming was:

> Does Wyoming law recognize a legal or equitable right of insurer allocation, allowing the insurer to allocate to tis insured and recover either (1) the costs of defending non-covered claims, where there is at least one covered claim and the insurer has already paid for the defense, or (2) the costs of bringing a counterclaim, where there is at least one covered claim and the insurer has already paid for the counterclaim?

<u>Id</u>. at 512. While the term "invasion of privacy" is mentioned, that court does not recognize the tort as a cognizable cause of action under state law in that case, nor was it asked to do so. <u>Id</u>.

Meanwhile, in the <u>Lake</u> case, the Minnesota Supreme Court examined the history of invasion of privacy, noting that only three states including Wyoming and Minnesota have not recognized it, and then concludes by "join[ing] the majority of jurisdictions [to] recognize the tort of invasion of privacy" as a cognizable cause of action in **Minnesota**. 582 N.W. 2d at 234.

In a footnote to their almost two-page argument on this issue, Plaintiffs urge that "in the event there is any doubt about whether Wyoming recognizes intrusion on seclusion as a private cause of action," that this Court should certify the question to the Wyoming Supreme Court. ECF No. 173, page 10 n.2. This Court will not do so because, among other things, Plaintiffs have not explained why they believe that certification of such a question is necessary here. Plaintiffs are asking this Court to certify a question the answer to which already is clear. Furthermore, it is not this Court's obligation to litigate this matter.

---

likeness; 3) unreasonable publicity given to another's private life; and 4) publicity that unreasonably places the other in a false light before the public. <u>See</u> <u>Restatement (Second) of Torts</u> § 652 (1977).

There is no tort cause of action for the invasion of privacy recognized by the State of Wyoming. Aaron's motion to dismiss should be granted in this regard and Count II should be dismissed.[18]

### 4) State Law Conspiracy and Aiding and Abetting Claims – Counts III, IV

Both of these counts raise a double-pronged claim. Plaintiffs allege that Defendants

---

[18] In their brief in support of their motion for class certification, Plaintiffs analyze the choice-of-law issue as it pertains to the certification of a class action. In that regard, Plaintiffs represent that they have "undertaken an extensive analysis of state law variances with respect to the elements of intrusion on seclusion" and have compiled a chart listing the elements of the tort as defined in each of the fifty states. ECF No. 175, page 16. According to Plaintiffs, this extensive analysis reveals that while there may be "cosmetic variations," there are no substantive differences in the state laws. Id. In their chart, Plaintiffs note that Wyoming recognizes intrusion on seclusion, and as authority for this proposition, Plaintiffs cite eight cases. ECF No. 175-6, page 14. This Court has scrutinized the cited cases and **not one of them** recognizes the umbrella tort of invasion of privacy or enumerates the elements of intrusion on seclusion under Wyoming law.

In Plaintiffs' reply brief answering the Defendants' oppositions to the motion to certify the class, Plaintiffs expand their argument. ECF No. 306, pages 34-35. First, Plaintiffs maintain that Wyoming's recognition of the invasion of privacy was "previously resolved" in this case and that Aaron's argument in this regard was rejected by this Court. Plaintiffs cite to the May 23, 2013 hearing held by the undersigned in which the motion to amend the complaint was granted. Although this Court determined that amendment of the complaint was not futile, this Court did not resolve the issue of whether the intrusion on seclusion was cognizable under Wyoming law.

Next, Plaintiffs cite Briefing.com v. Jones, 126 P.3d 928 (Wyo. 2006), a Wyoming Supreme Court case in support of their position that Wyoming recognizes the tort. There, the court opined that Wyoming was "the only jurisdiction in the United States that has not given specific legislative or judicial recognition to a tort cause of action for misuse of trade secrets." Id. at ¶ 10. The Court then surveyed common law principles and the Wyoming legislature's adoption of common law over 100 years before, and concluded: "… as Wyoming has advanced into the modern commercial world along with the rest of the United States, its people have the same need for trade secret protection as do the rest of the people of the country. Consequently, we have no hesitation in declaring that the tort of misuse or misappropriation of trade secrets is part of the law of this jurisdiction. Furthermore, because it represents the common law cause of action in its modern and most appropriate version, we adopt the cause of action as it appears in Restatement (Third) of Unfair Competition." Id. at ¶ 15. Plaintiffs invite this Court to undertake this same type of analysis and find that invasion of privacy is recognized as a cause of action by the state of Wyoming and look to the Restatement to define the elements of the tort.

Finally, Plaintiffs cite several Wyoming statutes in which privacy is mentioned. However, none of the cited statutes applies to the factual situation presently before this Court.

conspired: 1) to violate the ECPA and 2) to invade their privacy. Plaintiffs plead similarly with aiding and abetting. Plaintiffs' claims of civil conspiracy and aiding and abetting are derivative of the underlying claims. Because Plaintiffs have failed to state a claim for the invasion of privacy, the civil conspiracy and aiding and abetting claims based on this tort cannot proceed. See Cent. Wyoming Med. Lab., LLC v. Med. Testing Lab, Inc., 43 P.2d 121, 126 (Wyo. 2012) (a plaintiff cannot claim civil conspiracy without an underlying cause of action in tort).

Next, Aaron's argues that Wyoming[19] has not recognized a cause of action for aiding and abetting and moves to dismiss this claim on this basis as well. In their Opposition brief, Plaintiffs do not respond to Aaron's argument in this regard. Accordingly, the motion to dismiss should be granted. [20]

---

[19] Again, because the parties do not dispute that applicability of Wyoming law to the Byrds' claim of aiding and abetting, this Court need not engage in a choice-of-law analysis. See supra, note 16.

[20] As with the tort of invasion of privacy, Plaintiffs have conducted a state-by-state survey on the cognizability of aiding and abetting as a cause of action in their brief in support of their motion for class certification. In the chart listing the elements of the cause of action by state, Plaintiffs cite two cases and one statute for the proposition that aiding and abetting is recognized as a cause of action in Wyoming. ECF No. 175-8, page 16. As with the "extensive review" concerning the cognizability of the invasion of privacy tort, the authority on which Plaintiffs rely here is flawed.
    In first case cited by Plaintiffs, Mountain West Farm Bureau Mutual Ins. Co. v. Hunt, 82 F.Supp.2d 1261 (D. Wyoming), the federal district court in Wyoming applied **Montana** law in a wrongful death action alleging that passengers' failure to prevent a second car's intoxicated driver from operating a vehicle which cause the death. There is no mention of aiding and abetting. In Briefing.com (126 P.3d 928), the Wyoming Supreme Court recognized a cause of action in tort for the misappropriation of trade secrets. Id. at ¶ 16. See further discussion supra, at note 19. In addition to the Mountain West and Briefing.com decisions, Plaintiffs also cite a Wyoming statute in support of their position that aiding and abetting is cognizable under Wyoming law. Again, Plaintiffs' reliance on this authority is misplaced as the cited statute involves aiding and abetting liability for securities violations, not the factual circumstances presently alleged in the complaint here.

**F. Summary**

In summary, the claims remaining in this action are the violation of the ECPA at Count I and the conspiracy to violation the ECPA at Count III. Count II for invasion of privacy and Count IV for aiding and abetting should be dismissed in their entireties and the portion of Count III for conspiracy that is derived from the state law claim for invasion of privacy should be dismissed. All Franchisee Defendants (other than Aspen Way) should be dismissed from this action.

**III.  CONCLUSION**

For the foregoing reasons, it is respectfully recommended that:

-   The motion to dismiss filed by Defendant Aspen Way Enterprises [ECF No. 161] should be DENIED;

-   The motion to dismiss filed by Defendant Aaron's, Inc. [ECF No. 163] should be GRANTED IN PART AND DENIED IN PART.

It is further recommended that the following motions be granted due to lack of subject matter jurisdiction based on Plaintiffs' lack of standing:

-   The motion to dismiss filed by Defendant Arona Corporation [ECF No. 192] be GRANTED ;

-   The motion to dismiss filed by Defendants AH&H Leasing, LLC, Bear Rental Purchase, Ltd., Boxer Enterprise, Inc., Circle City Rentals, CMH Leasing Partners, LLC, CRAM Leasing, Inc., DC Sales & Lease, Inc., Dirigo Leasing, Inc., DPR Alaska, LLC, DPR Colorado, LLC, DW3, LLC, DWC Ventures, LLC, Fairway Leasing, LLC, Five Star Financials, LLC, FT Got Three, LLC, GNS & Associates, Inc., Green Fiver Corporation, Hanson Holding Company, Honey Harbor Investments, LLC, Howard Rents, LLC, HPH Investments, LLC, J&L Beach Enterprises, Inc., J.R. Rents, Inc., Jenfour, LLC, Jenkins Rental, LLC, KFJ Enterprises, LLC, Lifestyle Furniture Leasing, Madison Capital Investments, Inc., MKW Investments, Inc., No Three Putts Enterprises, LLC, NW Freedom Corporation, Pomona Lane Partners, LLC, R & Double K, LLC, Rebco Investments, LLC, Rex Neal, Inc., Royal Rents, Inc., Royal Rocket Retail, LLC, SEI/Aaron's, Inc., Shining Star, Showcase

Home Furnishings, Inc., Sultan Financial Corporation, Tanglewood Management, LLC, TDS Foods, Inc., Tur, Inc., Watershed Development Corporation, and WGC, LLC   [ECF No. 194] be GRANTED.

- The motions for joinder filed by Defendants Great American Rent-to-Own, AMG Enterprises Group, and J.M. Darden and Company [ECF Nos. 298, 299, and 300] be GRANTED.

The Clerk of Courts should be directed to terminate the following as parties to this action: AH&H Leasing, LLC, AMG Enterprises Group, LLC, Arona Corporation, Bear Rental Purchase, Ltd., Boxer Enterprise, Inc., Circle City Rentals, CMH Leasing Partners, LLC, CRAM Leasing, Inc., DC Sales & Lease, Inc., Dirigo Leasing, Inc., DPR Alaska, LLC, DPR Colorado, LLC, DW3, LLC, DWC Ventures, LLC, Fairway Leasing, LLC, Five Star Financials, LLC, FT Got Three, LLC, GNS & Associates, Inc., Great American Rent-to-Own, Inc., Green Fiver Corporation, Hanson Holding Company, Honey Harbor Investments, LLC, Howard Rents, LLC, HPH Investments, LLC, J&L Beach Enterprises, Inc., J.R. Rents, Inc., J.M. Darden & Company, Jenfour, LLC, Jenkins Rental, LLC, KFJ Enterprises, LLC, Lifestyle Furniture Leasing, Madison Capital Investments, Inc., MKW Investments, Inc., No Three Putts Enterprises, LLC, NW Freedom Corporation, Pomona Lane Partners, LLC, R & Double K, LLC, Rebco Investments, LLC, Rex Neal, Inc., Royal Rents, Inc., Royal Rocket Retail, LLC, SEI/Aaron's, Inc., Shining Star, Showcase Home Furnishings, Inc., Sultan Financial Corporation, Tanglewood Management, LLC, TDS Foods, Inc., Tur, Inc., Watershed Development Corporation, and WGC, LLC.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation, or by **February 10, 2014**. Any party opposing the Objections shall have fourteen (14) days from the date of service of the

Objections to respond thereto, or by **February 24, 2014**.  See Fed.R.Civ.P. 72(b)(2).  Extensions of time will not be granted in either regard.  Failure to file timely objections may constitute a waiver of appellate rights.  See Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  January 27, 2014