# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CRYSTAL BYRD, et al,** ) | |
| **Plaintiffs** ) | |
| ) | |
| vs. ) | C.A.No. 11-101Erie |
| ) | District Judge Bissoon |
| **AARON'S, INC., et al.,** ) | Magistrate Judge Baxter |
| **Defendants.** ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
On Plaintiffs' Motion to Certify Class

## I. RECOMMENDATION

It is respectfully recommended that Plaintiffs' motion to certify the class [ECF No. 174] be DENIED.

## II. REPORT

### A. Relevant Procedural History

On May 3, 2011, Plaintiffs Crystal and Brian Byrd, filed the instant action. Plaintiffs allege that Defendants violated 18 U.S.C. § 2511, the Electronic Communications Privacy Act, and invaded their privacy.

Since the filing of the Original Complaint, this case has undergone an unusual and lengthy procedural process, much of which is irrelevant to this Report and Recommendation. The operative complaint is the Corrected Third Amended Complaint at ECF No. 296. Plaintiffs have filed a motion for class certification. ECF No. 174. The parties have filed Opposition briefs,

1

Reply briefs and Sur-reply briefs. This matter is fully briefed and is ripe for disposition by this Court.

### B. The Allegations of the Corrected Third Amended Complaint

#### 1) The Byrds' Claims

In July of 2010, Plaintiff Crystal Byrd entered into a lease agreement for a laptop computer with an Aaron's franchisee store operated by Aspen Way Enterprises. ECF No. 296, ¶ 118. See also ECF No. 1, Lease Agreement attached to Original Complaint. The lease agreement did not disclose that PC Rental Agent had been attached to the laptop and could be used by others to monitor the computer use. ECF No. 296, ¶ 119.

While playing a game of Internet poker on December 20, 2010, a digital photographic image of Brian Byrd, the husband of Crystal, as well as a screenshot of his computer screen were surreptitiously taken through the PC Rental Agent. Id. at ¶ 122. The screen shot revealed the Internet site with which he was communicating and the actual keystrokes Byrd was entering into the computer. Id. This information was then sent to DesignerWare's server in Pennsylvania and then re-transmitted to the Aspen Way store in Wyoming, where the Byrds had originally purchased the laptop. Id. The Byrds' laptop computer was secretly accessed by Aspen Way via the PC Rental Agent product and through the DesignerWare and Aaron's websites 347 times on eleven different days between November 16, 2010, and December 20, 2010. Id. at ¶ 123.

#### 2) The Class Claims

According to the Corrected Third Amended Complaint, Aaron's franchisees across the United States have been secretly installing PC Rental Agent on rent-to-own computers since

June of 2009. Id. at ¶ 84. PC Rental Agent permits Defendants to "remotely and surreptitiously access, monitor, intercept, and/or transmit personal information as well as electronic communications and images, including, but not limited to, images of monitors or screens ("screen shots"), keystrokes, as well as images captured by the computers' respective cameras ("webcams") of whatever person was sitting in front of the computer, and whatever activity was occurring at the time the webcam was capturing the photographs." Id. at ¶¶ 3, 84.

PC Rental Agent allows its installer (here, the rent-to-own store) to remotely and surreptitiously build and activate the "Detective Mode" function on the laptop over the Internet and through the Aaron's Inc. and DesignerWare websites. Id. at ¶ 88. After Detective Mode is built onto a laptop, the installer is able to activate it and to choose various levels of surveillance. Id. at ¶ 89. The installer may secretly have photos taken through the computer's webcam, as well as capture keystrokes and take screen shots. Id. at ¶¶ 3, 84, 89.

Plaintiffs allege that Aaron's Inc. has expressly consented to have its franchisee stores access and use the DesignerWare and PC Rental Agent websites through the Aaron's Inc. corporate intranet and server to spy on unsuspecting customers. Id. at ¶ 137. This remote access has resulted in "several hundred thousands of occasions" when stores secretly gathered information from the computer user. Id. at ¶ 137. Aspen Way alone collected personal and private information from its customers' laptops on more than 50,000 occasions. Id. at ¶ 138.

Plaintiffs allege that there are over 800 individuals who have purchased or leased laptop computers from Aaron's Inc. or its franchisees who have had Detective Mode installed and built on their computers. Id. at ¶ 73. Additionally, the computers of 895 customers across the country have been identified as having surveillance conducted through the Detective Mode function of PC Rental Agent. ECF No. 175, Motion to Certify Class, page 25.

### 3) Claims Remaining Following the Motions to Dismiss

The Corrected Third Amended Complaint raises four separate counts: Count I – Wiretap Act; Count II – Invasion of Privacy based on Intentional Intrusion upon Seclusion; Count III – Conspiracy (for violation of the ECPA and invasion of privacy); and Count IV – Aiding and Abetting (for violation of the ECPA and invasion of privacy).

By a separate Report and Recommendation issued recently, I have recommended that: 1) all the Franchisee Defendants other than Aspen Way be dismissed due to the lack of standing; 2) that the invasion of privacy and aiding and abetting claims be dismissed; 3) that the portion of the conspiracy claim based on the invasion of privacy be dismissed. The only claims surviving the motions to dismiss are the ECPA and conspiracy (to violate ECPA) claims against Aaron's Inc. and Aspen Way. Accordingly, this Report and Recommendation will analyze the motion for class certification as to the remaining claims that, and Defendants who, survive the motion to dismiss.

### C.     Federal Rule 23 and Class Actions

### 1) Standard of Review

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Comcast Corp. v. Behrend, ___ U.S. ___, ___, 133 S.Ct. 1426, 1432 (2013) quoting Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979).
To come within the exception, a party seeking to maintain a class action "must affirmatively demonstrate his compliance" with Rule 23 of the Federal Rules of Civil Procedure. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. ___, ___, 131 S.Ct. 2541, 2551-52 (2011) [hereinafter "Dukes"].

To meet this burden, Plaintiffs must satisfy the four prerequisites of Rule 23(a)[1] and show that the action can be maintained under at least one of the subsections of Rule 23(b)[2]. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 316 n.14 (3d Cir. 2009).

### 2) Ascertainability[3] and Defining the Class

---

[1] Rule 23(a) provides that: 1) The class must be so numerous that joinder of all members is impracticable; 2) There are questions of law or fact common to the class; 3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) The representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). These factors are referred to as numerosity, commonality, typicality and adequacy, respectively.

[2] In addition to proving the factors set forth in Rule 23(a), the putative class representative has the burden to satisfy at least one of the provisions of Rule 23(b) through "evidentiary proof." Comcast, ___ U.S. at ___, 133 S.Ct. at 1426. Rule 23(b) permits certification if:

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any question affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>> (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23 (b). Plaintiffs seek to certify a class under both of these provisions of Rule 23(b). ECF No. 296, ¶¶ 80-81.

As an **"essential prerequisite"** to the Rule 23 analysis, the Court must consider 1) whether there is a precisely defined class and 2) whether the named Plaintiffs are members of that proposed class. Marcus v. BMW of North America, 687 F.3d 583, 596 (3d Cir. 2012) (explaining the concept of ascertainability at length for the first time)(emphasis added). "A critical need of the trial court at certification is to determine how the case will be tried." Carrera v. Bayer, 727 F.3d 300, 307 (3d Cir. 2013). It is the plaintiff's burden to demonstrate "by a preponderance of evidence, that the class is 'currently and readily ascertainable based on objective criteria,' and a trial court must undertake a rigorous analysis of the evidence to determine if the standard is met." Id. at 306, quoting Marcus, 687 F.3d at 593.

In Carrera, the Third Circuit recently reiterated the importance of the ascertainability inquiry:

> Ascertainability mandates a rigorous approach at the outset because of the key roles it plays as part of a Rule 23(b)(3) class action lawsuit. First, at the commencement of a class action, ascertainability and a clear class definition allow potential class members to identify themselves for purposes of opting out of a class. Second, it ensures that a defendant's rights are protected by the class action mechanism. Third, it ensures that the parties can identify class members in a manner consistent with the efficiencies of a class action.

727 F.3d at 307.

At the first step of the analysis, determining whether there is a precisely defined class entails two separate and important elements: "first, the class must be defined with reference to objective criteria" and "second, there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." Hayes v. Wal-

---

[3] While the Third Circuit recognizes ascertainability, other courts refer to this implicit requirement of Federal Rule 23 as "definiteness." See William Rubenstein and Alba Conte, Newberg on Class Actions §§ 3.1, 3.2 (5th ed. 2012).

Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2013) [hereinafter "Hayes"] quoting Marcus, 687 F.3d at 593.

In their Motion for Class Certification[4], Plaintiffs define two proposed classes as follows:

> **Class I** (against Aaron's Inc. for direct liability under ECPA)
>
> > All persons residing in the United States, who have purchased, leased, rented or rented to own, Aaron's computers and individuals who used said computers whose personal information, electronic communications and/or images were intercepted, used, disclosed, accessed, monitored and/or transmitted via PC Rental Agent or other devices or software without the customers authorization.
>
> **Class II** (against Aaron's Inc., Aspen Way, and all other Franchisee Defendants for direct liability under ECPA, invasion of privacy, conspiracy, and aiding and abetting)
>
> > All customers of the Aaron's Defendants who reside in the United States, who have purchased, leased, rented or rented to own, Aaron's computers and individuals who used said computers whose personal information, electronic communications and/or images were intercepted, used, disclosed, accessed, monitored and/or transmitted by the Aaron's Defendants via PC Rental Agent or other devices or software without the customers authorization.

ECF No. 174, pages 1-2. Plaintiffs also set forth an alternative definition for Class II as:

---

[4] The proposed classes as defined in the motion differ from the single proposed class as defined in the operative complaint. There, Plaintiffs proposed the following class:

> All customers of the Aaron's Defendants who reside in the United States, who have purchased, leased, rented or rented to own, Aaron's computers and people who used said computers whose Personal Information, electronic communications and/or images were intercepted, accessed, monitored and/or transmitted by Defendants via PC Rental Agent or other devices or software without the customer's authorization.

ECF No. 296, ¶ 71. The proposed class of the Original Complaint differed only slightly from the Corrected Third Amended Complaint, in that it did not contain the words "personal information" ECF No., ¶ 15. The First Amended, Second Amended and Third Amended Complaints plead the class similarly. See ECF No. 66, ¶ 15; ECF No. 103, ¶ 20; ECF No. 134 , ¶ 71. It is only in the motion to certify class and in Plaintiff's reply brief that the proposed class definitions change significantly.

7

**Class II** (against Aaron's Inc., and Aspen Way for direct liability under the ECPA, invasion of privacy, conspiracy, and aiding and abetting (under Wyoming law))

> All persons residing in the United States, who have purchased leased, rented or rented to own, Aaron's computers from Aspen Way Enterprises, Inc., d/b/a Aarons Sales and Leasing, and individual who used said computers whose personal information, electronic communications and/or images were intercepted, used, disclosed, accessed, monitored and/or transmitted by Aspen Way and/or Aaron's via PC Rental Agent or other devices or software without the customers authorization.

ECF No. 174, pages 1-2. As to this alternative class structure, Plaintiffs propose a similar class with respect to each of the 51 named Franchisee Defendants under the law of the state where the franchisee is located. ECF No. 175, page 19.[5]

In opposition, Defendants argue that Plaintiffs have not met their burden of establishing ascertainability. Aaron's argues that Plaintiffs have used the terms of art from the ECPA in order to define the class, thereby effectively defining the class by reference to the alleged violation of the statute (i.e., "persons whose personal information, electronic communications and/or images were intercepted, used, disclosed, monitored and/or transmitted"). This Court agrees that these class definitions do not meet the ascertainability requirement because the class is not defined by "reference to objective criteria" as set forth in Marcus.

The criteria by which Plaintiffs define membership in the proposed classes revolves around the ultimate legal issue in this case. In order to state a claim for a violation under § 2511 of the ECPA, a plaintiff must plead that the defendant 1) intentionally 2) intercepted 3) the contents 4) of an electronic communication 5) using a device. See In re Pharmatrack, 329 F.3d 9, 18 (1st Cir. 2003). The terms "interception," "contents," and "electronic communication" are all

---

[5] Importantly, nominal plaintiffs have not been named to represent each of these proposed classes.

defined within the statute itself (see § 2510(4), (8), and (12), respectively) and are the subject of much case law and interpretation, and are not objectively definable. Furthermore, these statutory terms have been and will continue to be the subject of much debate in this litigation as not all information gathered surreptitiously will constitute an "interception" of the "contents" of an "electronic communication," for example. Determining 1) whether the information constitutes the interception of the contents of an electronic communication and 2) whose information (on a computer with multiple users) has been secretly accessed and gathered are exactly the kind of intense factual inquiries that <u>Marcus</u> dictates be avoided by the trial court since such determinations will require inquiry into the merits of each individual's claim. <u>Marcus</u>, 687 F.3d at 596 (class members must be easily identifiable "without extensive and individualized fact-finding or 'mini-trials.'"). <u>See</u> <u>also</u> <u>Carrera</u>, 727 F.3d at 307.

In their Reply Brief, Plaintiffs propose alternative (and more limited) class definitions as follows:

> **Class I** - All persons who leased and/or purchased one or more computers from Aaron's, Inc., and their household members, on whose computers DesignerWare's Detective Mode was installed and activated without such person's consent on or after January 1, 2007.
>
> **Class II** - All persons who leased and/or purchased one or more computers from Aaron's, Inc. or an Aaron's, Inc. franchisee, and their household members, on whose computers DesignerWare's Detective Mode was installed and activated without such person's consent on or after January 1, 2007.[6]

---

[6] The inclusion of the date of January 1, 2007, is problematic given that the Corrected Third Amended Complaint alleges that the franchisees have been secretly installing PC Rental Agent "since at least June of 2009." ECF No. 296, ¶¶ 83-84. While the Corrected Third Amended Complaint also explains that as early as 2007 Aaron's corporate personnel suggested the PC Rental Agent product to the franchisee principals (id. at ¶ 82), such an allegation standing alone is not enough to support a class time period extending back 2 ½ years before the allegation that a store actually installed and utilized the PC Rental Agent product and DesignerWare's services.

ECF No. 306, page 9.

Plaintiffs maintain that Aaron's own records reveal the computers upon which Detective Mode was activated, as well as the full identity of the customer who leased or purchased each of those computers. See ECF No. 307, Supplemental Declaration of Attorney Andrea Hirsch. While these Aaron's records may reveal the computers upon which Detective Mode was activated and the owner/lessee of that computer, Plaintiffs do not provide an administratively feasible way to determine whose information was surreptitiously gathered. Given that laptops by their very nature are portable and are bound to be used by individuals other than their owners or lessees (and their household members), this class definition does not encompass all those individuals whose information has been surreptitiously gathered by Aaron's franchisees. But, more problematic for Plaintiffs is the fact that the alternative definitions are overly broad. Not every computer upon which Detective Mode was activated will state a claim under the ECPA for the interception of an electronic communication. For example, the activated Detective Mode may not have gathered any information or it may have gathered information that does not satisfy the statutory definition of an electronic communication in transmission, such as a word document the text of which is a book report.

Additionally, the identity of the "household members" is not ascertainable, despite Plaintiffs' vague contention that "household members" can be objectively verified through unidentified "personal and public records" and their usage of the computer.[7] It is not enough to propose a method by which this information may be obtained. See Carrera, 727 F.3d at 306, 308

---

[7] Plaintiffs explain that the usage of the computer will reveal the identity of the household member. "By way of example, … Brian Byrd's illegally intercepted poker playing revealed his password "bbyrd32." That objective source allows for ready identification of Bryan Bird [sic]." ECF No. 306, page 10 n.6.

("A plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful. […] To satisfy ascertainability as it relates to proof of class membership, the plaintiff must demonstrate his purported method for ascertaining class members is reliable and administratively feasible and permits a defendant to challenge the evidence used to prove class membership."). Because Plaintiffs have not defined "household members" and because Plaintiffs have not demonstrated by a preponderance of the evidence how "household members" can be verified through personal and public records, this portion of the proposed class is not ascertainable as well.

Because none of the class definitions proposed by Plaintiffs satisfies the threshold analysis of ascertainability[8], the motion to certify the class should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiffs' motion to certify the class [ECF No. 174] be DENIED.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation, or by **February 14, 2014**. Any party opposing the Objections shall have fourteen (14) days from the date of service of the Objections to respond thereto, or by **February 28, 2014**. See Fed.R.Civ.P. 72(b)(2). Extensions of time will not be granted in either regard. Failure to file timely objections may constitute a

---

[8] The second part of the ascertainability analysis focuses on whether the class representative is a member of the proposed class. See Hayes, 725 F.3d at 360 ("It is axiomatic that the lead plaintiff must fit the class definition."). Because Plaintiffs have not satisfied their burden at the first step of the ascertainability analysis, this Court need not undertake further analysis on ascertainability or on the Rule 23(a) and (b) factors.

11

waiver of appellate rights.  See Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

        /s/ Susan Paradise Baxter
        SUSAN PARADISE BAXTER
        United States Magistrate Judge

Dated:  January 31, 2014